**MCCARTNEY DALLMANN LLP**
Andrew S. Dallmann (State Bar No. 206771)
23187 La Cadena Dr.
Suite 102
Laguna Hills, California 92653
Telephone: (951) 678-2267
E-mail:  andrew@mdllplaw.com

**KEY IP LAW GROUP, PLLC**
Cecil E. Key (admitted pro hac vice)
1934 Old Gallows Road, Suite 250
Vienna, Virginia 22182
Telephone: (703) 752-6276
Email:  cecil@keyiplaw.com

Attorneys for Plaintiff
LA CANADA VENTURES, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LA CANADA VENTURES, INC., | Case No.:     3:22-cv-07197-RS |
| Plaintiff, | **NOTICE OF MOTION AND MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS** |
| vs. | |
| MDALGORITHMS, INC., | **FED. R. CIV. P. 12(B)(6)** |
| Defendant. | Judge: Richard Seeborg |
| | Courtroom: 3 |
| | Date: November 2, 2023 |
| | Time: 1:30 p.m. |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Please take notice that on November 2, 2023, at 1:30 p.m., the undersigned will appear before the Honorable Richard Seeborg of the United States District Court for the Northern District of California in Courtroom 3, 17th Floor, at the San Francisco Federal Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, and shall present Plaintiff La Canada Ventures, Inc. ("La Canada")'s Motion to Dismiss Defendant's Counterclaims.

1       The motion is based on this Notice of Motion and Motion, the attached Memorandum of

2   Points and Authorities, the Declaration of Andrew S. Dallmann and exhibits thereto, judicially

3   noticeable public records, any oral argument, any other evidence the Court may consider.

4       The grounds for dismissal are that Defendant MDalgorithms Inc.'s Counterclaims, along with

5   the documents referred to and incorporated in it, and judicially noticeable documents, show that

6   MDalgorithms fails to state a claim on which relief can be granted, warranting dismissal under Rule

7   12(b)(6).  La Canada, not MDalgorithms, is the first user and registered owner of MD® and a family

8   of MD formative marks for goods including hair products and acne treatments.  Accordingly, La

9   Canada, not MDalgorithms, has the right to use its trademarks and product names in the manner

10  alleged in the counterclaims.  Further, La Canada's uses of the public domain English words "hair"

11  and "acne" to describe its own products for treating hair conditions and acne are protected nominative

12  uses.  La Canada requests that the Court dismiss the Counterclaims with prejudice.

13  DATED:  September 27, 2023              Respectfully submitted,

14

15                                         By: */s/ Cecil E. Key*_____

16                                            Andrew S. Dallmann
                                              MCCARTNEY DALLMANN LLP

17                                            Cecil E. Key
18                                            KEY IP LAW GROUP, PLLC

19                                            Attorneys for Plaintiff
                                              LA CANADA VENTURES, INC.

20

21

22

23

24

25

26

27

28

1
2
3

**TABLE OF CONTENTS**

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20

I.      INTRODUCTION ...................................................................................................1

II.     STATEMENT OF FACTS .....................................................................................2

        A.      MDalgorithms' Alleged Trademark Rights.................................................2

        B.      La Canada's Marks, Product Names and Product Descriptions As Of 2021 ..........4

        C.      The Alleged Acts of Unfair Competition ...................................................5

III.    ARGUMENT...........................................................................................................6

        A.      Legal Standard ...........................................................................................6

        B.      As the First User and Registered Owner of the MD Formative Marks, La Canada Has A Right to Use A Combination of "MD" And "Acne" or "Hair" For Its Acne and Hair Products. ...............................................................7

                1.      The Domain Name MDhair.com .................................................9

                2.      MD Acne Complexion Factor Acne Cleanser-Acne Wash to Reduce Acne...............................................................................11

        C.      La Canada's Use of the Words Hair and Acne to Describe Its Own Products is Non-infringing Nominative Use. ..........................................................13

        D.      No Amendment Should Be Allowed. .......................................................14

IV.     CONCLUSION......................................................................................................15

21
22
23
24
25
26
27
28

1

**TABLE OF AUTHORITIES**

2

<u>Cases</u>

3

4

*Academy of Motion Picture Arts & Sciences v. Creative House Promotions, Inc.*, 944 F.2d 1446
(9th Cir. 1991) ................................................................................................................. 6

5

6

*AirWair Int'l. Ltd. v. Schultz*, 84 F. Supp. 3d 943 (N.D. Cal. 2015) .................................................. 6

7

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................ 6

*Branch v. Tunnell*, 14 F.3d 449 (9th Cir. 1994) .............................................................................. 6

8

9

*Brookfield Commc'ns., Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036 (9th Cir. 1999) ......... passim

*Brooks v. Vallejo City Unified Sch. Dist.,* 2013 U.S. Dist. LEXIS 33455, 2013 WL 943460 (E.D.

10

Cal. Mar.11, 2013) .......................................................................................................... 14

11

*Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175 (9th Cir. 1988) ...................................... 7, 9

12

*Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083 (9th Cir. 2002) ...................................................... 14

13

*Citibank N.A. v. City Bank of San Francisco*, 206 U.S.P.Q. 997 (N.D. Cal. 1980) ............................ 8

14

*Cleary v. News Corp.*, 30 F.3d 1255 (9th Cir. 1994) ........................................................................ 7

15

*Department of Parks & Recreation v. Bazaar del Mundo Inc.*, 448 F.3d 1118 (9th Cir. 2006) ......... 7

16

*Entrepreneur Media v. Smith*, 297 F.3d 1135 (9th Cir. 2002) ...................................................... 7, 14

17

*Fleischmann Distilling Corp. v. Maier Brewing Co.*, 314 F.2d 149 (9th Cir. 1963) ......................... 9

18

*Galbraith v. City of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) ..................................................... 6

19

*Gardner v. Martino*, 563 F.3d 981 (9th Cir. 2009) .......................................................................... 7

20

*Mack v. South Bay Beer Distrib.*, 798 F.2d 1279 (9th Cir. 1986) ..................................................... 6

21

*Metro Pub., Ltd. v. San Jose Mercury News*, 987 F.2d 637 (9th Cir. 1993) ..................................... 8

22

*Mullis v. Bankr. Court,* 828 F.2d 1385 (9th Cir. 1987) .................................................................... 6

23

*New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302 (9th Cir. 1992). ...................... 13, 14

24

*Parks School of Bus., Inc. v. Symington*, 51 F.3d 1480 (9th Cir. 1995) ............................................ 6

25

*Prestonettes, Inc. v. Coty*, 264 U.S. 359 (1924) ............................................................................. 13

26

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741 (9th Cir. 2006) ....................................... 8

27

28

*Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035 (9th Cir. 2010)................................... 6

*Threshold Enters. Ltd. v. Pressed Juicery, Inc.*, 445 F. Supp. 3d 139 (N.D. Cal. 2020)..................... 8

Statutes

15 U.S.C. § 1052(e) ................................................................................................................. 3, 9

15 U.S.C. § 1091................................................................................................................. 3, 9

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.     INTRODUCTION

This is a trademark dispute.  It was initiated when La Canada asserted trademark infringement of its family of registered and unregistered MD formative marks against MDalgorithms.  Tellingly, MDalgorithms does not assert trademark infringement against La Canada.  In fact, it cannot do so because La Canada, not MDalgorithms, is the senior user.  Instead, MDalgorithms' counterclaims are styled as unfair competition, but they are based solely on the allegations that La Canada sought to confuse customers by altering its own marks, product name and descriptions to emulate MDalgorithms' purported marks.  *See* Dkt. 32, Counterclaims ¶¶ 31-39 (common law unfair competition claim) and ¶¶ 40-46 (§ 17200 claim).  In reality, MDalgorithms is seeking a declaration of exclusive rights to use two combinations of terms—"MD" and "Hair" and "MD" and "Acne"— as trademarks and to extend those purported trademark rights to the preexisting uses of La Canada.

As a result, MDalgorithms' unfair competition claims are coextensive with and governed by principles of trademark law.  The controlling legal questions here are therefore can MDalgorithms' pleadings state a plausible claim that it has priority of rights to use the combinations of "MD" and "Hair" or "MD" and "Acne" for hair and acne products, and, if so, are those rights sufficiently broad that they can reach La Canada's uses?  MDalgorithms' own pleadings demonstrate that the answer is decidedly "no" to both questions.

La Canada owns federal registrations for MD formative marks that include the mark MD® for use with acne treatments and hair products, among others.  MDalgorithms concedes that La Canada is the senior user of its MD formative marks.  La Canada used the combination of "MD" and "Hair" as part of its MD® Nutri Hair product name prior to MDalgorithms' use of that combination for MDhair.  Likewise, La Canada was using MD® for non-medicated acne products at least nine years before MDalgorithms started offering the same products under MDacne and La Canada was using the combination of "MD" and "Acne" to describe its products when MDalgorithms entered the non-medicated acne product market in 2021.

La Canada is, in short, the senior user. MDalgorithms asserts no conflict or issue with La Canada's

marks, product names and descriptions prior to 2021, which are, in fact, nearly identical to La Canada's product names and descriptions after 2021. As MDalgorithms concedes in its Counterclaims, the latter uses are therefore within La Canada's rights as the senior user.

As a later market entrant, MDalgorithms had a duty to avoid choosing confusingly similar marks for its competing products. Further, MDalgorithms cannot use its MDhair and MDacne marks to prevent competitors from using the descriptive words "hair" and "acne" to describe their own hair and acne products.

The only plausible claim established by MDalgorithms' allegations is that any confusion of conflict that has arisen is its own fault. MDalgorithms not only moved to the nuisance, it created it. That is a basis for MDalgorithms' liability, not La Canada's.

La Canada therefore asks that MDalgorithms' counterclaims be dismissed with prejudice.

## II.    STATEMENT OF FACTS[1]

The allegations on which MDalgorithms bases its Counterclaims are limited to La Canada's actions after MDalgorithms entered the non-medicated acne and haircare product market in 2021. As pled by MDalgotithms, it began offering skincare products and services online using the name MDacne in 2017 but only began using MDAcne for "non-medicated skincare preparations" on November 21, 2021. Dkt. 31, ¶ 20; Dkt. 32, Answer ¶ 20; *see also* Dkt. 32, Counterclaims ¶ 11 (citing U.S. Reg. No. 6,668,393). MDalgorithms likewise did not begin using the name MDhair for any purpose until 2021. Dkt. 32, Counterclaims ¶ 7. MDalgorithms does not allege any conflict with La Canada's use of its marks, product designations or descriptions prior to 2021. *See id*., ¶¶ 20-30.

### A.    MDalgorithms' Alleged Trademark Rights

According to its pleadings, the majority of MDalgorithms' customers complete a quiz and submit photographs of their skin or scalp to MDalgorithms. *Id.*, ¶ 9. In 2016, MDalgorithms therefore registered MDacne for "Computer software and downloadable computer software for education and

---

[1] The facts in this statement are drawn from the pleadings, including MDalgorithms' admissions in its answer and allegations in its counterclaims.

advice in the field of care and treatment of skin disorders, namely, acne." and "providing a website featuring information and advice in the field of the diagnosis and treatment of acne." *Id.*, ¶ 11; Dallmann Decl., Ex. B. This registration was in Classes 9 and 41 based on a claimed first use of May 16, 2010. Dallmann Decl., Ex. B. In 2018, it registered MDacne for "Medicated skin treatment and cleansing creams." Dkt. 32, Counterclaims ¶ 11; Dallmann Decl., Ex. C. This registration was in Class 5 based on a claimed first use of December 1, 2017. Dallmann Decl., Ex. C. At that point, La Canada's registration of MD® for, among other goods, "non-medicated acne treatment preparations" in Class 3 and "acne treatment preparations" in Class 5 (Reg. No. 4,471,494) had been in effect for approximately four years. *Compare id. with* Dallmann Decl., Ex. A (La Canada's Reg. No. 4,471,494). La Canada's MD® registration is based on first use as of January 1, 2012. *Id.* MDalgorithms did not register MDacne for "non-medicated skincare preparations" until March 2022. Dallmann Decl., Ex. D. That registration was in Class 3 based on a claimed first use of November 21, 2021. *Id.* Thus, La Canada's use for goods in Class 3 preceded MDalgorithms' use by almost five years, and its use for goods in Class 5 preceded MDalgorithms by almost ten years. Dallmann Decl., ¶ 7 (registration and use comparison table).

As to MDhair, MDalgorithms only began offering goods and services under the MDhair mark in 2021 on the website located at mdhair.co—not mdhair.com, which was "dormant and listed as available for sale". *Id.*, ¶¶ 12, 14. Prior to that time, MDalgorithms applied to register MDhair, but not for hair care products. Instead, consistent with its historic use of MDacne and its description of the experience of a "majority of [its] customers," MDalgorithms registered MDhair on the Supplemental Register for "Providing temporary use of on-line non-downloadable computer software for education and advice in the field of the care and treatment of skin and hair" in Class 42 based on a claimed first use of September 13, 2021. *Id.*, ¶ 13; Dallmann Decl., Ex. E. MDhair was registered on the Supplemental Register, which signifies that it is merely descriptive for the claimed software services. Dallmann Decl. Ex. E; 15 U.S.C. §§ 1091, 1052(e). MDalgorithms does not allege that the MDhair mark has acquired secondary meaning. MDalgorithms also does not allege that it has any U.S. trademark registrations for MDhair for any products related to hair or haircare. Other than La

Canada, MDalgorithms does not allege that any third party used "MD Hair" or any nearly identical mark before 2021.  Dkt. 32, Counterclaims ¶ 18.

The fundamental point shown by this complicated recitation of facts is simply that the public record undisputedly establishes that La Canada is the senior user of MD formative marks for hair and acne products by several years.  Dallmann Decl., ¶ 7.

**B.     La Canada's Marks, Product Names and Product Descriptions As Of 2021**

As noted above, MDalgorithms does not allege that any conflicts arose with La Canada prior to 2021.  By that time, La Canada owned multiple MD formative marks as averred in MDalgorithms' pleadings.  *Id.*, ¶ 1.  Those marks are identified in La Canada's Second Amended Complaint.  *See* Dkt. 31, ¶¶ 33-35.  They include La Canada's registered mark MD®, which is the subject of U.S. Registration 4,471,494 for goods including "non-medicated acne treatment preparations" and "acne treatment preparations; nutraceuticals for the treatment of hair loss;" and "nutraceuticals for use as a dietary supplement," based on a first use at least as early as January 1, 2012.  Dkt. 32, ¶ 9; Dallmann Decl., Ex. A.

As pled by MDalgorithms, as of 2021, La Canada was using a composite term that combines "MD" and "Acne" to identify and describe La Canada's acne treatment products, namely the product descriptor "MD® Complexion Factor Acne Cleanser."[2]  Dkt. 32, Counterclaims ¶ 28.  As shown by MDalgorithms' pleading, the actual description as it appeared on La Canada's web site was "MD® Complexion Factor Acne Cleanser – Acne Wash to Reduce Acne."  *Id.*, at 23.  Likewise, as of 2021, La Canada was using a composite term that combined "MD" with "Hair" for its hair care products, namely, the MD® Nutri Hair product name[3] that was in use "[w]hen MDalgorithms began using

_____

[2] For purposes of this motion, La Canada adopts MDalgorithms' terminology regarding the identifiers La Canada uses for its products.  MDalgorithms refers to the identifier "MD Complexion Factor Acne Cleanser," which it does not challenge, and the identifier "MD Acne Complexion Factor Acne Cleanser," which it alleges as a basis for its Counterclaims, as a "website description for the product labeled MD Complexion Factor Exfoliating Cleanser.  Dkt. 31, Counterclaims ¶¶ 27-28.  La Canada's "MD Acne" use that is the subject of the Counterclaims will therefore be referred to as a "product description."

[3] As with its use of "MD" in combination with "Acne," La Canada adopts MDalgorithms' terminology regarding its use of "MD" in combination with "Hair."  *See* note 2, *supra*.  MDalgorithms

1   MDhair for its haircare products." *Id*., ¶ 20.

2       **C.**    **The Alleged Acts of Unfair Competition**

3       MDalgorithms' Counterclaims allege that after MDalgorithms began using its marks, La

4   Canada began use of those marks "to create the false belief that La Canada makes MDalgorithms'

5   products." *Id*., ¶ 1.  MDalgorithms' claims are based on two alleged acts.

6       The first is La Canada's redirecting of its domain name <mdhair.com> to its website located

7   at <md-factor.com>, which directs consumers and potential consumers typing in <mdhair.com> to

8   La Canada's website.  *Id.*, ¶¶ 20-25.  MDalgorithms alleges this was improper because "[w]hen

9   MDalgorithms began using MDhair for its haircare products, and to sell them exclusively at

10  mdhair.co, La Canada offered a product named MD Nutri Hair, but it did not offer a product named

11  MDhair (or MD Hair), nor did it utilize the website mdhair.com for any purpose (the website

12  mdhair.com was inactive and listed for sale)."  *Id.*, ¶ 20.  MDalgorithms does not allege that La

13  Canada's use of MD® Nutri Hair constitutes unfair competition.

14      The second is La Canada's adding another appearance of "acne" to its existing product

15  description as follows:

16

17  | **Pre 2021 Product Description** | **Post 2021 Product Description** |
    | --- | --- |
18  | MD Complexion Factor Acne Cleanser – Acne | MD Acne Complexion Factor Acne Cleanser – |
19  | Wash to Reduce Acne | Acne Wash to Reduce Acne |

20

21  *Id.*, ¶¶ 26-30.  MDalgorithms does not allege that the post 2021 product description inaccurately

22  describes the quality of characteristics of La Canada's MD Complexion Factor Exfoliating Cleanser

23  product in connection with which the product description appears on La Canada' website.

24

25

26  _____

27  refers to La Canada's use of MD® Nutri Hair, which it does not challenge, as a "product name." *Id.*,
    Counterclaims ¶ 20.  MD® Nutri Hair will therefore be referred to as a "product name."

28

1    **III.    ARGUMENT**

2        **A.    Legal Standard**

3        A motion to dismiss counterclaims under Rule 12(b)(6) is evaluated under the same standard

4    as a motion to dismiss a plaintiff's complaint. *AirWair Int'l. Ltd. v. Schultz*, 84 F. Supp. 3d 943, 949

5    (N.D. Cal. 2015).  A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims

6    alleged in the complaint. *Parks School of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

7    A court must accept all factual allegations in the pleading as true. *Erickson v. Pardus*, 551 U.S. 89,

8    94 (2007).  A court may dismiss a claim where "there is no cognizable legal theory" or absence of

9    sufficient factual matter to state a facially plausible claim for relief." *Shroyer v. New Cingular*

10   *Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662,

11   677-78 (2009)).  While consideration of a motion to dismiss is generally limited to material in the

12   pleadings, a court may take judicial notice of "matters of public record." *Mack v. South Bay Beer*

13   *Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986).  A court may also consider "documents whose contents

14   are alleged in a [pleading] and whose authenticity no party questions, but which are not physically

15   attached to the pleading" without converting a motion to dismiss under Rule 12(b)(6) into a motion

16   for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) (overruled on other

17   grounds by *Galbraith v. City of Santa Clara*, 307 F.3d 1119, 1125-26 (9th Cir. 2002).  Where the

18   allegations in the counterclaims contradict facts that may be judicially noticed, the court need not

19   accept the allegations as true. *Mullis v. Bankr. Court,* 828 F.2d 1385, 1388 (9th Cir. 1987).

20       Where claims and allegations are based on use of trademarks, "[t]he first to use a mark is

21   deemed the 'senior' user and has the right to enjoin 'junior' users from using confusingly similar

22   marks in the same industry and market or within the senior user's natural zone of expansion."

23   *Brookfield Commc'ns., Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1047 (9th Cir. 1999).  The

24   Ninth Circuit has consistently held that state common law claims of unfair competition and actions

25   under California's Business and Professions Code § 17200 are "substantially congruent" to claims

26   made under the Lanham Act. *See Academy of Motion Picture Arts & Sciences v. Creative House*

27   *Promotions, Inc.*, 944 F.2d 1446, 1457 (9th Cir. 1991) (citing *Century 21 Real Estate Corp. v. Sandlin*,

28                                        - 6 -

846 F.2d 1175, 1178 (9th Cir. 1988) (holding that under both, the "ultimate test" is "whether the public is likely to be deceived or confused by the similarity of the marks") (internal quotations omitted)); *Cleary v. News Corp.*, 30 F.3d 1255, 1262-63 (9th Cir. 1994); *see also Entrepreneur Media v. Smith*, 297 F.3d 1135, 1153 (9th Cir. 2002) (reversing and remanding summary judgment on trademark infringement claim and on Section 17200 claim alleging unfair competition by the deceptive use of trademarks).  Leave to amend a dismissed claim may be denied "where the amendment would be futile."  *Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009).

> **B.     As the First User and Registered Owner of the MD Formative Marks, La Canada Has A Right to Use A Combination of "MD" And "Acne" or "Hair" For Its Acne and Hair Products.**

MDalgorithms' claims are based solely on allegations that La Canada used its MD formative marks, including the registered marks such as MD®, product names and product descriptions in a way that is improper.  MDalgorithms alleges that La Canada used its marks, product names and product descriptions in a way likely to confuse consumers in two ways:  using the domain name <mdhair.com> to direct consumers to its website at md-factor.com; and describing its exfoliating cleanser as MD® Acne Complexion Factor Acne Cleanser.  MDalgorithms does not dispute that La Canada's uses predate its own first uses of MDacne and MDhair for non-medicated preparations in 2021 nor does it allege that there was any conflict arising from La Canada's use prior to that time.

The Ninth Circuit has held that "[t]he first to use a mark is deemed the 'senior' user and has the right to enjoin 'junior' users from using confusingly similar marks in the same industry and market or within the senior user's natural zone of expansion." *Brookfield Commc'ns.,* 174 F.3d at 1047.  Federal registration of a trademark constitutes prima facie evidence of the validity of the registered mark and of the registrant's exclusive right to use the mark" in commerce for the registered goods and services. *Id.* at 1047; *Department of Parks & Recreation v. Bazaar del Mundo Inc.*, 448 F.3d 1118, 1124 (9th Cir. 2006).

A party can rebut another's presumption of trademark validity "by showing that it used the mark in commerce first, since the fundamental tenet of trademark law is that ownership . . . is

- 7 -

1  governed by priority of use." *Brookfield*, 174 F.3d at 1047.  Here, La Canada registered MD®, based

2  on a first use as early as January 1, 2012, and it has become incontestable.  Dkt. 31, ¶ 9; Dallmann

3  Decl., Ex. A.  The Court may take judicial notice of La Canada's trademark registrations.  *See Metro*

4  *Pub., Ltd. v. San Jose Mercury News*, 987 F.2d 637, 641 n.3 (9th Cir. 1993) (taking judicial notice of

5  trademark registrations issued by the USPTO because their "accuracy cannot reasonably be

6  questioned"); *Threshold Enters. Ltd. v. Pressed Juicery, Inc.*, 445 F. Supp. 3d 139, 146-47 (N.D. Cal.

7  2020) ("Materials in the online files of the USPTO and other matters of public record are proper

8  subjects of judicial notice." (citing *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6

9  (9th Cir. 2006))).  MDalgorithms also admits through its pleadings that La Canada has priority of use

10 for MD formative marks, it is entitled to use and prevent others from using nearly identical variations

11 of those marks, and that at least the "MD Acne" use is merely a product description.  Dkt. 32,

12 Counterclaims ¶¶ 1, 28-29.

13       MDalgorithms alleges that it offers skincare and haircare products and services online under

14 the names MDacne (beginning in 2017) and MDhair (beginning in 2021).  Dkt. 32, ¶ 7.

15 MDalgorithms seeks to obfuscate the fact it only began using MDacne for these products years after

16 La Canada had already been using its marks for the same products, glosses over the fact that it only

17 began use for a new line of products, non-medicated skincare preparations, in November 2021.  Dkt.

18 31, ¶ 20; Dkt. 32, Answer ¶ 20; Dallmann Decl., ¶ 7 (registration and use comparison table).  As

19 MDalgorithms admits in its counterclaims, that was after La Canada had already adopted and been

20 using its MD formative marks and product designations, including MD® and combinations of "MD"

21 and "acne."

22       As MDalgorithms itself has pled, La Canada has a right to use and prevent others from using

23 marks that are nearly identical to those La Canada owns and uses.  Dkt. 32, Counterclaims ¶ 29.

24 MDalgorithms had a legal duty to avoid conflicting with those uses.  A new entrant to a market has

25 numerous choices when selecting a trademark for its new product and "has the duty to avoid the use

26 of a mark similar to an established one." *Citibank N.A. v. City Bank of San Francisco*, 206 U.S.P.Q.

27 997, 1009 (N.D. Cal. 1980) (citing *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 314 F.2d 149,

28

- 8 -

1  158 (9th Cir. 1963); *see also Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1182 (9th Cir.

2  1988) (quoting *Citibank*).  Here, MDalgorithms easily could and should have learned of La Canada's

3  trademark rights based on its use of a family of MD formative marks, including MD® registered for

4  use with hair products and acne treatments, and kept a safe distance from them.  It has only itself to

5  blame if its MDhair and MDacne marks do not identify MDalgorithms to consumers as the single

6  source of its hair and acne products.

7      Moreover, a new entrant that adopts a descriptive mark cannot exclude a competitor from

8  using the descriptive terms in a way that fairly describes the competitor's product.  La Canada was

9  using "Acne" to describe its acne products and "Hair" to describe its haircare products prior to

10  MDalgorithms' entry into the market of non-medicated acne and haircare treatments in 2021.  MDhair

11  is a descriptive mark without secondary meaning as evidenced by its registration on the Supplemental

12  Register and the lack of a claim of secondary meaning by MDalgorithms.  15 U.S.C. §§ 1091, 1052(e).

13  MDalgorithms itself has pled that La Canada's use of "Acne" was merely descriptive.  Dkt. 32,

14  Counterclaims ¶¶ 27-28 (identifying La Canada's use of "Acne" as part of a "description of the

15  product").  MDalgorithms cannot prevent La Canada's use of these common terms to fairly describe

16  the nature of La Canada's products.

17              **1.**    **The Domain Name MDhair.com**

18      MDalgorithms admits that La Canada was already using the mark MD® Nutri Hair as a

19  product name for its hair supplements at the time that MDalgorithms adopted and began using

20  "MDhair."  Dkt. 32, Counterclaims ¶ 20.  It has effectively conceded that La Canada owned the

21  <mdhair.com> domain name when MDalgorithms was unable to purchase it prior to its first use of

22  MDhair and therefore had to settle for mdhair.co.  *See id.*  MDalgorithms further concedes in its

23  pleading that La Canada is "afforded protection … for a third-party use that is identical, or nearly

24  identical."  *Id.*, ¶ 29.

25      MDalgorithms nevertheless claims that La Canada unfairly competed when it "purposefully

26  began using mdhair.com to cause that URL to automatically redirect to La Canada's website, md-

27  factor.com."  Dkt. 32, ¶ 20.  MD® Nutri Hair is, however, nearly identical to "MDhair."  The only

28

difference is the term "Nutri" appearing before the descriptive term "Hair." *See Brookfield*, 174 F.3d at 1055 (finding "MovieBuff" and "moviebuffonline.com" essentially identical).  There is nothing in MDalgorithms' pleading from which a reasonable inference can be drawn that "MD Hair" or "mdhair" is anything other than a shortened form of the product name La Canada was already using. MDalgorithms' Counterclaim thus fails under its own test as confirmed by established law.

In addition, taking MDalgorithms' allegations as true, MDalgorithms has only identified two users of marks or product names consisting of a combination of "MD" and "Hair," itself and La Canada, which used MD® Nutri Hair and owned the <mdhair.com> domain name.  Accepting MDalgorithms' allegations as true and considering the judicially noticeable public records of the USPTO, as the senior user, La Canada is entitled to use (and keep others from using) the nearly identical term MDhair for non-medicated haircare products.  Specifically, La Canada is entitled to use a domain name <mdhair.com> which combines its trademark MD® (registered for use with hair products) with the word "hair," which merely signals that the content is related to hair, and top-level domain .com, particularly because as between the only two users of the combination of "MD" and "Hair" MDalgorithms has pled, La Canada is the senior user.  Thus, based on this point alone, MDalgorithms has failed to state a plausible claim for common law trademark infringement or unfair competition under the common law or § 17200.  *See Brookfield Commc'ns.,* 174 F.3d at 1047.

MDalgorithms alleges that La Canada urged customers who found themselves at its website by attempting to locate the website of MDalgorithms to try La Canada's MD® Nutri Hair products or check out its MD® hair products line and "feel free to browse our website and let us know if you need assistance." Dkt. 32, Counterclaims ¶ 24.  Again, MDalgorithms' own pleadings establish that it caused any confusion.  It alleges that it chose the domain name mdhair.**co** for a website to sell its hair care products, knowing when it did so that another party already owned the similar domain name mdhair.**com**.  Dkt. 32, ¶ 20.  Indeed, when it learned that someone else owned the domain name, it could have investigated and discovered La Canada's registrations and use of MD formative marks, including MD® and MD® Nutri Hair for hair products, and chosen a domain name that would not be so easily confused with mdhair.com.  It chose instead to proceed headlong into an easily foreseeable

- 10 -

1    risk of conflict.  No one is to blame for the resulting conflict except MDalgorithms.  And there is

2    nothing unfair about La Canada bringing its own hair products to a consumer's attention. using its

3    own trademarks and the descriptive term hair, *after* alerting them that they were not at MDalgorithms'

4    website but had reached La Canada's site by mistake.

5         This merely reinforces the point: MDalgorithms adopted a nearly identical mark to that of a

6    senior user and did so knowing that there was a real and palpable chance of conflict with the senior

7    user.  That cannot be the basis for an unfair competition claim against the senior user.

8         MDalgorithms has not and cannot state a plausible claim for relief based on La Canada's use

9    of its <mdhair.com> domain name and its Counterclaims must therefore be dismissed.

10              **2.    MD Acne Complexion Factor Acne Cleanser-Acne Wash to Reduce Acne**

11        MDalgorithms alleges that upon becoming aware of its use of MDacne for its acne products,

12   La Canada began to use "the identical" MDacne term, intending to confuse or mislead customers with

13   respect to the source of MDalgorithms' products, and that its customers were likely to be misled and

14   were misled, diverting MDalgorithms' sales to La Canada.   Dkt. 32, Counterclaims ¶ 35-39.

15   Specifically, MDalgorithms' Counterclaims allege that before La Canada learned of MDalgorithms,

16   La Canada used the designation MD Complexion Factor Exfoliating Cleanser for one of its products

17   and described it as "MD® Complexion Factor Acne Cleanser" on its website.  Dkt. 32, ¶ 28.

18   "However, after filing suit against MDalgorithms, and long after MDalgorithms had already been

19   using the MDacne mark, La Canada purposefully changed its website description of the same product

20   to "MD® Acne Complexion Factor Acne Cleanser."  *Id.*  In other words, La Canada's purported

21   unfair competitive act is changing its website description to place La Canada's own registered MD®

22   mark *adjacent* to the descriptive word "acne" —not as the name of the exfoliating cleanser but to

23   describe its intended purpose.   No matter how it is analyzed, there is no theory by which

24   MDalgorithms can succeed on this claim.

25        MDalgorithms has pled that La Canada's alleged acts of unfair competition arise from its use

26   of "MD Acne" in purported conflict with MDalgorithms' new use of MDacne.  But the challenged

27   product description on which MDalgorithms' claims are based is not "MD Acne" or "MDacne"; it is

28                                          - 11 -

1   MD® Acne Complexion Factor Acne Cleanser – Acne Wash to Reduce Acne.  That description,

2   considered as a whole as it must be, *see Brookfield*, 174 F.3d at 1054, is not identical to MDacne as

3   is readily seen from a simple visual comparison.  La Canada's use of "MD® Acne" includes the "®"

4   providing notice that MD is a registered trademark, and a space between the two terms as part of the

5   description.  MDalgorithms' mark MDacne has no space between MD and acne.  And there is no

6   suggestion that MDalgorithms is using a product description that is in any way similar to MD® Acne

7   Complexion Factor Acne Cleanser – Acne Wash to Reduce Acne.  Thus, taking MDalgorithms'

8   allegations as true, in this "incredibly crowded" field, MDalgorithms' cannot extend its purported

9   rights to any and all combinations of "MD" and "Acne."  *See* Dkt. 32, Counterclaims ¶ 29.

10  MD® Acne Complexion Factor Acne Cleanser – Acne Wash to Reduce Acne, the product

11  description on which MDalgorithms' unfair competition counterclaims are based, is, however, nearly

12  identical to the description MD® Complexion Factor Acne Cleanser – Acne Wash to Reduce Acne.

13  The only difference between the two is the addition of a third appearance of the word "Acne."  And

14  MDalgorithms does not assert that La Canada's prior use of MD® Complexion Factor Acne Cleanser

15  – Acne Wash to Reduce Acne as a product description created any conflict.  MDalgorithms admits in

16  its pleading that La Canada has a right to use "nearly identical" variations of product designations

17  and descriptors.  *Id*.  Again, a mere visual examination demonstrates the nearly identical nature

18  between the use that MDalgorithms does not challenge and the one that it does.

19  Finally, MDalgorithms' own pleadings allege that MD® Acne Complexion Factor Acne

20  Cleanser – Acne Wash to Reduce Acne merely describes the product.  MDalgorithms admits that

21  "[t]he term MD acne" or "acne" does not appear on the front label."  Dkt. 32, Counterclaims ¶ 27

22  (including a photograph of the product).  It then pleads that the challenged phrase is a "website

23  description for the product labeled MD Complexion Factor Exfoliating Cleanser." *Id*., ¶ 28.  Nowhere

24  does MDalgorithms plead that either the pre 2021 description (MD® Complexion Factor Acne

25  Cleanser – Acne Wash to Reduce Acne) or the post 2021 description (MD® Acne Complexion Factor

26  Acne Cleanser– Acne Wash to Reduce Acne) inaccurately describes the quality or characteristics of

27  the MD Complexion Factor Exfoliating product.

28

- 12 -

1   The alleged conduct cannot state a claim for unfair competition.  MD® is registered to La

2   Canada for use with "non-medicated acne treatment preparations" and "acne treatment preparations."

3   Dallmann Decl., Ex. A.  La Canada is using its own trademark consistent with its registration.  It is

4   also using the "MD" + "Acne" combination in the same descriptive manner as it did without conflict

5   prior to 2021.  By MDalgorithms' own admission, its registered MDacne mark is only entitled to

6   protection as to identical or nearly identical uses because the "field of use of such MD-formative

7   marks for personal care products is so incredibly crowded."  Dkt. 32, Counterclaims ¶ 29.  In short,

8   La Canada is doing nothing other than what it was doing prior to the time MDalgorithms entered the

9   market for non-medicated acne treatments and MDalgorithms cannot extend its purported rights to

10  that preexisting activity.

MDalgorithms' therefore has not and cannot state a viable claim for relief as to La Canada's

11

12  use of "MD® Acne Complexion Factor Acne Cleanser– Acne Wash to Reduce Acne."

13
14  **C.      La Canada's Use of the Words Hair and Acne to Describe Its Own Products is
                Non-infringing Nominative Use.**
15

16  The Ninth Circuit and the Supreme Court have both recognized that using a descriptive word or

17  phrase that another uses as a trademark "where the only word reasonably available to describe a

18  particular thing is pressed into service" such nominative use to describe one's own product "lies

19  outside the strictures of trademark law." *New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d

20  302, 308 (9th Cir. 1992). "Because it does not implicate the source-identification function that is the

21  purpose of trademark, it does not constitute unfair competition." *Id.*, citing *Prestonettes, Inc. v. Coty*,

22  264 U.S. 359, 368 (1924) (Holmes, J.) ("When the mark is used in a way that does not deceive the

23  public we see no sanctity in the word as to prevent its being used to tell the truth.").  Here, La Canada's

24  use of the word "Acne" following its own registered trademark in the product description "MD®

25  Acne Complexion Factor Acne Cleanser – Acne Wash to Reduce Acne" is used to explain that the

26  product named "MD® Complexion Factor Exfoliating Cleanser" is for preventing and treating acne.

27  That is particularly evident when the portion of the description that MDalgorithms' tries to ignore in

28

- 13 -

1  its pleading—the phrase "Acne Wash to Reduce Acne"—is considered.  MDalgorithms itself calls La

2  Canada's use a "website description for a product" with a label that does not use the word "Acne."

3  La Canada used the combination of "MD" and "Acne" is the same manner prior to 2021, and no

4  conflict resulted.  No unfair competition claim can be sustained based on the continued use of a

5  combination of terms to fairly describe the products' characteristics.  *New Kids on the Block*, 971

6  F.2d at 308.

7      Similarly, La Canada cannot be precluded from using the word "hair" to describe its nutraceutical

8  supplements for hair growth, particularly when it did so before MDalgorithms began using MDhair

9  for its own hair products.  According to MDalgorithms' pleadings, MDhair describes a quality or

10  characteristic of MDalgorithms' goods and services, and it has not acquired secondary meaning.

11  Taking those pleadings as true, MDalgorithms' cannot monopolize the word "hair" used with

12  products specifically intended for haircare.  *See, e.g., Entrepreneur Media v. Smith*, 297 F.3d 1135,

13  1143-44 (9th Cir. 2002).  MDalgorithms has not stated and cannot state claims for unfair competition

14  under the common law or Section 17200 and its counterclaims should be dismissed in their entirety

15  and with prejudice.

16          **D.      No Amendment Should Be Allowed.**

17      When a claim is dismissed for failure to state a claim, no amendment need be allowed if the

18  amendment would be futile because the flaws in the claims cannot be cured.  *See Chaset v.*

19  *Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1088 (9th Cir. 2002) (finding leave to amend futile where

20  "plaintiffs cannot cure the basic flaw in their pleading"); *see also, e.g.*, *Brooks v. Vallejo City Unified*

21  *Sch. Dist.,* 2013 U.S. Dist. LEXIS 33455, 2013 WL 943460, at *4 (E.D. Cal. Mar.11, 2013)

22  (dismissing without leave to amend § 1983 claim challenging the defendants' responses to CPRA

23  requests). This is such a case.

24      MDalgorithms cannot establish that it has priority of rights to use "MD" for acne and haircare

25  products.  That right belongs to La Canada as shown by its incontestable registration of its MD®

26  mark.  MDalgorithms cannot establish that it has priority to use the combination of "MD" and "Hair"

27  for haircare products.  That priority belongs to La Canada based at least on its admittedly prior use of

28

- 14 -

1  MD® Nutri Hair for haircare products.  MDalgorithms cannot establish that it has priority of rights

2  to use "MD" in combination with "Acne."   La Canada's admittedly prior use of the product

3  description MD® Complexion Factor Acne Cleanser – Acne Wash to Reduce Acne alone establishes

4  that priority belongs to La Canada.  MDalgorithms' purported rights in its own MDhair and MDacne

5  marks are by its own admission narrowly circumscribed.

6      As a result, MDalgorithms, the junior user, can show no more than the consumer confusion it

7  alleges has occurred is the direct and proximate result of its entry into the market for non-medicated

8  acne and haircare products in 2021, well after La Canada had established itself in that market.  That

9  supports a finding of liability by MDalgorithms, not La Canada.

10  **IV.      CONCLUSION**

11      For the foregoing reasons, the counterclaims should be dismissed.  Because La Canada is the

12  senior user with the right to use its MD formative marks and the product name and descriptions on

13  which MDalgorithms' counterclaims are based, any amendment would be futile, so a dismissal with

14  prejudice is appropriate.

15  DATED:  September 27, 2023                    Respectfully submitted,

16

17                                                        By: */s/ Cecil E. Key*

18                                                              Andrew S. Dallmann
                                                              MCCARTNEY DALLMANN LLP

19                                                            Cecil E. Key
20                                                            KEY IP LAW GROUP, PLLC

21                                                            Attorneys for Plaintiff
                                                              LA CANADA VENTURES, INC.

22

23

24

25

26

27

28

- 15 -

1
2

## **CERTIFICATE OF SERVICE**

3
4

    I hereby certify that on September 27, 2023, I electronically transmitted the foregoing

5
document using the CM/ECF system for filing, which will transmit the document electronically to

6
all registered participants as identified on the Notice of Electronic Filing, and paper copies have

7
been served on those indicated as non-registered participants.   a true and correct copy of the

8
foregoing document was served via email to the counsel of record for Defendant at the following

9
addresses:

10
                                          */s/ Cecil E. Key*

11
                                          Cecil E. Key

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- 16 -