IAN K. BOYD (State Bar No. 191434)
E-Mail:        *iboyd@sideman.com*
GURLEEN K. RANA (State Bar No. 329278)
E-Mail:        *grana@sideman.com*
SIDEMAN & BANCROFT LLP
One Embarcadero Center, Twenty-Second Floor
San Francisco, California 94111-3711
Telephone:        (415) 392-1960
Facsimile:        (415) 392-0827

Attorneys for Defendant and Counterclaimant
MDALGORITHMS, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| LA CANADA VENTURES, INC., <br><br> Plaintiff and <br> Counterdefendant, <br><br> v. <br><br> MDALGORITHMS, INC., <br><br> Defendant and Counterclaimant. | Case No. 22-cv-07197 RS <br><br> **ANSWER TO SECOND AMENDED COMPLAINT; AMENDED COUNTERCLAIM** <br><br> Honorable Richard Seeborg |

Defendant and Counterclaimant MDalgorithms, Inc. ("MDalgorithms"), by and through its counsel of record below, hereby responds to the Second Amended Complaint of Plaintiff La Canada Ventures, Inc. ("La Canada"), as follows:

### NATURE OF THE ACTION

1.        Answering the allegations of Paragraph 1, MDalgorithms denies the allegations.

### THE PARTIES

2.        Answering the allegations of Paragraph 2, MDalgorithms is informed and believes that La Canada is a California corporation having its principal place of business in San Mateo, California.

LAW OFFICES <br> SIDEMAN & BANCROFT LLP <br> ONE EMBARCADERO CENTER, 22ND FLOOR <br> SAN FRANCISCO, CALIFORNIA 94111-3711

3.      Answering the allegations of Paragraph 3, MDalgorithms admits that it is a Delaware corporation with headquarters at 22 Shlomzion Hamalka Street, Herzliya, Israel 4662. MDalgorithms denies the remaining allegations of Paragraph 3.

**JURISDICTION AND VENUE**

4.      Answering the allegations of Paragraph 4, MDalgorithms admits the allegations.

5.      Answering the allegations of Paragraph 5, MDalgorithms admits the allegations.

6.      Answering the allegations of Paragraph 6, MDalgorithms admits the allegations.

**LA CANADA AND ITS MARKS**

7.      Answering the allegations of Paragraph 7, MDalgorithms lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore denies same.

8.      Answering the allegations of Paragraph 8, MDalgorithms lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore denies same.

9.      Answering the allegations of Paragraph 9, MDalgorithms lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore denies same.

10.     Answering the allegations of Paragraph 10, MDalgorithms lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore denies same.

11.     Answering the allegations of Paragraph 11, MDalgorithms lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore denies same.

12.     Answering the allegations of Paragraph 12, MDalgorithms denies the allegations.

13.     Answering the allegations of Paragraph 13, MDalgorithms denies the allegations.

**MDALGORITHMS AND ITS ALLEGED INFRINGING ACTIVITY**

14.     Answering the allegations of Paragraph 14, MDalgorithms admits that it offers a treatment system, utilizing computer technology, to diagnose potential treatments.  MDalgorithms denies the remaining allegations of Paragraph 14.

15.     Answering the allegations of Paragraph 15, MDalgorithms admits that it registered "MDacne" with the United States Patent and Trademark Office, that such registration was assigned Registration No. 4946004, that such registration is for "Computer software and downloadable computer software for education and advice in the field of the care and treatment of

LAW OFFICES

SIDEMAN & BANCROFT LLP

ONE EMBARCADERO CENTER 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

ANSWER TO SECOND AMENDED COMPLAINT; AMENDED COUNTERCLAIM

LAW OFFICES

SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1  skin disorders, namely, acne" in Class 9 and for "Providing a website featuring information and

2  advice in the field of the diagnosis and treatment of disorders, namely, acne"  in Class 41, and that

3  such registration asserts a first-use date of May 16, 2010.  MDalgorithms denies the remaining

4  allegations of Paragraph 15.

5       16.     Answering the allegations of Paragraph 16, MDalgorithms admits that it registered

6  "MDacne" with the United States Patent and Trademark Office, that such registration was

7  assigned Registration No. 5,519,511, that such registration is for "Medicated skin treatment and

8  cleansing creams" in Class 5, and that such registration asserts a first-use date of May 16, 2010.

9  MDalgorithms lacks knowledge or information sufficient to form a belief as to the truth of the

10  remaining allegations, and therefore denies same.

11       17.     Answering the allegations of Paragraph 17, MDalgorithms admits that it registered

12  "MDhair" with the United States Patent and Trademark Office on the Supplemental Register, that

13  such registration was assigned Registration No. 6,617,014, and that such registration is for

14  "providing temporary use of on-line non-downloadable computer software for education and

15  advice in the field of the care and treatment of skin and hair" in Class 42.  MDalgorithms lacks

16  knowledge or information sufficient to form a belief as to the truth of the remaining allegations,

17  and therefore denies same.

18       18.     Answering the allegations of Paragraph 18, MDalgorithms admits that it filed an

19  intent-to-use trademark application for "MDskin", that such application was for "downloadable

20  mobile software for use in analyzing a user's skin and preparing a personalized treatment plan" in

21  Class 9, and that in a June 24, 2021 response to the USPTO it listed a La Canada registration as

22  one of many cited examples of third-party uses of MD-formative marks for personal care products,

23  including beauty and cosmetic care.  MDalgorithms lacks knowledge or information sufficient to

24  form a belief as to the truth of the remaining allegations, and therefore denies same.

25       19.     Answering the allegations of Paragraph 19, MDalgorithms admits the allegations.

26       20.     Answering the allegations of Paragraph 20, MDalgorithms admits that it registered

27  the mark "MDacne" for "non-medicated skincare preparations" in Class 3 and that it asserted a

28

first-use date of November 21, 2021.  MDalgorithms lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations, and therefore denies same.

21.     Answering the allegations of Paragraph 21, MDalgorithms lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore denies same.

22.     Answering the allegations of Paragraph 22, MDalgorithms admits the allegation that "MD" is commonly understood in certain contexts to mean "Doctor of Medicine." MDalgorithms lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations, and therefore denies same.

23.     Answering the allegations of Paragraph 23, MDalgorithms lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore denies same.

24.     Answering the allegations of Paragraph 24, MDalgorithms lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore denies same.

25.     Answering the allegations of Paragraph 25, MDalgorithms lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and therefore denies same.

26.     Answering the allegations of Paragraph 26, MDalgorithms denies the allegations.

**MDALGORITHMS' ALLEGED WILLFUL DISREGARD OF ACTUAL CONFUSION**

27.     Answering the allegations of Paragraph 27, MDalgorithms admits that it received a letter from La Canada alleging indications of actual confusion, that La Canada requested that MDalgorithms cease use of certain trademarks, and that MDalgorithms responded to La Canada's letter.  MDalgorithms denies that any evidence of "actual confusion was brought to MDalgorithms' attention" by La Canada and the remaining allegations.

28.     Answering the allegations of Paragraph 28, MDalgorithms denies that La Canada "continued to experience actual confusion."  MDalgorithms admits that La Canada nonetheless reported alleged infringement to Amazon.com and Apple regarding MDalgorithms' products and app in an attempt to interfere with and harm MDalgorithms' business.

29.     Answering the allegations of Paragraph 29, the allegations do not sufficiently identify the "subsequent letter" at issue, and MDalgorithms accordingly lacks knowledge or information sufficient to form a belief as to the truth of the allegations, and denies same.

LAW OFFICES

SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1    30.    Answering the allegations of Paragraph 30, MDalgorithms admits that it sells

2  certain products without an additional treatment system.  MDalgorithms lacks knowledge or

3  information sufficient to form a belief as to the truth of the remaining allegations, and denies

4  same.

5    31.    Answering the allegations of Paragraph 31, MDalgorithms denies the existence of

6  any actual confusion.  MDalgorithms admits the allegations that it raised certain legal claims as to

7  La Canada in response to La Canada falsely reporting claims of actual confusion and infringement

8  to third parties concerning MDalgorithms.

9    **COUNT I – FEDERAL TRADEMARK INFRINGEMENT**

10    32.    Answering the allegations of Paragraph 32, MDalgorithms repeats and realleges its

11  responses to the allegations in Paragraphs 1-31 of the Complaint as though fully set forth herein.

12    33.    Answering the allegations of Paragraph 33, MDalgorithms denies the allegations.

13    34.    Answering the allegations of Paragraph 34, MDalgorithms admits that La Canada

14  is the listed owner of the cited trademark registrations.  MDalgorithms denies the remaining

15  allegations.

16    35.    Answering the allegations of Paragraph 35, MDalgorithms admits that La Canada

17  has filed a Section 15 affidavit as to Registration No. 4,471,494.  MDalgorithms denies the

18  remaining allegations as to Registration 4,471,494.  MDalgorithms lacks knowledge or belief as

19  to which additional registrations La Canada is specifically referencing in this Paragraph 35, and

20  accordingly denies such allegations.

21    36.    Answering the allegations of Paragraph 36, MDalgorithms denies the allegations.

22    37.    Answering the allegations of Paragraph 37, MDalgorithms denies the allegations.

23    38.    Answering the allegations of Paragraph 38, MDalgorithms admits that it uses

24  MDhair and MDacne concerning its products.  Except as expressly admitted, MDalgorithms

25  denies the remaining allegations.

26    39.    Answering the allegations of Paragraph 39, MDalgorithms lacks knowledge or

27  information sufficient to form a belief as to the truth of the allegations, and denies same.

28    40.    Answering the allegations of Paragraph 40, MDalgorithms denies the allegations.

41. Answering the allegations of Paragraph 41, MDalgorithms denies the allegations.

42. Answering the allegations of Paragraph 42, MDalgorithms denies the allegations.

43. Answering the allegations of Paragraph 43, MDalgorithms denies the allegations.

44. Answering the allegations of Paragraph 44, MDalgorithms denies the allegations.

45. Answering the allegations of Paragraph 45, MDalgorithms denies the allegations.

**COUNT II – UNFAIR COMPETITION**

46. Answering the allegations of Paragraph 46, MDalgorithms repeats and realleges its responses to the allegations in Paragraphs 1-45 of the Complaint as though fully set forth herein.

47. Answering the allegations of Paragraph 47, MDalgorithms denies the allegations.

48. Answering the allegations of Paragraph 48, MDalgorithms denies the allegations.

49. Answering the allegations of Paragraph 49, MDalgorithms denies the allegations.

50. Answering the allegations of Paragraph 50, MDalgorithms admits that it uses MDhair and MDacne concerning its products. Except as expressly admitted, MDalgorithms denies the remaining allegations.

51. Answering the allegations of Paragraph 51, MDalgorithms denies that it is infringing any claimed rights owned by La Canada and lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations, and denies same.

52. Answering the allegations of Paragraph 52, MDalgorithms denies the allegations.

53. Answering the allegations of Paragraph 53, MDalgorithms denies the allegations.

54. Answering the allegations of Paragraph 54, MDalgorithms denies the allegations.

55. Answering the allegations of Paragraph 55, MDalgorithms denies the allegations.

56. Answering the allegations of Paragraph 56, MDalgorithms denies the allegations.

57. Answering the allegations of Paragraph 57, MDalgorithms denies the allegations.

**COUNT III – CANCELLATION OF REGISTRATION**

58. Answering the allegations of Paragraph 58, MDalgorithms repeats and realleges its responses to the allegations in Paragraphs 1-57 of the Complaint as though fully set forth herein.

59. Answering the allegations of Paragraph 59, MDalgorithms denies the allegations.

LAW OFFICES

SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

60.     Answering the allegations of Paragraph 60, MDalgorithms admits that La Canada is the listed owner of the cited trademark registrations.  MDalgorithms denies the remaining allegations.

61.     Answering the allegations of Paragraph 61, MDalgorithms admits that La Canada has filed a Section 15 affidavit as to Registration No. 4471494.  MDalgorithms lacks knowledge or belief as to which additional registrations La Canada is specifically referencing in this Paragraph 61, and accordingly denies such allegations.  MDalgorithms denies the remaining allegations as to Registration 4471494.

62.     Answering the allegations of Paragraph 62, MDalgorithms denies the allegations.

63.     Answering the allegations of Paragraph 63, MDalgorithms denies the allegations.

64.     Answering the allegations of Paragraph 64, MDalgorithms admits that U.S. Reg. No. 6,668,393 for the mark "MDacne" issued to MDalgorithms on or about March 8, 2022. MDalgorithms lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations, and denies same

65.     Answering the allegations of Paragraph 65, MDalgorithms denies the allegations.

66.     Answering the allegations of Paragraph 66, MDalgorithms denies the allegations.

67.     Answering the allegations of Paragraph 67, MDalgorithms denies the allegations.

68.     Answering the allegations of Paragraph 68, MDalgorithms admits the existence of its "MDacne" registrations provides it a presumptive right to use the mark in commerce. MDalgorithms denies the remaining allegations.

69.     Answering the allegations of Paragraph 69, MDalgorithms denies the allegations.

**COUNT IV – DECLARATION THAT LA CANADA'S CONDUCT IS LAWFUL**

70.     Answering the allegations of Paragraph 70, MDalgorithms repeats and realleges its responses to the allegations in Paragraphs 1-69 of the Complaint as though fully set forth herein.

71.     Answering the allegations of Paragraph 71, MDalgorithms admits the allegations.

72.     Answering the allegations of Paragraph 72, MDalgorithms denies the allegation that actual confusion has occurred as result of any conduct by MDalgorithms, and alleges that to the extent any confusion has occurred, it is due to La Canada's improper and unlawful acts.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

MDalgorithms lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations, and denies same.

73. Answering the allegations of Paragraph 73, MDalgorithms admits that it has accused La Canada of acting improperly by making false reports of actual confusion and infringement, and that as a result MDalgorithms has indicated it will pursue certain claims against La Canada to defend itself. MDalgorithms denies the remaining allegations.

74. Answering the allegations of Paragraph 74, MDalgorithms denies the allegations.

75. Answering the allegations of Paragraph 75, MDalgorithms denies the allegations.

**COUNT V – FALSE ADVERTISING CLAIM IN VIOLATION OF FEDERAL LAW**

76. Answering the allegations of Paragraph 76, MDalgorithms repeats and realleges its responses to the allegations in Paragraphs 1-75 of the Complaint as though fully set forth herein.

77. Answering the allegations of Paragraph 77, MDalgorithms admits that it offers products in association with MDacne and MDhair, and that it maintains the website mdacne.com and mdhair.co, through which it offers its products in interstate commerce via the internet. Except as expressly admitted herein, MDalgorithms denies the remaining allegations.

78. Answering the allegations of Paragraph 78, MDalgorithms lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding the unidentified "statements of fact" and denies same.

79. Answering the allegations of Paragraph 79, MDalgorithms admits that it offers a customized treatment option based on customer input in response to an questionnaire provided by MDalgorithms, and that the recommended product is based in part on the customer input. Except as expressly admitted herein, MDalgorithms denies the remaining allegations of Paragraph 79.

80. Answering the allegations of Paragraph 80, MDalgorithms admits that it offers certain of its products with dermatologist support on how to use its products, and that such support includes a Board-certified Dermatologist, who is a Fellow of the American Academy of Dermatology. MDalgorithms further admits that all of its products are available over the counter and without a medical prescription. Except as expressly admitted herein, MDalgorithms denies the remaining allegations of Paragraph 80.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

81.     Answering the allegations of Paragraph 81, MDalgorithms denies the allegations.

82.     Answering the allegations of Paragraph 82, MDalgorithms denies the allegations.

83.     Answering the allegations of Paragraph 83, MDalgorithms denies the allegations.

84.     Answering the allegations of Paragraph 84, MDalgorithms admits that La Canada has misleadingly culled out alleged, unverified negative reviews of MDalgorithms from trustpilot.com, which speak for themselves, and which reviews may be created with a simple email account without further verification, in contrast to other verified review sites where MDalgorithms has a rating of over 90% customer satisfaction, as evidenced by more representative samples of such reviews, attached as **Exhibit A**.  Except as expressly admitted herein, MDalgorithms denies the allegations.

85.     Answering the allegations of Paragraph 85, MDalgorithms denies that La Canada has received complaints from purchasers of MDalgorithms' MDhair products, unless La Canada purposefully directed such MDalgorithms customers to itself.  Except as expressly admitted herein, MDalgorithms denies the remaining allegations.

86.     Answering the allegations of Paragraph 86, MDalgorithms denies the allegations.

87.     Answering the allegations of Paragraph 87, MDalgorithms denies the allegations.

88.     Answering the allegations of Paragraph 88, MDalgorithms lacks information and belief as to whether La Canada "directly competes" with MDalgorithms, and denies the allegation. MDalgorithms denies the remaining allegations herein.

89.     Answering the allegations of Paragraph 89, MDalgorithms denies the allegations.

90.     Answering the allegations of Paragraph 90, MDalgorithms denies the allegations.

## COUNT VI – FALSE ADVERTISING CLAIM IN VIOLATION OF CALIFORNIA STATE LAW

91.     Answering the allegations of Paragraph 91, MDalgorithms repeats and realleges its responses to the allegations in Paragraphs 1-90 of the Complaint as though fully set forth herein.

92.     Answering the allegations of Paragraph 92, MDalgorithms admits that it offers products in association with MDacne and MDhair, and that it maintains the website mdacne.com

1  and mdhair.co, through which it offers its products in interstate commerce via the internet.  Except

2  as expressly admitted herein,  MDalgorithms denies the remaining allegations.

3  93.  Answering the allegations of Paragraph 93, MDalgorithms lacks knowledge or

4  information sufficient to form a belief as to the truth of the allegations regarding the unidentified

5  "statements of fact," and denies same.

6  94.  Answering the allegations of Paragraph 94, MDalgorithms admits that it offers a

7  customized treatment option based on customer input in response to an questionnaire provided by

8  MDalgorithms, and that the recommended product is based in part on the customer input.  Except

9  as expressly admitted herein, MDalgorithms denies the remaining allegations of Paragraph 94.

10  95.  Answering the allegations of Paragraph 95, MDalgorithms admits that it offers

11  certain of its products with dermatologist support on how to use its products, and that such support

12  includes a Board-certified Dermatologist, who is a Fellow of the American Academy of

13  Dermatology.  MDalgorithms further admits that all of its products are available over the counter

14  and without a medical prescription.  Except as expressly admitted herein, MDalgorithms denies

15  the remaining allegations of Paragraph 95.

16  96.  Answering the allegations of Paragraph 96, MDalgorithms denies the allegations.

17  97.  Answering the allegations of Paragraph 97, MDalgorithms denies the allegations.

18  98.  Answering the allegations of Paragraph 98, MDalgorithms denies the allegations.

19  99.  Answering the allegations of Paragraph 99, MDalgorithms admits that La Canada

20  has misleadingly culled out alleged, unverified negative reviews of MDalgorithms from

21  trustpilot.com, which speak for themselves, and which reviews may be created with a simple email

22  account without further verification, in contrast to other verified review sites where MDalgorithms

23  has a rating of over 90% customer satisfaction, as evidenced by La Canada's own document and

24  more representative samples of such reviews concerning the overwhelmingly positive consensus

25  regarding MDalgorithms, attached as **Exhibit A**.  Except as expressly admitted herein,

26  MDalgorithms denies the remaining allegations.

27  100.  Answering the allegations of Paragraph 100, MDalgorithms denies that La Canada

28  has received complaints from purchasers of MDalgorithms' MDhair products, unless La Canada

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

10
ANSWER TO SECOND AMENDED COMPLAINT; AMENDED COUNTERCLAIM

1   purposefully directed such MDalgorithms' customers to itself.  Except as expressly admitted

2   herein, MDalgorithms denies the remaining allegations.

3       101.    Answering the allegations of Paragraph 101, MDalgorithms denies the allegations.

4       102.    Answering the allegations of Paragraph 102, MDalgorithms denies the allegations.

5       103.    Answering the allegations of Paragraph 103, MDalgorithms lacks information and

6   belief as to whether La Canada "directly competes" with MDalgorithms, and denies the allegation.

7   MDalgorithms denies the remaining allegations herein.

8       104.    Answering the allegations of Paragraph 104, MDalgorithms denies the allegations.

9       105.    Answering the allegations of Paragraph 105, MDalgorithms denies the allegations.

10      106.    Answering the allegations of Paragraph 106, MDalgorithms denies the allegations.

11      107.    Answering the allegations of Paragraph 107, MDalgorithms denies the allegations.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE
### (Unclean Hands)

108.    La Canada is precluded from the requested relief because it has acted with unclean hands.

### SECOND AFFIRMATIVE DEFENSE
### (Lack of Protectable Marks)

109.    The relevant marks allegedly proprietary to La Canada, as asserted in the Complaint, are not protectable as a matter of law.

### THIRD AFFIRMATIVE DEFENSE
### (Balance of Hardships)

110.    La Canada's requested injunction is not warranted by the balance of hardships.

### FOURTH AFFIRMATIVE DEFENSE
### (No Damages)

111.    La Canada's claims fail in whole or in part because it has not suffered any damages.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1
2

**FIFTH AFFIRMATIVE DEFENSE**
**(No Likelihood of Confusion)**

3

112.    La Canada's claims fail in whole or in part because, to the extent it has any

4

protectable trademark rights, such rights are so thin and narrow in such a crowded field of

5

descriptive uses that no such confusion is likely with MDalgorithms or any of the countless third

6

parties who utilize a mark with MD in combination with other terms.

7
8

**SIXTH AFFIRMATIVE DEFENSE**
**(Failure to Police)**

9

113.    La Canada lacks the ability to seek enforce its purported trademark rights in

10

"composite marks based on the root MD in combination with other terms" because of its failure to

11

police such alleged rights.

12
13

**SEVENTH AFFIRMATIVE DEFENSE**
**(Lack of Secondary Meaning)**

14

114.    The claims made in the Second Amended Complaint are barred, in whole or in part,

15

on the basis that certain of La Canada's claimed trademarks lack secondary meaning.

16

17

**ADDITIONAL DEFENSES**

18

115.    MDalgorithms reserves the right to assert additional defenses based on information

19

learned or obtained during discovery.

20

WHEREFORE, MDalgorithms prays for judgment against La Canada as follows:

21

1.    That La Canada take nothing by way of the Second Amended Complaint;

22

2.    The Second Amended Complaint, and each and every purported claim for relief

23

therein, be dismissed with prejudice;

24

3.    That judgment be entered in favor of MDalgorithms;

25

4.    That MDalgorithms be awarded its reasonable attorneys' fees and costs of suit as

26

incurred; and

27

5.    For such other and further relief as the Court may deem just and proper.

28

**AMENDED COUNTERCLAIM**

Defendant/Counterclaimant MDalgorithms, Inc. ("MDalgorithms"), for its Amended Counterclaim against Plaintiff/Counterclaim Defendant La Canada Ventures, Inc. ("La Canada"), alleges as follows:

1. La Canada's Second Amended Complaint asserts rights based solely on purported trademark registrations which are invalid either because they were *void ab initio* upon filing with the USPTO due to incurable defects in the original applications or because false representations were subsequently made to the USPTO to achieve certain material and beneficial rights under 15 U.S.C. Section 1065 to which the registrant was not otherwise entitled. These registrations are therefore invalid and should be canceled.

2. The invalidity of La Canada's claimed registrations only further confirms that La Canada is unfairly and unlawfully competing against MDalgorithms by purposefully utilizing MDalgorithms' own marks, and only after MDalgorithms began use of such marks, to create the false belief that La Canada makes MDalgorithms' products. For example, it was only after learning of MDalgorithms' use of MDhair that La Canada took affirmative measures to utilize the URL www.mdhair.com to lure in to La Canada's website those customers searching for MDalgorithms' MDhair products. La Canada did not and does not offer a product named or labeled "MDhair" or "MD Hair," nor had it marketed or promoted its goods as being available at mdhair.com at any time prior to MDalgorithms' launch of its MDhair products. Similarly, it was only after learning of MDalgorithms' use of MDacne that La Canada took affirmative measures to begin promoting its skincare products using the mark "MD acne" despite the fact that La Canada did not and does not offer a product named or labeled "MDacne" or "MD acne," nor had La Canada marketed or promoted its goods under the "MD acne" mark prior to MDalgorithms' launch of its MDacne products. La Canada has purposefully sought to use MDalgorithms' own marks to deceive MDalgorithms' customers, to create confusion, and to cause harm to MDalgorithms.

SIDEMAN & BANCROFT LLP
LAW OFFICES
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

## JURISDICTION AND VENUE

3.     The Court has original jurisdiction over this action pursuant to 15 U.S.C. § 1131 and 28 U.S.C. §§ 1331 and 1338.

4.     This Court has personal jurisdiction over La Canada because it resides in this district, regularly conducts business in this district and MDalgorithms' counterclaims arise out of business conducted in this district.

5.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391, by reason of La Canada's business practices in this district and by reason of La Canada's Second Amended Complaint in this action.

## THE PARTIES

6.     Counterclaimant MDalgorithms, Inc. is a Delaware corporation with its principal place of business at 22 Shlomzion Hamalka Street, Herzliya, Israel 4662.

7.     Upon information and belief, Counterclaim Defendant La Canada Ventures, Inc. ("La Canada") is a California corporation with its principal place of business at 448 N. San Mateo Drive, San Mateo, California 94401.

## FACTUAL BACKGROUND

8.     La Canada is a California corporation.  MDalgorithms is informed and believes that La Canada was incorporated in 2006 and that since its formation, Dr. Susan Lin ("Lin" ) has been the Chief Executive Officer ("CEO") of La Canada.

## CERTAIN OF PLAINTIFF'S PLED REGISTRATIONS ARE *VOID AB INITIO* DUE TO INCURABLE FILING DEFECTS

### The Application for the MD FACTOR Registration was *Void Ab Initio*

9.     On July 27, 2018, Attorney John Kasha of Kasha Law LLC, then counsel of record for Lin, filed a trademark application for the mark MD FACTOR in the name of Lin, averring that Lin was the "individual" owner of the application, for "Cosmetic preparations for beauty and wellness" in International Class 3.

10.     On March 3, 2020, Attorney John Kasha filed a Statement of Use, alleging first use of the MD FACTOR mark on January 1, 2016.  The application registered on March 30, 2021 and was assigned Reg. No. 6309386.

11.     La Canada has now utilized and asserted that registration against MDalgorithms in its Second Amended Complaint [see, e.g., SAC, ¶10], asserting that MDalgorithms is infringing La Canada's rights arising from the purported registration.

12.     Lin was not the true owner of the MD FACTOR mark at the time of the filing of the trademark application, because she, as CEO of La Canada, filed as an "individual," when in fact the La Canada corporation owned the mark.  Because Lin was identified as the "individual" owner of the MD FACTOR mark at the time of the filing of the application, when in fact she did not own the mark, the trademark application was void as filed, and such defect is incurable pursuant to TMEP 1201.02(c) and 37 C.F.R. Section 2.71(d).

13.     The application for the MD FACTOR registration was *void ab initio*, this defect cannot be cured, and the Court should accordingly issue an Order cancelling Reg. No. 6309386.

**The Application for the MD BY SUSAN F. LIN M.D. Registration was *Void Ab Initio***

14.     On October 17, 2018, Attorney Kelly Kasha of Kasha Law LLC filed a trademark application for the mark MD BY SUSAN F. LIN M.D. in the name of Lin, averring that Lin was the "individual" owner of the application, for "Cosmetics; hair shampoos and conditioners; non-medicated acne treatment preparations in the nature of facial cleaning preparation, namely, salicylic acne cleanser not for medical purposes; non-medicated toiletries in the nature of non-medicated toiletry preparations" in International Class 3 and "Acne treatment preparations; nutraceuticals for the treatment of hair loss; nutraceuticals for use as a dietary supplement" in International Class 5.

15.     The application averred that Lin first used the mark in interstate commerce on January 1, 2014.  The accompanying specimen of use submitted to the USPTO by Lin's counsel revealed that Lin was not the party using the mark in commerce.

16.     The application registered on September 17, 2019 and was assigned Reg. No. 5860508.

LAW OFFICES

SIDEMAN & BANCROFT LLP

ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

17.     La Canada has now utilized and asserted that registration against MDalgorithms in its Second Amended Complaint [see, e.g., SAC, ¶10], asserting that MDalgorithms is infringing La Canada's rights arising from the purported registration.

18.     Lin was not the true owner of the MD BY SUSAN F. LIN M.D. mark at the time of the filing of the trademark application, because she, as CEO of La Canada, filed as an "individual," when in fact the La Canada corporation owned the mark.  Because Lin was identified as the "individual" owner of the MD FACTOR mark at the time of the filing of the application, when in fact she did not own the mark, the trademark application was void as filed, and such defect is incurable pursuant to TMEP 1201.02(c) and 37 C.F.R. Section 2.71(d).

19.     The application for the MD BY SUSAN F. LIN M.D. registration was *void ab initio*, this defect cannot be cured, and the Court should accordingly issue an Order cancelling Reg. No. 5860508.

### The Application for the MD WELLNESS BY SUSAN F. LIN M.D. Registration was *Void Ab Initio*

20.     On July 27, 2018, Attorney Kelly Kasha filed a trademark application for the mark MD WELLNESS BY SUSAN F. LIN M.D. in the name of Lin, averring that Lin was the "individual" owner of the application, for "Cosmetic preparation for beauty and wellness" in International Class 3 and "Supplement for beauty and wellness" in International Class 5.

21.     Attorney John Kasha later filed a Statement of Use in support of the registration, averring a first-use date of January 1, 2017.

22.     The application registered on January 19, 2021 and was assigned Reg. No. 6251811.

23.     La Canada has now utilized and asserted that registration against MDalgorithms in its Second Amended Complaint [see, e.g., SAC, ¶10], asserting that MDalgorithms is infringing La Canada's rights arising from the purported registration.

24.     Lin was not the true owner of the MD WELLNESS BY SUSAN F. LIN M.D. mark at the time of the filing of the trademark application, because she, as CEO of La Canada, filed as an "individual," when in fact the La Canada corporation owned the mark.  Because Lin was

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1  identified as the "individual" owner of the MD WELLNESS BY SUSAN F. LIN M.D. mark at the

2  time of the filing of the application, when in fact she did not own the mark, the trademark

3  application was void as filed, and such defect is incurable pursuant to TMEP 1201.02(c) and 37

4  C.F.R. Section 2.71(d).

5       25.     The application for the MD WELLNESS BY SUSAN F. LIN M.D. registration was

6  *void ab initio*, this defect cannot be cured, and the Court should accordingly issue an Order

7  cancelling Reg. No. 6251811.

8  **CERTAIN OF PLAINTIFF'S PLED REGISTRATIONS WERE MAINTAINED VIA**

9  **FRAUD ON THE USPTO**

10  **The "MD" Registration and Subsequent Section 15 Fraud on the USPTO**

11       26.     On or about March 19, 2012, Lin personally filed a federal trademark application

12  for the mark "MD" for "Cosmetics; Hair shampoos and conditioners; Non-medicated acne

13  treatment preparations; Non-medicated toiletries" in International Class 3 and "Acne treatment

14  preparations; Nutraceuticals for the treatment of hair loss; Nutraceuticals for use as a dietary

15  supplement" in International Class 5 ("MD Application").

16       27.     Lin listed herself as the "individual" owner of the MD Application. However, Lin

17  was not the true owner of the MD mark at the time of filing of the trademark application, because

18  she, as the CEO of La Canada, filed as an "individual," when in fact the La Canada corporation

19  owned the mark.  The filed MD Application listing Lin as the owner was accordingly an incurable

20  defect, as confirmed by TMEP Section 1201.02(c) and 37 C.F.R. Section 2.71(d), resulting in the

21  application being *void ab initio.*

22       28.     On September 19, 2013, Lin's trademark counsel of record, Kasha Law LLC, and

23  specifically Attorney John Kasha, filed a Statement of Use on behalf of Lin, alleging that Lin had

24  first used the mark on January 1, 2012.  Attorney John Kasha concurrently submitted respective

25  specimens of use in International Classes 3 and 5 for the MD mark in support of the requested

26  registration.  Those specimens of use, which were La Canada marketing materials, not only

27  appeared to show an improper use of the ® symbol displayed with the MD mark prior to

28

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1   registration, they also confirmed that Lin was not the owner of the mark and not the party using

2   the mark in commerce.  The MD mark then registered on January 21, 2014.

3        29.    The submission of a valid Section 15 declaration under 15 U.S.C. Section 1065,

4   which may be filed as early as five years from the original trademark registration date, provides

5   that registrant a new right which she would not otherwise have, specifically, the right to have her

6   registration in litigation (including this litigation) accepted as conclusive evidence of her exclusive

7   right to use the registered mark in commerce.

8        30.    In accordance with Section 15 of the Lanham Act, a valid affidavit or declaration of

9   incontestability for the MD mark registration, if the requirements of Section 15 were met, could

10  have been filed on or after January 21, 2019.

11       31.    Immediately before that January 21, 2019 date, on January 15, 2019, Lin entered

12  into a trademark license agreement ("License Agreement") with La Canada, where she licensed

13  certain trademark registrations and trademark applications (improperly filed in her name as an

14  individual) to the La Canada corporation, including the MD mark.  Per the License Agreement, the

15  trademark license became effective on January 15, 2019.

16       32.    MDalgorithms is informed and believes that Lin's trademark counsel at Kasha Law

17  LLC assisted Lin in preparing and executing the License Agreement.

18       33.    Just four days later, on January 21, 2019, which was the first possible day to file the

19  Section 15 Declaration of Incontestability for the MD registration, Lin's counsel of record, Kasha

20  Law LLC, submitted a Section 15 declaration on behalf of Lin for the MD registration.

21  Specifically, Attorney Kelly Kasha signed the Section 15 Declaration on behalf of Lin, averring

22  that Lin, "the owner" had "continuously used the mark in commerce for five (5) consecutive years

23  after the date of registration . . . and is still using the mark in commerce on or in connection with

24  all goods or services listed in the existing registration."  In submitting the Section 15 Declaration,

25  Attorney Kelly Kasha also affirmatively confirmed the following statements:

26       a.    "To the best of the signatory's knowledge, information and belief, formed after an

27           inquiry reasonable under the circumstances, the allegations and other factual contentions

28           made above have evidentiary support"; and

b.    "The signatory being warned that willful false statements and the like are punishable by fine or imprisonment or both, under 18 U.S.C. § 1001, and that such willful false statements and the like may jeopardize the validity of this submission and the registration, declares that all statements made of his/her own knowledge are true and all statements made on information and belief are believed to be true."

34.    In submitting a signed declaration to the USPTO, a declarant is charged with knowing what is in the declaration being signed, and by failing to make an appropriate inquiry into the accuracy of the statements, the declarant at minimum acts with a reckless disregard for the truth.

35.    At the time that Attorney Kelly Kasha submitted the Section 15 Declaration, she knew, or clearly should have known, that Lin had not "continuously used the mark in commerce for five (5) consecutive years after the date of registration" because it was evident that Lin was not the party using the MD mark and not the owner of the MD mark.

36.    Lin's trademark counsel at Kasha Law LLC, including Attorney Kelly Kasha, further knew that Lin had just licensed the MD trademark (and other trademarks) to La Canada four days before submitting the Section 15 Declaration, despite there being no discernible change in the actual use of the MD mark by La Canada following the License Agreement.

37.    Accordingly both Lin, and Attorney Kelly Kasha, knew or clearly should have known at the time of the Section 15 filing that Lin, as the improperly named individual owner of the registration, had not used the MD mark in commerce continuously for five consecutive years since January 2014.

38.    The  submitted false Section 15 affidavit/declaration, as relied on by the USPTO, allowed Lin, as the current registrant, to obtain a new right which she would not otherwise have, specifically, the right to have her registration in litigation (including this litigation) accepted as conclusive evidence of her exclusive right to use the registered mark in commerce.

39.    La Canada has now utilized and asserted that right improperly received under Section 15 against MDalgorithms in its Second Amended Complaint, asserting that La Canada's MD registration is "incontestable pursuant to Section 15 U.S.C. § 1065, which is conclusive

SIDEMAN & BANCROFT LLP
LAW OFFICES
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1   evidence under 15 U.S.C. § 1115 of the validity of La Canada's marks covered by the

2   incontestable registrations, including MD mark" [SAC, ¶35] and that MDalgorithms is infringing

3   La Canada's rights arising from the purported registration.

4       40.     The inclusion of false statements in a Section 15 affidavit/declaration is material

5   and here constitutes fraud on the USPTO warranting cancellation of the involved registration

6   under Section 14(3) of the Trademark Act.

7   **The "MD Intimate Restore" Registration and Subsequent Section 15 Fraud on the USPTO**

8       41.     La Canada is the current owner of U.S. Trademark Registration No. 4603019, for

9   the mark "MD INTIMATE RESTORE" for "Anti-aging stem cell serum for topical cosmetic use"

10  in International Class 3.

11      42.     On August 29, 2013, Lin's trademark counsel, Kasha Law LLC, and specifically

12  Attorney John Kasha, filed the trademark application for the MD INTIMATE RESTORE mark in

13  the name of Lin as an "individual." However, Lin was not the true owner of the filed MD

14  INTIMATE RESTORE application at the time of the filing of the trademark application, because

15  she, as the CEO of La Canada, filed as an individual when in fact the La Canada corporation

16  owned the mark.   Listing Lin as the individual owner of the trademark application was an

17  incurable defect, as confirmed by TMEP Section 1201.02(c) and 37 C.F.R. Section 2.71(d),

18  resulting in the application being *void ab initio.*

19      43.     On June 30, 2014, Lin's trademark counsel, Kasha Law LLC, and specifically

20  Attorney Kelly Kasha, filed a Statement of Use on behalf of Lin, alleging (falsely) that Lin had

21  first used the mark in interstate commerce on February 1, 2014.  Attorney Kelly Kasha also

22  submitted respective specimens of use in International Classes 3 and 5 for the MD INTIMATE

23  RESTORE mark.  The specimens, which came from La Canada marketing materials, confirmed

24  that Lin was not the owner of the MD INTIMATE RESTORE mark and that she was not the party

25  using the mark in commerce.  The MD INTIMATE RESTORE mark then registered on September

26  9, 2014.

27      44.     On January 15, 2019, Lin entered into the License Agreement with La Canada,

28  where she licensed certain trademark registrations and applications (improperly filed in her name

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

ANSWER TO SECOND AMENDED COMPLAINT; AMENDED COUNTERCLAIM

SIDEMAN & BANCROFT LLP
LAW OFFICES
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1   as an individual), including the MD INTIMATE RESTORE mark, to La Canada.  The License

2   Agreement became effective on January 15, 2019.

3       45.     MDalgorithms is informed and believes that Lin's counsel at Kasha Law LLC

4   assisted Lin in preparing and executing the License Agreement.

5       46.     On March 12, 2019, Lin's counsel of record, Kasha Law LLC, and specifically

6   Attorney Kelly Kasha, filed an assignment with the USPTO dated March 11, 2019, whereby Lin

7   assigned certain trademarks, including the MD INTIMATE RESTORE mark, to La Canada.

8       47.     In accordance with Section 15 of the Lanham Act, 15 U.S.C. Section 1065, an

9   affidavit or declaration of incontestability for the MD INTIMATE RESTORE registration, if the

10  requirements of Section 15 were met, could be filed on or after September 9, 2019.

11      48.     On September 9, 2019, the first possible day to file a Section 15 Declaration, Lin's

12  counsel of record, Kasha Law LLC, and specifically Attorney Kelly Kasha, submitted a Section 15

13  declaration on behalf of La Canada.  Attorney Kelly Kasha signed the Section 15 Declaration on

14  behalf of La Canada averring that the owner had "continuously used the mark in commerce for

15  five (5) consecutive years after the date of registration . . . and is still using the mark in commerce

16  on or in connection with all goods or services listed in the existing registration."  Attorney Kelly

17  Kasha made this statement notwithstanding that she knew or clearly should have known that Lin

18  had been the individual owner of the MD INTIMATE RESTORE registration until March 2019,

19  and that Lin had never used the mark in commerce.  In submitting the Section 15 Declaration,

20  Attorney Kelly Kasha also affirmatively confirmed the following statements:

21      a.      "To the best of the signatory's knowledge, information and belief, formed after an

22              inquiry reasonable under the circumstances, the allegations and other factual contentions

23              made above have evidentiary support"; and

24      b.      "The signatory being warned that willful false statements and the like are

25              punishable by fine or imprisonment or both, under 18 U.S.C. § 1001, and that such willful

26              false statements and the like may jeopardize the validity of this submission and the

27              registration, declares that all statements made of his/her own knowledge are true and all

28              statements made on information and belief are believed to be true."

49.     At the time that Attorney Kelly Kasha submitted the Section 15 Declaration on September 9, 2019, she knew or clearly should have known the statement was false, because she knew or clearly should have known the owner of the registration was Lin until March 11, 2019, and that Lin, as the improperly named individual owner of the MD INTIMATE RESTORE registration, had clearly never used the mark in commerce (as confirmed by the La Canada marketing materials submitted as specimens of use), all of which precluded Attorney Kelly Kasha from declaring that at all times the owner of the MD INTIMATE RESTORE registration had "continuously used the mark in commerce for five (5) consecutive years after the date of registration."

50.     The false Section 15 affidavit/declaration was relied on by the USPTO and allowed La Canada to obtain a new right which it would not otherwise have, specifically, the right to have its registration in litigation (including this litigation), accepted as conclusive evidence of its exclusive right to use the registered mark in commerce.

51.     La Canada has now utilized and asserted that right improperly received under Section 15 against MDalgorithms in its Second Amended Complaint, asserting that La Canada's MD INTIMATE RESTORE registration is "incontestable pursuant to Section 15 U.S.C. § 1065, which is conclusive evidence under 15 U.S.C. § 1115 of the validity of La Canada's marks covered by the incontestable registrations" [SAC, ¶35] and that MDalgorithms is infringing La Canada's rights arising from the purported registration.

52.     The inclusion of the false statements in the Section 15 affidavit/declaration was material and constitutes fraud on the USPTO, warranting cancellation of the MD INTIMATE RESTORE registration under Section 14(3) of the Trademark Act.

**The "MD 101" Registration and Subsequent Section 15 Fraud on the USPTO**

53.     La Canada is the current owner of U.S. Trademark Registration No. 3459245, for the mark "MD 101" for "Cosmetic preparation for maintenance and growth of eyelashes" in International Class 3.

LAW OFFICES

SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

LAW OFFICES

SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

54.     On October 3, 2007, Lin's then trademark counsel, Joseph Strabala of the Law Offices of Joseph Strabala, filed the trademark application for the MD 101 mark in the name of Lin as an "individual." However, Lin was not the true owner of the filed MD 101 application at the time of the filing of the trademark application, because she, as the CEO of La Canada, was designated by her counsel as an individual owner when in fact the La Canada corporation owned the mark.   Listing Lin as the owner of the trademark application was an incurable defect, as confirmed by TMEP Section 1201.02(c) and 37 C.F.R. Section 2.71(d), resulting in the application being *void ab initio.*  The MD 101 mark then registered on July 1, 2008 as Reg. No. 3459245.

55.     On July 1, 2013, Lin's then counsel of record, Kasha Law LLC, and specifically Attorney John Kasha, signed and submitted a Section 8 declaration, concurrently providing a specimen of use of the MD 101 mark, which came from La Canada marketing materials, further confirming that Lin did not own the mark, was improperly named as the individual owner of the registration, and was not the party using the mark in commerce.

56.     On December 12, 2014, Kasha Law LLC, and specifically Attorney Kelly Kasha, submitted a Section 15 declaration on behalf of Lin.  Attorney Kelly Kasha signed the Section 15 Declaration on behalf of La Canada averring that the owner had "continuously used the mark in commerce for five (5) consecutive years after the date of registration . . . and is still using the mark in commerce on or in connection with all goods or services listed in the existing registration." Attorney Kelly Kasha made this statement notwithstanding that she knew or clearly should have known that Lin had been the individual owner of the MD 101 registration for that entire five-year period and that Lin had never used the mark in commerce (as evidenced by the Section 8 specimen from La Canada submitted by her law firm).  In submitting the Section 15 Declaration, Attorney Kelly Kasha also affirmatively confirmed the following statements:

a.     "To the best of the signatory's knowledge, information and belief, formed after an inquiry reasonable under the circumstances, the allegations and other factual contentions made above have evidentiary support"; and

b.     "The signatory being warned that willful false statements and the like are punishable by fine or imprisonment or both, under 18 U.S.C. § 1001, and that such willful

1   false statements and the like may jeopardize the validity of this submission and the

2   registration, declares that all statements made of his/her own knowledge are true and all

3   statements made on information and belief are believed to be true."

4       57.     At the time that Attorney Kelly Kasha submitted the Section 15 Declaration, she

5   knew or clearly should have known the statement was false, because she knew or clearly should

6   have known that Lin had not "continuously used the mark in commerce for five (5) consecutive

7   years after the date of registration" because Lin, as the improperly named owner of the

8   registrations, was clearly not the party using the mark in commerce, as evidenced by the La

9   Canada materials displaying use of the mark which Lin's counsel submitted in support of the

10  registration.

11      58.     The false Section 15 affidavit/declaration was relied on by the USPTO and allowed

12  La Canada to subsequently obtain a new right which it would not otherwise have, specifically, the

13  right to have its registration in litigation (including this litigation), accepted as conclusive

14  evidence of its exclusive right to use the registered mark in commerce.

15      59.     La Canada has now utilized and asserted that right received under Section 15

16  against MDalgorithms in its Second Amended Complaint, asserting that La Canada's MD 101

17  registration is "incontestable pursuant to Section 15 U.S.C. § 1065, which is conclusive evidence

18  under 15 U.S.C. § 1115 of the validity of La Canada's marks covered by the incontestable

19  registrations" [SAC, ¶35] and that MDalgorithms is infringing La Canada's rights arising from the

20  purported registration.

21      60.     The inclusion of the false statements in the Section 15 affidavit/declaration was

22  material and constitutes fraud on the USPTO, warranting cancellation of the MD 101 registration

23  under Section 14(3) of the Trademark Act.

24  **The "MD Lash Factor" Registration and Subsequent Section 15 Fraud on the USPTO**

25      61.     La Canada is the current owner of U.S. Trademark Registration No. 3432309, for

26  the mark "MD LASH FACTOR" for "Cosmetic preparation for maintenance and growth of

27  eyelashes" in International Class 3.

28

SIDEMAN & BANCROFT LLP
LAW OFFICES
ONE EMBARCADERO CENTER 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

62.     On March 30, 2007, Lin's then trademark counsel, Joseph Strabala of the Law Offices of Joseph Strabala, filed the trademark application for the MD LASH FACTOR mark in the name of Lin as an "individual." However, Lin was not the true owner of the filed MD LASH FACTOR application at the time of the filing of the trademark application, because she, as the CEO of La Canada, filed as an individual when in fact La Canada owned the mark.   Listing Lin as the owner of the trademark application was an incurable defect, as confirmed by TMEP Section 1201.02(c) and 37 C.F.R. Section 2.71(d), resulting in the application being *void ab initio*.  The MD LASH FACTOR mark then registered on May 20, 2008 as Reg. No. 3432309.

63.     On May 20, 2013, Lin's counsel of record, Kasha Law LLC, and specifically Attorney John Kasha, submitted a Section 8 declaration, signed by Lin, concurrently providing a specimen of use of the MD LASH FACTOR mark from La Canada marketing materials, which further confirmed that Lin did not own the mark, was improperly named as the owner of the registration, and was not the party using the mark in commerce.

64.     On December 12, 2014, Kasha Law LLC, and specifically Attorney Kelly Kasha, submitted a Section 15 declaration on behalf of Lin.  Attorney Kelly Kasha signed the Section 15 Declaration on behalf of Lin averring that the owner had "continuously used the mark in commerce for five (5) consecutive years after the date of registration . . . and is still using the mark in commerce on or in connection with all goods or services listed in the existing registration." Attorney Kelly Kasha made this statement notwithstanding that she knew or clearly should have known that Lin had been the individual owner of the MD LASH FACTOR registration for that entire period of the mark's registration and that Lin had never owned the mark or used the mark in commerce (as evidenced by the Section 8 specimen from La Canada materials submitted by her law firm).  In submitting the Section 15 Declaration, Attorney Kelly Kasha also affirmatively confirmed the following statements:

a.      "To the best of the signatory's knowledge, information and belief, formed after an inquiry reasonable under the circumstances, the allegations and other factual contentions made above have evidentiary support"; and

SIDEMAN & BANCROFT LLP
LAW OFFICES
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

b.     "The signatory being warned that willful false statements and the like are punishable by fine or imprisonment or both, under 18 U.S.C. § 1001, and that such willful false statements and the like may jeopardize the validity of this submission and the registration, declares that all statements made of his/her own knowledge are true and all statements made on information and belief are believed to be true."

65.     At the time that Attorney Kelly Kasha submitted the Section 15 Declaration, she knew or clearly should have known the statement was false, because she knew or clearly should have known that Lin  had not "continuously used the mark in commerce for five (5) consecutive years after the date of registration," because Lin, as the improperly named owner of the registrations, was clearly not the party using the mark in commerce.

66.     The false Section 15 affidavit/declaration was relied on by the USPTO, and subsequently allowed La Canada to assert a new right which it would not otherwise have, specifically, the right to have its registration in litigation (including this litigation), accepted as conclusive evidence of its exclusive right to use the registered mark in commerce.

67.     La Canada has now utilized and asserted that right received under Section 15 against MDalgorithms in its Second Amended Complaint, asserting that La Canada's MD LASH FACTOR registration is "incontestable pursuant to Section 15 U.S.C. § 1065, which is conclusive evidence under 15 U.S.C. § 1115 of the validity of La Canada's marks covered by the incontestable registrations" [SAC, ¶35] and that MDalgorithms is infringing La Canada's rights arising from the purported registration.

68.     The inclusion of the false statements in the Section 15 affidavit/declaration was material, constituting fraud on the USPTO warranting cancellation of the MD LASH FACTOR registration under Section 14(3) of the Trademark Act.

## **MDALGORITHMS**

69.     Counterclaimant MDalgorithms, Inc. was founded by Yoram Harth, M.D., a world-renowned dermatologist and specialist, and CEO Oded Harth, a technological innovator who was named to Forbes 30 Under 30.  MDalgorithms offers skincare and hair care products and services

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1  online under the names MDacne (beginning in 2017) and MDhair (beginning in 2021),

2  respectively.

3     70.    MDalgorithms distinguishes itself from its competitors by selling its products

4  through personalization.  It utilizes its proprietary technology applying image analysis and AI to

5  customize treatment kits for customers based on the customer's specific needs, via its MDacne

6  mobile app (available via the App Store and Play Store), and at MDacne.com and MDhair.co.

7     71.    The majority of MDalgorithms' customers begin the sales cycle by completing a

8  quiz and submitting photographs of their skin or scalp before there is any commitment to

9  purchase.  MDalgorithms' AI-based software analyzes the customer information and images to

10  personalize the products based on that specific customer need and profile, which the customer may

11  then elect to purchase for shipment.

12     72.    The overwhelming majority of MDalgorithms' sales of goods and services under

13  MDacne come via the MDacne app and its corresponding website, mdacne.com.  For roughly the

14  past six years, MDalgorithms has sold a very high volume of goods and services under its MDacne

15  mark, based on numerous  transactions.

16     73.    MDalgorithms owns Registration No. 4946004 for the mark MDacne, which issued

17  on April 26, 2016, for "Computer software and downloadable computer software for education

18  and advice in the field of care and treatment of skin disorders, namely, acne" in Class 9 and

19  "Providing a website featuring information and advice in the field of the diagnosis and treatment

20  of acne" in Class 41.  It also owns additional registrations for the mark MDacne, namely, (a)

21  Registration No. 5519511, which issued on July 17, 2018, for "Medicated skin treatment and

22  cleansing creams" in Class 5, and (b) Registration No. 6668393, which issued on August 14, 2021,

23  for "Non-medicated skin care preparations."  All of the above registrations are on the Principal

24  Register.

25     74.    MDalgorithms' MDhair products and services are currently offered exclusively at

26  MDalgorithms' website, mdhair.co.  Since 2021, MDalgorithms has sold a high volume of goods

27  and service under its MDhair mark

28

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

75.     MDalgorithms owns Registration No. 6617014 for the mark MDhair, which issued on January 11, 2022, for "Providing temporary use of on-line non-downloadable computer software for education and advice in the field of the care and treatment of skin and hair" and this registration is on the Supplemental Register.

76.     As a result of its extensive and continuous use, MDalgorithms' MDhair mark has acquired secondary meaning among the relevant consuming public.

77.     When MDalgorithms began offering its MDhair products and services on mdhair.co in 2021, the website mdhair.com was dormant and listed as available for sale by an anonymous third party who chose to not publicly disclose its ownership of the site.

78.     In November 2022, La Canada filed a Complaint against MDalgorithms which it served in March 2023, alleging that the latter's use of MDacne and MDhair was infringing La Canada's federal trademark registrations for what it collectively defined as the "MD Formative Marks" which, as established by MDalgorithms herein, consists almost entirely of invalid trademark registrations, namely, MD, MD 101, MD LASH FACTOR, MD INTIMATE RESTORE, MD BY SUSAN F. LIN M.D., MD WELLNESS BY SUSAN LIN M.D., and MD FACTOR.

79.     La Canada asserts that MDalgorithms "combines the descriptive MD component with another term that describes the condition to be treated."   Yet nowhere in its Second Amended Complaint does La Canada assert that any of its MD Formative Marks (all of which contain "the descriptive MD component") have acquired secondary meaning.  La Canada relies solely on its trademark registrations (which are invalid) to assert its trademark rights in its claims against MDalgorithms.

80.     La Canada's attempt to monopolize the term "MD" for health and cosmetic products is further inconsistent with the crowded field of third-party uses utilizing "the root MD in combination with other terms" to signal to consumers that such personal care products have some affiliation or recommendation from an MD, or Doctor of Medicine.

81.     Indeed, as the United States Patent and Trademark Office ("USPTO") previously found, in rejecting La Canada's attempt to register another MD-formative mark:

[T]he wording 'MD' is commonly used in the cosmetic preparations and supplement industries to notify the consumer that the goods are created by and/or recommended by medical doctors.  Thus, the wording 'MD' in the applied-for mark merely describes a characteristic or feature of the goods

82.     The USPTO's determination is further confirmed by evidence of not just numerous third-party trademark applications and registrations for such personal care product uses "based on the root MD in combination with other terms," but actual evidence of such third-party uses (a small sampling of which is detailed below):



SIDEMAN & BANCROFT LLP
LAW OFFICES
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

Professional Skin Rejuvenation







ANSWER TO SECOND AMENDED COMPLAINT; AMENDED COUNTERCLAIM

MD ESSENTIALS SKIN CARE   Home   Shop Full Catalog   Shop MD Essentials Skincare   Shop Epionce Skincare

## Microderm Scrub

$42.00

ADD TO CART

Buy with G Pay

More payment options

Powerful microdermabrasion resurfacing ingredients remove dead cells and debris from the skin's surface to reduce fine lines and wrinkles and diminish the appearance of hyperpigmentation. Each use improves skin tone, texture and elasticity, as non-abrasive exfoliation from pumice granules smooth dull, dry skin to a healthy, radiant finish.

- Exfoliates deeply to improve dull or uneven skin color
- Helps reduce fine lines and wrinkles and diminish the appearance of hyperpigmentation
- Improves skin tone, texture, and elasticity by smoothing dull and dry skin with non-abrasive exfoliation from pumice granules

💬 Chat

---

HOME / SKIN CARE / MD FORMULATIONS / MD FORMULATIONS CONTINUOUS RENEWAL COMPLEX, 1.7 OZ (37919)

MD FORMULATIONS

## MD FORMULATIONS Continuous Renewal Complex, 1.7 oz (37919)

★★★★☆ 1 review

Have a product question? Ask us

**Free Shipping on Orders $59+**
**Insured Delivery at Checkout**

**SKU:** MDI1333

## $55.00

★ Reviews

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

SIDEMAN & BANCROFT LLP
LAW OFFICES
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25





26    83.    The above demonstrates that while such a crowded field may permit La Canada and

27  MDalgorithms to peacefully coexist given the measurable distinctions between their respective

28  uses of MD NUTRI HAIR and MD HAIR, such coexistence becomes much more problematic

ANSWER TO SECOND AMENDED COMPLAINT; AMENDED COUNTERCLAIM

1    when La Canada purposefully and belatedly uses the identical term MD HAIR following

2    MDalgorithms' use.

3       84.    Notwithstanding that MDalgorithms, like numerous third parties, has long been

4    utilizing its own marks containing "the root MD in combination with other terms," La Canada

5    asserts that it has experienced actual confusion concerning MDalgorithms.  What La Canada has

6    not disclosed, however, is that it belatedly began to use the exact terms "MDacne" and "MDhair"

7    after MDalgorithms' use of these terms.

8                    **LA CANADA'S DECEITFUL ACTS RE MDHAIR**

9       85.    When MDalgorithms began using MDhair for its haircare products, and to sell

10   them exclusively at mdhair.co, La Canada offered a product named MD Nutri Hair, but it did not

11   offer a product named MDhair (or MD Hair), nor did it utilize the website mdhair.com for any

12   purpose (the website mdhair.com was inactive and listed for sale by an anonymous owner).

13   However, after learning of MDalgorithms' use of MDhair, La Canada purposefully began using

14   mdhair.com to cause that URL to automatically redirect to La Canada's website, md-factor.com.

15      86.    As La Canada did not promote or otherwise market its use of mdhair.com, or any

16   product named or labeled MDhair, consumers looking for La Canada would have no reason to

17   type in "mdhair.com" in their search for La Canada.  Rather, as La Canada knew, the only reason

18   consumers would have to go to mdhair.com is if they were in search of a product or company

19   referenced as MDhair.  La Canada's willful and deceitful use of mdhair.com, after being on notice

20   of MDalgorithms' use of MDhair, deceived consumers looking for the manufacturer of MDhair to

21   instead visit La Canada's website.

22      87.    Once these customers were fraudulently diverted to La Canada, Counterclaim

23   Defendant, with the knowledge that such visitors were in the market for haircare products, sought

24   to sell its haircare products to these MDalgorithms' customers it had misdirected to the La Canada

25   website.

26      88.    In one instance, after it had successfully misdirected a customer attempting to

27   locate MDalgorithms, La Canada pleaded with the individual to "Please try to order our MD Nutri

28   Hair Supplements that are working for most of our customers.  It is one of our hero products."

**ANSWER TO SECOND AMENDED COMPLAINT; AMENDED COUNTERCLAIM**

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

89.     On another occasion, La Canada advised a customer looking for MDalgorithms to "[p]lease check our MD Hair [sic] products line," and La Canada further advised the individual to "please feel free to browse our website or let me know if you need assistance."

90.     MDalgorithms is accordingly informed and believes that La Canada made it a practice of attempting to convert MDalgorithms' customers to purchase La Canada's products once the customers were misdirected to La Canada's website through the latter's deceptive tactics regarding mdhair.com.

**LA CANADA'S DECEITFUL ACTS RE MDACNE**

91.     Not content to fraudulently induce MDalgorithms' customers with its use of MDhair, La Canada also sought to attract consumers looking for MDalgorithms' MDacne products, again despite that fact that La Canada did not offer a product named MDacne or MD acne.  La Canada engaged in this conduct only after learning of  MDalgorithms' use of MDacne.

92.     By way of one example, La Canada offers a product named MD Complexion Factor Exfoliating Cleanser.  The term "MD acne" or "acne" does not appear on the front label:



ANSWER TO SECOND AMENDED COMPLAINT; AMENDED COUNTERCLAIM

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

93.     As confirmed by the Wayback Machine, in July 2022 La Canada's website description for the product labeled MD Complexion Factor Exfoliating Cleanser was "MD Complexion Factor Acne Cleanser."  However, after filing suit against MDalgorithms, and long after MDalgorithms had already been using the MDacne mark, La Canada purposefully changed its website description of the same product to "MD <u>Acne</u> Complexion Factor Acne Cleanser" – a blatant attempt to deceive those searching for MDalgorithms' MDacne product:

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

ANSWER TO SECOND AMENDED COMPLAINT; AMENDED COUNTERCLAIM

**Before (July 2022):**



**After (Current):**



ANSWER TO SECOND AMENDED COMPLAINT; AMENDED COUNTERCLAIM

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

94.     La Canada claims that its trademark rights are "based on the root MD" in "combination" with other terms.  However, as noted above, the field of use of such MD-formative marks for personal care products is so incredibly crowded, and the scope of protection afforded such marks is accordingly so extensively narrow, that under these circumstances a party can be afforded protection only as to a third-party use that is identical, or nearly identical.

95.     La Canada's knowing and purposeful attempts to utilize the identical terms MDacne and MDhair to deceive the general public for its own benefit, despite not offering a product named or labeled MDacne or MDhair, and only after becoming aware of MDalgorithms' use of MDacne and MDhair, is improper and unlawful, in addition to a disingenuous attempt seeking to belatedly shoehorn these marks into La Canada's claimed scope of trademark rights, all of which has damaged MDalgorithms.

### FIRST CAUSE OF ACTION
### CANCELLATION OF REGISTRATION
### (MD FACTOR)

96.     MDalgorithms realleges and reincorporates by reference the allegations of Paragraphs 1 through 95.

97.     Pursuant to 15 U.S.C. Section 1064, a registration may be canceled "[w]ithin five years from the date of the registration of the mark" where it is filed in the name of the wrong party and cannot be cured by amendment.

98.     MDalgorithms is informed and believes that Lin formed La Canada in approximately 2006.

99.     On July 27, 2018, Lin caused to be filed in her name a trademark application for the mark MD FACTOR, averring that she was the "individual" owner of the application, for "Cosmetic preparations for beauty and wellness" in International Class 3.  The registration alleges Lin's first use of the MD FACTOR mark in interstate commerce on January 1, 2016.

100.     The application registered on March 30, 2021 and was assigned Reg. No. 6309386. La Canada pleads this registration in its Second Amended Complaint against MDalgorithms.

101.     Lin was not the true owner of the MD FACTOR mark at the time of filing of the trademark application, because she, as the CEO of La Canada, filed as an individual, when in fact

1  the La Canada corporation at all times owned and used the mark.  Because Lin was identified as

2  the "individual" owner of the MD FACTOR mark at the time of filing of the application, when in

3  fact she did not own the mark, the trademark application was void as filed, and such defect is

4  incurable pursuant to TMEP 1201.02(c) and 37 C.F.R. Section 2.71(d).

5      102.    MDalgorithms therefore requests an order directing the USPTO to cancel La

6  Canada's U.S. Reg. No. 6309386 for the mark MD FACTOR pursuant to 15 U.S.C. §§ 1064 and

7  1119.

8                    **SECOND CAUSE OF ACTION**
                    **CANCELLATION OF REGISTRATION**
9                    **(MD BY SUSAN F. LIN M.D.)**

10     103.    MDalgorithms realleges and reincorporates by reference the allegations of

11  Paragraphs 1 through 102.

12     104.    Pursuant to 15 U.S.C. Section 1064, a registration may be canceled "[w]ithin five

13  years from the date of the registration of the mark" where it is filed in the name of the wrong party

14  and cannot be cured by amendment.

15     105.    MDalgorithms is informed and believes that Lin formed La Canada in

16  approximately 2006.

17     106.    On October 17, 2018, Lin caused to be filed a trademark application in her name

18  for the mark MD BY SUSAN F. LIN M.D., averring that she was the "individual" owner of the

19  application, for "Cosmetics; hair shampoos and conditioners; non-medicated acne treatment

20  preparations in the nature of facial cleaning preparation, namely, salicylic acne cleanser not for

21  medical purposes; non-medicated toiletries in the nature of non-medicated toiletry preparations" in

22  International Class 3 and "Acne treatment preparations; nutraceuticals for the treatment of hair

23  loss; nutraceuticals for use as a dietary supplement."  Lin alleged a first use in interstate commerce

24  by her of the MD BY SUSAN F. LIN M.D. mark on January 1, 2014.

25     107.    The application registered on September 17, 2019 and was assigned Reg. No.

26  5860508.  La Canada pleads this registration in its Second Amended Complaint against

27  MDalgorithms.

28

SIDEMAN & BANCROFT LLP
LAW OFFICES
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

108.     Lin was not the true owner of the MD BY SUSAN F. LIN M.D. mark at the time of filing of the trademark application, because she, as the CEO of La Canada, filed as an individual, when in fact the La Canada corporation at all times owned and used the mark.  Because Lin was identified as the "individual" owner of the MD FACTOR mark at the time of filing of the application, when in fact she did not own the mark, the trademark application was void as filed, and such defect is incurable pursuant to TMEP 1201.02(c) and 37 C.F.R. Section 2.71(d).

109.     MDalgorithms therefore requests an order directing the USPTO to cancel La Canada's U.S. Reg. No. 5860508 for the mark MD BY SUSAN F. LIN M.D. pursuant to 15 U.S.C. §§ 1064 and 1119.

### THIRD CAUSE OF ACTION
### CANCELLATION OF REGISTRATION
### (MD WELLNESS BY SUSAN F. LIN M.D.)

110.     MDalgorithms realleges and reincorporates by reference the allegations of Paragraphs 1 through 109.

111.     Pursuant to 15 U.S.C. Section 1064, a registration may be canceled "[w]ithin five years from the date of the registration of the mark" where it is filed in the name of the wrong party and cannot be cured by amendment.

112.     MDalgorithms is informed and believes that Lin formed La Canada in approximately 2006.

113.     On July 27, 2018, Lin caused to be filed in her name a trademark application for the mark MD WELLNESS BY SUSAN F. LIN M.D., averring that she was the "individual" owner of the application for "Cosmetic preparation for beauty and wellness" in International Class 3 and "Vitamin supplement for beauty and wellness in the nature of nutraceuticals for use as a dietary supplement and for the treatment of hair loss." The registrations claims a first use date in interstate commerce by Lin of the MD WELLNESS BY SUSAN F. LIN M.D. mark on January 1, 2017.

114.     The application registered on January 19, 2021 and was assigned Reg. No. 6251811.  La Canada pleads this registration in its Second Amended Complaint against MDalgorithms.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

115.    Lin was not the true owner of the MD WELLNESS BY SUSAN F. LIN M.D. mark at the time of filing of the trademark application, because she, as the CEO of La Canada, filed as an individual, when in fact the La Canada corporation at all times owned and used the mark. Because Lin was identified as the "individual" owner of the MD FACTOR mark at the time of filing of the application, when in fact she did not own the mark, the trademark application was void as filed, and such defect is incurable pursuant to TMEP 1201.02(c) and 37 C.F.R. Section 2.71(d).

116.    MDalgorithms therefore requests an order that the USPTO cancel La Canada's U.S. Reg. No. 6251811 for the mark MD WELLNESS BY SUSAN F. LIN M.D. pursuant to 15 U.S.C. §§ 1064 and 1119.

### FOURTH CAUSE OF ACTION
### CANCELLATION OF REGISTRATION
### (MD)

117.    MDalgorithms realleges and reincorporates by reference the allegations of Paragraphs 1 through 116.

118.    Pursuant to 15 U.S.C. Section 1064(3), a federal trademark registration may be canceled "at any time" upon a showing that a registration was procured or maintained via fraud upon the United States Patent and Trademark Office.

119.    La Canada is the owner of U.S. Trademark Registration No. 4471491, for the mark "MD" for "Cosmetics; Hair shampoo and conditioners; Non-medicated acne treatment preparations; Non-medicated toiletries" in International Class 3 and "Acne treatment preparations; Nutraceuticals for the treatment of hair loss; Nutraceuticals for use as a dietary supplement" in International Class 5.

120.    Lin filed the trademark application for the MD mark in her own name as an "individual" when she was not the actual owner of the MD Mark at the time of filing and not the party using the mark in commerce, as confirmed by the subsequent specimens of use submitted to the USPTO on behalf of Lin in support of her request to register the MD mark, which demonstrated use and ownership by La Canada.  The MD mark then registered on January 21, 2014.

121.    In accordance with Section 15 of the Lanham Act, 15 U.S.C. Section 1065, an affidavit or declaration of incontestability for the MD mark registration, if the requirements of Section 15 were met, could have been filed on or after January 21, 2019.

122.    Just before that January 21, 2019 date, on January 15, 2019, Lin entered into the License Agreement with La Canada, where she licensed certain trademark registrations and trademark applications (improperly filed in her name as an individual) to La Canada.  The License Agreement states that the license to La Canada became effective on January 15, 2019.

123.    MDalgorithms is informed and believes that Lin's counsel at Kasha Law LLC, namely Attorney John Kasha and Attorney Kelly Kasha, assisted Lin in preparing and executing the License Agreement.

124.    On January 21, 2019, the first possible day to file the Section 15 Declaration of Incontestability for the MD registration, Lin's counsel of record, Kasha Law LLC, submitted a Section 15 declaration on behalf of Lin.  Specifically, Attorney Kelly Kasha signed the Section 15 Declaration on behalf of Lin averring that Lin, "the owner" had "continuously used the mark in commerce for five (5) consecutive years after the date of registration . . . and is still using the mark in commerce on or in connection with all goods or services listed in the existing registration."  In submitting the Section 15 Declaration, Attorney Kelly Kasha also affirmatively confirmed the following statements:

a.      "To the best of the signatory's knowledge, information and belief, formed after an inquiry reasonable under the circumstances, the allegations and other factual contentions made above have evidentiary support"; and

b.      "The signatory being warned that willful false statements and the like are punishable by fine or imprisonment or both, under 18 U.S.C. § 1001, and that such willful false statements and the like may jeopardize the validity of this submission and the registration, declares that all statements made of his/her own knowledge are true and all statements made on information and belief are believed to be true."

125.    In submitting a signed declaration to the USPTO, a declarant is charged with knowing what is in the declaration being signed, and by failing to make an appropriate inquiry into

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

12157-1\7138837                          41                          Case No. 22-cv-07197 RS
ANSWER TO SECOND AMENDED COMPLAINT; AMENDED COUNTERCLAIM

1   the accuracy of the statements, the declarant at minimum acts with a reckless disregard for the

2   truth.

3        126.   At the time that Attorney Kelly Kasha submitted the Section 15 Declaration, she

4   knew, or clearly should have known, that the statement was false, because she knew or clearly

5   should have known that Lin had not "continuously used the mark in commerce for five (5)

6   consecutive years after the date of registration."  In fact, Lin's trademark counsel at Kasha Law

7   LLC, including Attorney Kelly Kasha, knew or should have known that Lin was not the true

8   owner of the MD mark, that Lin was not the party using the mark in commerce, and further that

9   Lin had just licensed the MD mark (and other trademarks) to La Canada <u>four days</u> before

10   submitting the Section 15 Declaration, despite there being no discernible change in the use of the

11   MD mark.

12        127.   Moreover, on January 21, 2019, the same day that Attorney Kelly Kasha signed

13   and submitted the Section 15 Declaration to the USPTO in support of the MD registration, she

14   also signed and submitted a separate Section 8 Declaration in support of the MD registration with

15   a supporting specimen of use, which also tellingly came from La Canada marketing materials,

16   further confirming that Lin was not the owner of the MD mark and not the party using the mark in

17   commerce.

18        128.   La Canada has now utilized and asserted that right improperly received under

19   Section 15 against MDalgorithms in its Second Amended Complaint, asserting that La Canada's

20   MD registration is "incontestable pursuant to Section 15 U.S.C. § 1065, which is conclusive

21   evidence under 15 U.S.C. § 1115 of the validity of La Canada's marks covered by the

22   incontestable registrations, including the MD mark" [SAC, ¶35] and that MDalgorithms is

23   infringing La Canada's rights arising from the purported registration.

24        129.   The inclusion of false statements in a Section 15 affidavit/declaration is material,

25   and here constituted fraud on the USPTO warranting cancellation of the MD registration under

26   Section 14(3) of the Trademark Act.

27        130.   MDalgorithms therefore requests an order directing the USPTO to cancel La

28   Canada's U.S. Reg. No. 4471491 for the mark MD pursuant to 15 U.S.C. §§ 1064 and 1119.

SIDEMAN & BANCROFT LLP
LAW OFFICES
ONE EMBARCADERO CENTER 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

ANSWER TO SECOND AMENDED COMPLAINT; AMENDED COUNTERCLAIM

## FIFTH CAUSE OF ACTION
## CANCELLATION OF REGISTRATION
## (MD INTIMATE RESTORE)

131.    MDalgorithms realleges and reincorporates by reference the allegations of Paragraphs 1 through 130.

132.    Pursuant to 15 U.S.C. Section 1064(3), a federal trademark registration may be canceled "at any time" upon a showing that a registration was procured or maintained via fraud upon the United States Patent and Trademark Office.

133.    La Canada is the current owner of U.S. Trademark Registration No. 4603019, for the mark "MD INTIMATE RESTORE" for "Anti-aging stem cell serum for topical cosmetic use" in International Class 3.

134.    La Canada's Second Amended Complaint pleads its ownership of MD INTIMATE RESTORE against MDalgorithms, defining it as one of the "MD Formative Marks."  [SAC, ¶10]

135.    On August 29, 2013, Lin's trademark counsel, Kasha Law LLC, and specifically Attorney John Kasha, filed the trademark application for the MD INTIMATE RESTORE mark in the name of Lin as an "individual" but the actual owner of the MD INTIMATE RESTORE mark at the time of filing was not Lin, but the corporate entity La Canada.

136.    Subsequent specimens of use in International Classes 3 and 5 for the MD INTIMATE RESTORE mark, as submitted to the USPTO on by Lin's counsel on Lin's behalf, confirmed that she was not the owner of the mark and that she was not the party using the mark in commerce, as such materials confirmed the actual use was by La Canada.  The MD INTIMATE RESTORE mark then registered on September 9, 2014.

137.    In accordance with Section 15 of the Lanham Act, 15 U.S.C. Section 1065, an affidavit or declaration of incontestability for the MD INTIMATE RESTORE registration, if the requirements of Section 15 were met, could be filed on or after September 9, 2019.

138.    On January 15, 2019, Lin entered into the License Agreement with La Canada, where she licensed certain trademark registrations and applications (improperly filed in her name as an individual), including the MD INTIMATE RESTORE registration, to La Canada.  The license to La Canada under the License Agreement became effective on January 15, 2019.

SIDEMAN & BANCROFT LLP
LAW OFFICES
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1    MDalgorithms is informed and believes that Lin's counsel at Kasha Law LLC assisted Lin in

2    preparing and executing the License Agreement.

3        139.    On March 12, 2019, Lin's counsel of record, Kasha Law LLC, and specifically

4    Attorney Kelly Kasha, filed an assignment with the USPTO dated March 11, 2019, whereby Lin

5    assigned certain trademarks, including the MD INTIMATE RESTORE mark, to La Canada.

6        140.    On September 9, 2019, Lin's counsel of record, Kasha Law LLC, and specifically

7    Attorney Kelly Kasha, submitted a Section 15 declaration on behalf of La Canada for the MD

8    INTIMATE RESTORE registration.  Attorney Kelly Kasha signed the Section 15 Declaration on

9    behalf of La Canada averring that the owner had "continuously used the mark in commerce for

10   five (5) consecutive years after the date of registration . . . and is still using the mark in commerce

11   on or in connection with all goods or services listed in the existing registration."

12       141.    Attorney Kelly Kasha made this statement notwithstanding the fact that she knew

13   or clearly should have known that Lin had been the individual owner of record of the MD

14   INTIMATE RESTORE registration until March 2019 and that Lin had not used the mark in

15   commerce during that time.  Attorney Kelly Kasha further knew or clearly should have known that

16   Lin had only licensed the mark to La Canada less than eight months before signing and submitting

17   the Section 15 Declaration and had only assigned the mark to La Canada just six months before

18   submitting the Section 15 Declaration, despite no discernible change in the use of the MD

19   INTIMATE RESTORE mark.  In submitting the Section 15 Declaration, Attorney Kelly Kasha

20   also affirmatively confirmed the following statements:

21       a.    "To the best of the signatory's knowledge, information and belief, formed after an

22           inquiry reasonable under the circumstances, the allegations and other factual contentions

23           made above have evidentiary support"; and

24       b.    "The signatory being warned that willful false statements and the like are

25           punishable by fine or imprisonment or both, under 18 U.S.C. § 1001, and that such willful

26           false statements and the like may jeopardize the validity of this submission and the

27           registration, declares that all statements made of his/her own knowledge are true and all

28           statements made on information and belief are believed to be true."

142.     At the time that Attorney Kelly Kasha submitted the Section 15 Declaration on September 9, 2019, she knew or clearly should have known the statement was false, because she knew or clearly should have known that the owner of the mark, which was Lin until March 11, 2019,  had not "continuously used the mark in commerce for five (5) consecutive years after the date of registration," especially as all specimens of use demonstrated use only by La Canada during the time Lin was the owner of the registration.

143.     The false Section 15 affidavit/declaration was relied on by the USPTO and allowed La Canada to obtain a new right which it would not otherwise have, specifically, the right to have its registration in litigation (including this litigation) accepted as conclusive evidence of its exclusive right to use the registered mark in commerce.

144.     La Canada has now utilized and asserted that right improperly received under Section 15 against MDalgorithms in its Second Amended Complaint, asserting that La Canada's MD INTIMATE RESTORE registration is "incontestable pursuant to Section 15 U.S.C. § 1065, which is conclusive evidence under 15 U.S.C. § 1115 of the validity of La Canada's marks covered by the incontestable registrations" [SAC, ¶35] and that MDalgorithms is infringing La Canada's rights arising from the purported registration.

145.     The inclusion of the false statements in the Section 15 affidavit/declaration was material, constituting fraud on the USPTO warranting cancellation of the MD INTIMATE RESTORE registration under Section 14(3) of the Trademark Act.

146.     MDalgorithms therefore requests an order that the USPTO cancel La Canada's U.S. Reg. No. 4603019 for the mark MD INTIMATE RESTORE pursuant to 15 U.S.C. §§ 1064 and 1119.

**SIXTH CAUSE OF ACTION**
**CANCELLATION OF REGISTRATION**
**(MD 101)**

147.     MDalgorithms realleges and reincorporates by reference the allegations of Paragraphs 1 through 146.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

148. Pursuant to 15 U.S.C. Section 1064(3), a federal trademark registration may be canceled "at any time" upon a showing that a registration was procured or maintained via fraud upon the United States Patent and Trademark Office.

149. La Canada is the current owner of U.S. Trademark Registration No. 3459245, for the mark "MD 101" for "Cosmetic preparation for maintenance and growth of eyelashes" in International Class 3.

150. La Canada's Second Amended Complaint pleads its ownership of the MD 101 registration against MDalgorithms, defining it as one of the "MD Formative Marks."  [SAC, ¶10]

151. On October 3, 2007, Lin's then trademark counsel, Joseph Strabala of the Law Offices of Joseph Strabala, filed the trademark application for the MD 101 mark in the name of Lin as an "individual." However, Lin was not the true owner of the filed MD 101 Application at the time of the filing of the trademark application, because she, as the CEO of La Canada, filed as an individual when in fact La Canada owned the mark.  The MD 101 mark then registered on July 1, 2008 as Reg. No. 3459245.

152. On July 1, 2013, Lin's then counsel of record, Kasha Law LLC, and specifically Attorney John Kasha, signed and submitted a Section 8 declaration, concurrently providing a specimen of use of the MD 101 mark, from La Canada marketing materials, which further confirmed that Lin was not the owner of the mark and not the party using the mark in commerce.

153. On December 12, 2014, Kasha Law LLC, and specifically Attorney Kelly Kasha, submitted a Section 15 declaration on behalf of Lin.  Attorney Kelly Kasha signed the Section 15 Declaration on behalf of Lin averring that the owner had "continuously used the mark in commerce for five (5) consecutive years after the date of registration . . . and is still using the mark in commerce on or in connection with all goods or services listed in the existing registration." Attorney Kelly Kasha made this statement notwithstanding that she knew or clearly should have known that Lin had been the individual owner of the MD 101 registration for that entire five-year period and that Lin had never used the mark in commerce (as evidenced by the Section 8 specimen submitted by her law firm showing use by La Canada).  In submitting the Section 15 Declaration, Attorney Kelly Kasha also affirmatively confirmed the following statements:

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

a.     "To the best of the signatory's knowledge, information and belief, formed after an inquiry reasonable under the circumstances, the allegations and other factual contentions made above have evidentiary support"; and

b.     "The signatory being warned that willful false statements and the like are punishable by fine or imprisonment or both, under 18 U.S.C. § 1001, and that such willful false statements and the like may jeopardize the validity of this submission and the registration, declares that all statements made of his/her own knowledge are true and all statements made on information and belief are believed to be true."

154.     At the time that Attorney Kelly Kasha submitted the Section 15 Declaration, she knew or clearly should have known the statement was false, because she knew or clearly should have known that Lin, as the improperly named individual owner of the registration, had not "continuously used the mark in commerce for five (5) consecutive years after the date of registration."

155.     The false Section 15 affidavit/declaration was relied on by the USPTO and allowed La Canada to subsequently obtain a new right which it would not otherwise have, specifically, the right to have the MD 101 registration in litigation (including this litigation), accepted as conclusive evidence of its exclusive right to use the registered mark in commerce.

156.     La Canada has now utilized and asserted that right improperly received under Section 15 against MDalgorithms in its Second Amended Complaint, asserting that La Canada's MD 101 registration is "incontestable pursuant to Section 15 U.S.C. § 1065, which is conclusive evidence under 15 U.S.C. § 1115 of the validity of La Canada's marks covered by the incontestable registrations" [SAC, ¶35] and that MDalgorithms is infringing La Canada's rights arising from the purported registration.

157.     The inclusion of the false statements in the Section 15 affidavit/declaration was material and constitutes fraud on the USPTO warranting cancellation of the MD 101 registration under Section 14(3) of the Trademark Act.

158.     MDalgorithms therefore requests an order directing the USPTO to cancel La Canada's U.S. Reg. No. 3459245 for the mark MD 101 pursuant to 15 U.S.C. §§ 1064 and 1119.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

**SEVENTH CAUSE OF ACTION**
**CANCELLATION OF REGISTRATION**
**(MD LASH FACTOR)**

159.    MDalgorithms realleges and reincorporates by reference the allegations of Paragraphs 1 through 158.

160.    Pursuant to 15 U.S.C. Section 1064(3), a federal trademark registration may be canceled "at any time" upon a showing that a registration was procured or maintained via fraud upon the United States Patent and Trademark Office.

161.    La Canada is the current owner of U.S. Trademark Registration No. 3432309, for the mark "MD LASH FACTOR" for "Cosmetic preparation for maintenance and growth of eyelashes" in International Class 3.

162.    La Canada's Second Amended Complaint pleads its ownership of MD LASH FACTOR against MDalgorithms, defining it as one of the "MD Formative Marks."  [SAC, ¶10]

163.    On March 30, 2007, Lin's then trademark counsel, Joseph Strabala of the Law Offices of Joseph Strabala, filed the trademark application for the MD LASH FACTOR mark in the name of Lin as an "individual."  However, Lin was not the true owner of the filed MD LASH FACTOR Application at the time of the filing of the trademark application, because she, as the CEO of La Canada, filed as an individual when in fact La Canada owned the mark.   The MD LASH FACTOR mark then registered on May 20, 2008 as Reg. No. 3432309.

164.    On May 20, 2013, Lin's then counsel of record, Kasha Law LLC, and specifically Attorney John Kasha, submitted a Section 8 declaration, signed by Lin, concurrently providing a specimen of use of the MD LASH FACTOR mark, which established use by La Canada (not Lin), confirming that Lin was not the owner of the mark and not the party using the mark in commerce.

165.    On December 12, 2014, Kasha Law LLC, and specifically Attorney Kelly Kasha, submitted a Section 15 declaration on behalf of Lin.  Attorney Kelly Kasha signed the Section 15 Declaration averring that the owner (Lin) had "continuously used the mark in commerce for five (5) consecutive years after the date of registration . . . and is still using the mark in commerce on or in connection with all goods or services listed in the existing registration."  Attorney Kelly Kasha made this statement notwithstanding the fact she knew or clearly should have known that

1  while Lin had been the individual owner of the MD 101 registration for that entire period of the

2  mark's registration, Lin had never used the mark in interstate commerce (as evidenced by the

3  specimen previously submitted by Kasha Law LLC showing use and ownership by La Canada).

4  In submitting the Section 15 Declaration, Attorney Kelly Kasha also affirmatively confirmed the

5  following statements:

> a.    "To the best of the signatory's knowledge, information and belief, formed after an
>
> inquiry reasonable under the circumstances, the allegations and other factual contentions
>
> made above have evidentiary support"; and

> b.    "The signatory being warned that willful false statements and the like are
>
> punishable by fine or imprisonment or both, under 18 U.S.C. § 1001, and that such willful
>
> false statements and the like may jeopardize the validity of this submission and the
>
> registration, declares that all statements made of his/her own knowledge are true and all
>
> statements made on information and belief are believed to be true."

14  166.    At the time that Attorney Kelly Kasha submitted the Section 15 Declaration, she

15  knew or clearly should have known the statement was false, because she knew or clearly should

16  have known that Lin had not "continuously used the mark in commerce for five (5) consecutive

17  years after the date of registration."

18  167.    The false Section 15 affidavit/declaration was relied on by the USPTO, and

19  subsequently allowed La Canada to assert a new right which it would not otherwise have,

20  specifically, the right to have its registration in litigation (including this litigation), accepted as

21  conclusive evidence of its exclusive right to use the registered mark in commerce.

22  168.    La Canada has now utilized and asserted that right improperly received under

23  Section 15 against MDalgorithms in its Second Amended Complaint, asserting that La Canada's

24  MD LASH FACTOR registration is "incontestable pursuant to Section 15 U.S.C. § 1065, which is

25  conclusive evidence under 15 U.S.C. § 1115 of the validity of La Canada's marks covered by the

26  incontestable registrations" [SAC, ¶35] and that MDalgorithms is infringing La Canada's rights

27  arising from the purported registration.

28

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

169.     The inclusion of the false statements in the Section 15 affidavit/declaration was material, constituting fraud on the USPTO warranting cancellation of the MD LASH FACTOR registration under Section 14(3) of the Trademark Act.

170.     MDalgorithms therefore requests an order directing the USPTO to cancel La Canada's U.S. Reg. No. 3432309 for the mark MD LASH FACTOR pursuant to 15 U.S.C. §§ 1064 and 1119.

### EIGHTH CAUSE OF ACTION
### (Common Law Unfair Competition)

171.     MDalgorithms realleges and incorporates by reference the allegations of Paragraphs 1 through 170.

172.     MDalgorithms has continuously used the mark MDacne since at least 2017, and the mark MDhair since at least 2021.

173.     MDalgorithms has existing federal trademark registrations on the Principal Register for the mark MDacne.

174.     MDalgorithms has a federal trademark registration on the Supplemental Register for its mark MDhair and asserts that its use of MDhair has acquired secondary meaning among the relevant consumers.

175.     MDalgorithms began use of MDacne and MDhair for its products prior to any claimed use of MDacne or MDhair by La Canada for its products.

176.     Upon learning of MDalgorithms' use of MDacne and MDhair, La Canada began to deliberately use the identical MDacne and MDhair terms, such as for mdhair.com, intending to subjectively and knowingly confuse MDalgorithms' customers with respect to the source of MDalgorithms' products, notwithstanding that La Canada did not offer any products named or labeled "MD Acne" or "MD Hair."

177.     MDalgorithms' customers were likely to be misled and were misled by La Canada's deceptive acts.

178.     La Canada's acts have deliberately misled the relevant customers into believing that its goods are those of MDalgorithms.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

ANSWER TO SECOND AMENDED COMPLAINT; AMENDED COUNTERCLAIM

LAW OFFICES

SIDEMAN & BANCROFT LLP

ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1     179.    La Canada's actions caused and continue to cause MDalgorithms competitive

2   injury, such as by diverting MDalgorithms' sales to La Canada.

3     180.    MDalgorithms is therefore entitled to an award of damages and equitable relief

4   concerning La Canada's conduct.

5

6                              **NINTH CAUSE OF ACTION**
     **(Unfair Competition in Violation of Cal. Bus. & Prof. Code Section 17200 et seq.)**

7     181.    MDalgorithms realleges and incorporates by reference the allegations of

8   Paragraphs 1 through 180.

9     182.    La Canada's fraudulent business practices directing MDalgorithms' customers to

10  La Canada, through La Canada's uses of MDhair and MDacne as referenced above, were intended

11  to deceive the public at large, and were likely to deceive the public at large.

12    183.    La Canada's fraudulent business practices in utilizing MDacne and MDhair to lure

13  and deceive these customers did in fact deceive such customers, as they relied upon La Canada's

14  misrepresentations, causing injury to MDalgorithms, and profits to La Canada through soliciting

15  MDalgorithms' customers that La Canada intentionally misdirected.

16    184.    La Canada's conduct, as alleged herein, constitutes unlawful, fraudulent, unethical,

17  oppressive, and deceptive business practices under California Business and Professions Code

18  Section 17200 *et seq.*

19    185.    La Canada's conduct, as alleged herein, is likely to continue to mislead the general

20  public and, consequently, constitutes a fraudulent business act or practice within the meaning of

21  California Business & Professions Code Section 17200 *et seq.*

22    186.    These unlawful acts by La Canada will continue to deceive the public, unless

23  enjoined.

24    187.    As a direct and proximate result of La Canada's unfair business practices as alleged

25  herein, MDalgorithms has lost money and suffered injury in fact, and will continue to suffer

26  irreparable harm for which MDalgorithms does not have an adequate remedy at law, and therefore

27  MDalgorithms is entitled to injunctive and such other relief.

28

**PRAYER FOR RELIEF**

WHEREFORE, Defendant and Counterclaimant MDalgorithms, Inc. prays for the following relief:

A.      For an Order that La Canada, and its agents, servants, employees, attorneys and any related companies, and all persons in active concert or participation with one or more of them, be preliminarily and permanently enjoined and restrained from unlawfully using the MDhair and MDacne designations in the manner described above;

B.      For an Order requiring an accounting and that La Canada pay over to MDalgorithms all monetary gains, profits, and advantages derived by La Canada from the acts complained of herein;

C.      For an Order disgorging from La Canada all ill-gotten profits gained as a result of La Canada's acts of unfair competition;

D.      For an Order adjudging and declaring that La Canada's deceptive acts are willful;

E.      For an Order directing the Commissioner of Trademarks that the following trademark registrations are to be canceled by the United States Patent and Trademark Office:

i.      U.S. Reg. No. 6309386;

ii.     U.S. Reg. No. 6251811;

iii.    U.S. Reg. No. 5860508;

iv.     U.S. Reg. No. 4603019;

v.      U.S. Reg. No. 4471494;

vi.     U.S. Reg. No. 3459245; and

vii.    U.S. Reg. No. 3432309;

F.      For MDalgorithms' attorneys' fees;

G.      For MDalgorithms' costs in this suit;

H.      For prejudgment interest to the maximum extent recoverable by contract or law; and

For such other relief as this Court may deem necessary or appropriate.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1

## **JURY TRIAL DEMANDED**

2

Counterclaimant MDalgorithms, Inc. requests a trial by jury for all issues so triable.

3

DATED:  October 11, 2023                Respectfully submitted,

4

5                                                    SIDEMAN & BANCROFT LLP

6                                          By:    _/s/ *Ian K. Boyd*_____

7                                                    Ian K. Boyd
                                                     Attorneys for Defendant and Counterclaimant
8                                                    MDALGORITHMS, INC.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

# Exhibit A



Search for another company…

Beauty & Well-being  >  Hair Care & Styling  >  Hair Product Store  >  MDhair



## MDhair

Reviews 124 • Average



3.6 ⓘ

⧉  **mdhair.co**
Visit this website                              →



✎ Write a review

### Reviews  3.6

124 total

☑ 5-star ▬▬▬▬▬▬▬▬▬ 59%
☐ 4-star ▬ 6%
☐ 3-star ▪ <1%
☐ 2-star ▬ 6%
☐ 1-star ▬▬▬ 28%

Filter ⚙       Sort: Most relevant ⇕

5-star ✕    Reset

**Company activity**                    See all

▢  Claimed profile

⊖  No verified details yet

💬  Replied to 3 out of 41 negative reviews

⊙  Replies to negative reviews in < 1 month



Our 2022 Transparency
Report is loaded ★

Take a look

Advertisement

Fenty Eau
de Parfum
is back!

FENTY

ONLY AT
SEPHORA
SHOP NOW ▸

TJ   **Taal Joeng**
2 reviews    ⚲ US

★★★★★                          Aug 22, 2023

**Affordable AND Effective**

I took a chance on this brand because I figured it wouldn't be a huge loss if their
eyebrow serum didn't work given the price. Not only is it more affordable than that
popular brand's version, it genuinely works and maintains the new hair growth
incredibly well. I'm excited to try out their other products. I highly recommend giving
MDhair a try.

Date of experience: June 12, 2023

👍 Useful    ⤺ Share

Advertisement



Office
Furniture
2go.com

ML   **Madison Lynne**
2 reviews    ⚲ US

★★★★★                          Aug 18, 2023

**You won't regret it.**

MDhair is incredible!!!

Firstly. These products are amazing. And the customer care/service is top notch. Their
products are also reasonably priced. Even better, they actually WORK! You do a
quick survey, questionnaire to see what would best suit you. They analyze it and give
you recommendations. You can pick the best set for you and change which products
to receive in your next shipment. They're products you use daily. And let me tell you. I
don't even use mine everyday (I'm very forgetful at times or just in a rush) and for the

### About MDhair
Information written by the company

A first-of-its-kind, patent-pending, customized
growth solution developed by dermatologists.
Forget about one-size-fits-all serums and
medications. Your customized treatment kit will
be designed to target the specific root causes of
your hair loss, resulting in healthier, thicker hair.

### Contact

✉  support@mdhair.co

⚲  548 Market St, #86774
94104
San Francisco
United States

### Category ⓘ

Hair Product Store

The Trustpilot Experience

We're open to all                            ⌄

results I'm seeing just from the short amount of time I've been using their products. Is phenomenal. Pregnancy killed my hair and MDhair is helping me get my confidence back. I saw new growth fairly quickly. I've tried other stuff before. Nothing is as good as MDhair.

Date of experience: August 18, 2023

👍 Useful   ⇄ Share                                                                                🚩



SB   **Susan Brewer**
3 reviews   📍 US

★★★★★                                                                 Aug 17, 2023

### Amazing,wonderful

Amazing,wonderful, helpful is what I have to say about this company. And the product, the same!
I have used it for over a year and I had a little problem that they did back flips to make me happy.
I seriously recommend this product (and the company)!! Their amazing!!!

Date of experience: August 04, 2023

👍 Useful   ⇄ Share                                                                                🚩



AC   **Andy C**
2 reviews   📍 C

★★★★★                                                                 Aug 11, 2023

### Don't give up hope, until you have tried MDhair

After trying various hair growth and anti-thinning hair products to no avail, I almost gave up, then I found an ad by MDhair online. I decided to try it because it came as a kit that feeds your hair from the inside and also from the outside. you take the collagen and the hair vitamin (internally) then the shampoo and the hair serum for (external) use. I notice that where my hair was falling or thinning slowed down and I started to see new hair growth, and it's improving every day. My suggestion to anyone that is experiencing thinning hair or somehow whose hair is not as it once was is to give MDhair a try you will not regret it.

Date of experience: May 09, 2023

👍 Useful 1   ⇄ Share                                                                            🚩



SM   **Souel M.**
1 review   📍 CA

★★★★★                                                                 Aug 6, 2023

### One of the best decisions I've made

One of the best decisions I've made! Was hesitant initially but glad I took the leap as it has made improvement to my hair, thus, to my self-confidence. Hair started looking more dense and I only just started too! MDHair has been very helpful with my questions about the treatment. Definitely recommended!

Date of experience: August 06, 2023

👍 Useful 1   ⇄ Share                                                                            🚩


Advertisement



KK   **Kim Kovacs**
2 reviews   📍 US

★★★★★                                                                 Aug 8, 2023

### Healthier Hair

---

We champion verified reviews   ⌄

We fight fake reviews

We encourage constructive feedback   ⌄

We verify companies and reviewers   ⌄

We advocate against bias

**Take a closer look**

I started using the MDhair line about 2 1/2 months ago as I have really thin hair that has also been falling out like crazy. Your 1st shipment will contain shampoo, hair serum and some supplements. The bottles are smaller than regular shampoo bottles but that is because you only have to use a small amount of the product. I shampoo the top of my head, put conditioner on the ends then let the products do their job while I continue showering. After 5 minutes, I rinse.
Since I have been using the products, I can tell a noticeable difference in the amount of hair falling out. I have less hair shedding and my hair looks and feels heathier. I was a bit skeptical when I first heard about the products, but now I am hooked! I highly recommend this product to anyone experiencing hair loss and thinning. Try it, you won't be disappointed.

**Date of experience: August 08, 2023**

👍 Useful 1    ⌖ Share

---

 **Lyndsay McClellan**
1 review    ⊙ US

⭐⭐⭐⭐⭐                                          Aug 3, 2023

**MDHair Conditioner**
I've been using the MD Hair conditioner along with my subscription box and my hair has never felt better. I've always struggled finding a conditioner that feels great and also gets rid of the knots that I have even when I get out of the shower. 6 weeks in and I've seen a decline in shedding!

**Date of experience: August 03, 2023**

👍 Useful 1    ⌖ Share

---

 **Lisa T**
1 review    ⊙ NZ

⭐⭐⭐⭐⭐                                          Aug 7, 2023

**Amazing products which work!**
Great products that work well and smell amazing. They don't have that harsh chemical smell of many other products. I have been using this for almost 3 months and right from the 1st week, I noticed a 90% decrease in hairfall and in the next few months, I noticed new hair growth where I part my hair. They don't leave a greasy residue in my hair either and my hair is also softer than ever. They ship worldwide too which is amazing!

**Date of experience: August 07, 2023**

👍 Useful 1    ⌖ Share

---

 **Simone Gallimore-Mcpherson**
1 review    ⊙ VG

⭐⭐⭐⭐⭐                                          Aug 3, 2023

**My experience using the MDhair...**
My experience using the MDhair treatment has been a great help for my hair. Thus far my hair is managable and not as dry and brittle as before. This is truly a breakthrough for me because over the years I have tried so many other products and they did not help,and for that reason it cause severe damage of my hair. I am very hopeful and greatful I came across this product. Looking forward to a bright and successful hair growth. Thanks MDHAIR!!!!

**Date of experience: July 22, 2023**

👍 Useful 1    ⌖ Share

Advertisement 



**...ssful person**
1 review   NL

★★★★★                                                    Jul 14, 2023

**MD hair products are amazing**

MD hair is an amazing company with great products, the hair serums have saved my hair. I currently use the shampoo and the restore serum in the morning after drying my hair and the regrowth serum in the evening and the results have been great. I live in the Netherlands and I am really happy I have discovered them. Lovely customer service too! Kind regards Iris

Date of experience: July 14, 2023

👍 Useful 1    ⭇ Share                                         🏳    ✕

See Trustpilot reviews directly in your Google searches

★ Trustpilot



Get Chrome Extension

JU    **Julie**
      16 reviews   GB

★★★★★                                                    Jul 21, 2023

**My hair was falling out I could do...**

My hair was falling out I could do nothing with it. Then I found MD Hair. I was doubtful at first but gave it a try in December 22. So far the results are good. When my daughter trimmed my hair she had noticed a difference and I noticed my hair is growing back in my own colour. Also my eyelashes, eyebrows and my fingernails have improved too. My next treatment is to thicken my hair so I'm looking forward to the results. Would recommend give MD Hair a try.

Date of experience: July 21, 2023

👍 Useful 1    ⭇ Share                                         🏳

KS    **KSM**
      1 review   US

★★★★★                                                    Jun 23, 2023

**These products work!**

I've been using the hair restore serum and supplement formula for just over a month and I've seen a very significant improvement. I'm 63 with a full head of hair, but began to notice thinning at the part and crown, a thinner ponytail and a truly alarming amount of hair shedding when combing. I was picking hair strands off my clothing all day too. I'd say the shedding has reduced by 70% or more so far, and the scalp at the part line isn't as visible. Success!

Date of experience: June 23, 2023

👍 Useful 1    ⭇ Share                                         🏳

      **Dr. Kayla Lucas**
      1 review   CA

★★★★★                                                    Jul 12, 2023

**I've had a good experience working with...**

I've had a good experience working with MD Hair. Very responsive to emails and are good communicators. The product itself is helping my hair grow. I've had really severe postpartum hair loss and I've done it all. I take the supplements and use the hair care system. I've been using it now for about about 3 months and it's going well. Excited to see how much more growth comes in.

Date of experience: July 12, 2023

👍 Useful 1   ⌁ Share

Advertisement

FENTY
EAU DE PARFUM
ONLY AT
SEPHORA
SHOP NOW ▸

RA   **Roshni Amrat Singh Singh**
3 reviews   ⊙ CA

★★★★★                                              Jul 2, 2023

### Great Hair Products

I have been battling with thinning hair for many years. I have been using MD Hair products for a few months now and am very happy with the results. The customer service team is professional and always respond to my questions timeously. They check up on me as a courtesy which is great. Using these products and seeing the results has definitely boosted my self confidence.

**Date of experience:** July 02, 2023

👍 Useful 1   ⌁ Share



**The Super Sophia Project**
1 review   ⊙ CA

★★★★★                                              Jun 29, 2023

### I absolutely love mdhair!

I absolutely love mdhair. I have been using the system for a year and my hair has grown back. I was shedding like crazy and my hair line was embarrassing. I have been taking the daily vitamin along with using the shampoo and serum. I highly recommend mdhair as well as staying positive and believing.

**Date of experience:** June 28, 2023

👍 Useful 1   ⌁ Share



**Daniel Dang**
1 review   ⊙ CA

★★★★★                                              Jul 30, 2023

### Very good product

Very good product. I've used it for 3 months and have seen improvement on my hair growth and reduction in hair loss. Looking forward to the next progress.

**Date of experience:** July 30, 2023

👍 Useful 1   ⌁ Share



**Sarah Harris**
2 reviews   ⊙ GB

★★★★★                                              Jun 18, 2023

### Highly recommend

I have been using the shampoo, conditioner and serum for the last 6 months and I absolutely love it. Even my husband has noticed my hair looking thicker. The conditioner is wonderful, I use the tiniest amount and massage it it into my scalp and I can distribute it throughout all of my hair. My hair has never looked or felt healthier. I will 100% be continuing with my treatment.

**Date of experience:** June 18, 2023

👍 Useful 1   ⌁ Share

Advertisement



AN   **Anna**
1 review  📍 US

⭐⭐⭐⭐⭐                                    Jun 11, 2023

### Their customer service is TOP NOTCH

Their customer service is beyond stellar. Everyone has been so patient and
understanding with all of my questions and concerns. The items that have been
suggested for my kit have been wonderful. Their Restore Shampoo has also made it
possible for me to extend my hair coloring appointments. It has been over 6 months,
and my hair is still less than 50% gray. Typically, after 3 months, I need to go back in
for a touchup. My hair feels clean and thicker after I use their shampoo and
conditioner. I still shed hair when I wash my hair but not the amount that I did when I
used Nutrafol products.

**Date of experience:** June 11, 2023

👍 Useful 1     ⌄ Share                                         ⚑



**Khushboo Panchal**
1 review  📍 CA

⭐⭐⭐⭐⭐                                    Jul 20, 2023

### I had a few thin hair on the sides of…

I had a few thin hair on the sides of my forehead and my hair fall was through the roof.
I came across to MD hair while I was watching Tina Lee on YouTube. I immediately
tried the quiz and ordered my first subscription. I now have my second one in my
house and I am so happy I ordered. My hair feels thick, the hair fall has reduced a
LOT and my so called bald spot has hair now. Very happy with the results.

**Date of experience:** July 20, 2023

👍 Useful 1     ⌄ Share                                         ⚑



CM   **Clarissa Mullins**
6 reviews  📍 GB

⭐⭐⭐⭐⭐                                    May 30, 2023

### MDHair has been wonderful

MDHair has been wonderful. Their staff really works with you to get to the source of
the problems and their products actually treat those problems. I've seen less hair loss
and shedding so far but am early on in my treatment and am looking forward to the
regrowth phase.

**Date of experience:** May 30, 2023

👍 Useful     ⌄ Share                                          ⚑

Previous | 1 | 2 | 3 | 4 | Next page





★ Trustpilot

**About**              **Community**         **Businesses**        **Follow us on**      **Choose country**

About us             Trust in reviews       Trustpilot Business                          🇺🇸 United States ▾

Jobs

Contact

Blog

How Trustpilot works

Transparency Report

Press

Investor Relations

Help Center

Log in

Sign up

Chrome App

Products

Plans & Pricing

Business Login

Blog for Business

Legal          Privacy Policy          Terms & Conditions          Guidelines for Reviewers          System status          Cookie preferences          Do Not Sell My Info

Modern Slavery Statement

© 2023 Trustpilot, Inc. All rights reserved.

★ Trustpilot   Search for another company…   Categories   Blog   Log in   For businesses

Beauty & Well-being  ›  Cosmetics & Makeup  ›  Beauty Product Supplier  ›  MDacne

# MDacne

Reviews 948 • Great

★★★★★   4.0 ⓘ

☐ **www.mdacne.com**   →
Visit this website

Write a review

☆☆☆☆☆

## Reviews ★ 4.0

948 total

| | |
|---|---|
| ☑ 5-star | 72% |
| ☐ 4-star | 12% |
| ☐ 3-star | 4% |
| ☐ 2-star | 2% |
| ☐ 1-star | 10% |

Filter ⚙   Sort: Most relevant ⇅

5-star ✕   Reset

**Ashley Lynch**
1 review • US

★★★★★   2 days ago

**One of the 1st skin regime I had…**

One of the 1st skin regime I had actually work! I am in love with these products and am so thankful for MDacne! They have came out with a specialized personalized to our skin which makes a huge difference for us as customers! I recommend anyone who is sick and tired of wasting money on tons of skincare products and dermatology and facials with no success or short term results. Try this product!!

Date of experience: August 01, 2023

👍 Useful   ⌁ Share

**Monika Kelly**
1 review • CA

★★★★★   Aug 14, 2023

**A must try!**

My MDacne experience has been great. Customer service is awesome, I love the advice I've received so far. Products have been great, I love the simplicity of the routine yet it's very effective.

Date of experience: August 14, 2023

👍 Useful   ⌁ Share

**Maribel Montoya**
M   1 review • US

## Company activity   See all

💻 Claimed profile

💬 Replied to 1 out of 36 negative reviews

⏱ Replies to negative reviews in < 24 hours

**Our 2022 Transparency Report has landed** ★

Take a look

Advertisement

Get every order shipped
Terms apply
SEPHORA

## About MDacne
Information written by the company

#1 Acne app for analyzing acne prone skin. Real-time information about acne type and severity together with a custom personal acne treatment plan.

## Contact

@ support@mdacne.com

📍 San francisco
United States

## Category ⓘ

Beauty Product Supplier

**The Trustpilot Experience**

We're open to all   ⌄

We champion verified reviews   ⌄

We fight fake reviews

★★★★★                                                        Aug 19, 2023

**I love MDacne products!**

I love MDacne products!! It's amazing for my face, and the way I feel after washing my face is incredibly amazing!!! And there videos on how much to apply, and how to do it is really awesome of them! I love MDacne, and if your not trying it you really should!

Date of experience: August 19, 2023

👍 Useful    ⤴ Share                                                    🏳



We encourage constructive feedback

We verify companies and reviewers  ⌄

We advocate against bias

**Take a closer look**

RY    Rylee
      1 review  📍 US

★★★★★                                                        Aug 18, 2023

**good results**

i can see a distinct difference in my skin. i started off with really bad acne and scaring and its gotten so much better.

Date of experience: August 18, 2023

👍 Useful    ⤴ Share                                                    🏳

A    Arnaud Rodney
     1 review  📍 US

★★★★★                                                        Aug 11, 2023

**I've been using Md acne almost 2 years…**

I've been using Md acne almost 2 years now and it's one of the best thing that I could have done for my skin. Yes of course in the beginning you'll have a purging stage but after that purging stage the treatment make wonders.

Date of experience: August 11, 2023

👍 Useful 1    ⤴ Share                                                  🏳

MW    Mark Watt
      1 review  📍 GB

★★★★★                                                        Aug 8, 2023

**MDAcne - Great Products**

The service provided has been great , the treatment cream , moisturiser , cleanser and shave cream have worked well for me , it's taking a bit of time for my skin to get used to the products but now I'm starting to see benefits from them. Would highly recommend.

Date of experience: August 08, 2023

👍 Useful 1    ⤴ Share                                                  🏳



Charlene Gardner
1 review  📍 US

★★★★★                                                        Jul 3, 2023

**I have struggled with ance so long**

I have struggled with ance so long. So I saw this ad on Facebook and read the reviews. I tried everything else so why not. So it came really fast because they were offering a trial just pay shipping. The trial was large than I expected. So I tried it, the next morning I was like my mind is playing tricks because my skin looked really smooth and clear. Then later that day my sister complemented on how clear my skin looked. I can't wait to see how my skin will look with continued use.

Date of experience: July 04, 2023

👍 Useful 1    ⤴ Share                                                  🏳



**Mutsa Claire**
1 review · ⊙ GB

★★★★★                                    Jun 19, 2023

**Thankyou MDacne!**

I've just read some of these reviews and all I can say is wow, I guess everyone's experience is different. I started using MDacne about a month ago and I was a bit skeptical but I thought let me give it a try. At first it seemed like nothing was happening but you've got to be patient with these things as you're not going to see overnight results. Slowly but surely I began to see results and my acne is really clearing up. I use the products every day as direct with my own moisturiser and sun cream too! Please remember that this is more of a subscription per se, so don't be surprised when the money is taken every month - I was caught off guard the first time but I've altered the date I'm going to get charged  Thankyou to the creators of MDacne, you're really doing a good job! I'm sorry to those who have had a bad experience but still if you're yet to try the products, give it a go and see. Also this is a genuine review - I'm not a bot or anything, I'm a real person just giving my honest opinion on MDacne!

Date of experience: June 19, 2023

👍 Useful **1**      ⤳ Share                                    ⚑



Ⓜ **Mieca Morowel**
1 review · ⊙ GB

★★★★★                                    Mar 7, 2023

**Genuinely worked so perfectly for my…**

Genuinely worked so perfectly for my skin. I've tried quite a few and they were good but I think this one did the magic.
Eating better and drinking loads of water per day, my skin has become much better. Sometimes I feel the dryness after washing my face but I literally don't mind it. It's not tooo dry and with the facial cream plus any suitable cream, you'll be fine. It's definitely a 5 star for me! I personally started seeing results from the first day!!!!

Date of experience: March 08, 2023

👍 Useful **1**      ⤳ Share                                    ⚑

**Honor Gingerich**
1 review · ⊙ US

★★★★★                                    Apr 18, 2023

**Within only a week of using my…**

Within only a week of using my customized treatment, it has reduced my redness, as well as got my excessive oily skin under control. Not leaving me too dried out at the same time.

Date of experience: April 18, 2023

👍 Useful **1**      ⤳ Share                                    ⚑

See Trustpilot reviews directly in your Google searches                                    ✕

**Trustpilot**                          

                                         Get Chrome Extension

JP **Jayee Pea**
1 review · ⊙ US

★★★★★                                    Aug 12, 2022

**THE GOT THE RECIPES**

We all know how going anywhere with breakouts are simply THE WORST!!! First Off…WHO EVER MADE THIS LIQUID GOLD FOR-SURE KNOWS THE SECRET FORMULA TO THE " CRABBY PATTY" I CANNOT TELL YOU HOW MANY DERMATOLOGIST I HAVE SEEN FACE TO FACE THAT GAVE ME THE WRONG STUFF !!!! tragic MADE EVERYTHING WORST!!!! THIS TEAM OF DERMATOLOGIST GOT MY WHOLE VIBE TOGETHER OVER AN APP makes me wonder WHY DID I WAIT SO LONG!!!

SINCERELY, A clear FACE FRIEND!!! thank you so much seriously

**Date of experience:** August 12, 2022

👍 Useful 1    ⌥ Share

 **Nikki m**
1 review   ⊙ GB

★★★★★                                          Feb 19, 2023

**Amazing!!!**

It is very easy to use, it works so well and the ingredients used are proven to work. I have an ongoing issue with acne but it cleared up so well!! However I am on the contraceptive implant so I do break out often, but because of these creams, it's made it very minimal and if I weren't using them, it would be so different.

**Date of experience:** February 19, 2023

👍 Useful 1    ⌥ Share

 **Omokaro Elizabeth**
2 reviews   ⊙ NG

★★★★★                                          Jun 26, 2022

**My Skin clearing** Angel.MDacne

I started this journey of skin clearing with MD acne having mixed feeling because I had continuous abortive treatments with almost all the so called acne treatments I had come across and so I met MDacne. I tried the product by 'faith' and almost gave up at some points because it appeared to be getting worst at first but with patience I continued also the daily routine reminders were good to remind me and suddenly I realised I was looking good. My skin was cleaner and smoother. Kisses and hugs to the team.

**Date of experience:** June 26, 2022

👍 Useful 1    ⌥ Share

 **Nina**
6 reviews   ⊙ GB

★★★★★                                          May 14, 2023

**Absolutely brilliant**

Absolutely brilliant! I cannot recommend MDacne enough! I used to have severe acne until I started using the customised products they sent me. In under a month my skin is nearly clear.

**Date of experience:** April 22, 2023

👍 Useful 1    ⌥ Share

 **Maryin Ksy**
1 review   ⊙ US

★★★★★                                          Apr 27, 2023

**This skin supplements helped to reduce…**

This skin supplements helped to reduce my acne and also black spot  The only thing

was that during my first two weeks I felt uncomfortable swallowing the pills but I became used to it later

**Date of experience:** March 21, 2023

👍 Useful 1    ⌁ Share



DE    **Dominion Ebeye**
2 reviews  ⚲ GB

★★★★★                                      Oct 7, 2022

**Lovely products**

It's been roughly a week since I started using MDacne treatment. My skin seems to be going back to normal. It's happening way faster than expected cos it says you should expect improvement after 2 - 4weeks. If you're looking for something effective try it out and the fact that the first set is pretty Free is amazing. Thanks MDacne.

**Date of experience:** October 06, 2022

👍 Useful 1    ⌁ Share



DK    **Diksha Kamboj**
1 review  ⚲ AU

★★★★★                                      Jul 4, 2022

**I remember when i started the...**

I remember when i started the treatment, after applying every single product online and still not satisfied. I lost so much confidence. And then mdacne helped to gain my confidence back. Feeling so much better now. Massive difference and very highly educated nurses online advicing after assessment. So happy :)

**Date of experience:** July 04, 2022

👍 Useful 1    ⌁ Share



**Scott Kunze**
2 reviews  ⚲ US

★★★★★                                      Aug 16, 2022

**I tried out their shaving Cream after...**

I tried out their shaving Cream after Neutrogena discontinued their skin clearing formula. This product is every bit as good as the Neutrogena equivalent, if not better. Right away I was getting less bumps and break outs. I use this with a safety razor and just a little can cover your whole face.

**Date of experience:** August 16, 2022

👍 Useful 1    ⌁ Share



RF    **Rozella Fall**
1 review  ⚲ US

★★★★★                                      May 5, 2022

**MDacne is awesome**

MDacne has been a great experience so far. I've tried other online acne prescriptions and they never went out of their way like the team at MDacne does. They check in on you weekly, actually look at your progress photos, and adjust your shipments based on how your face is looking. I definitely recommend them to anyone who's looking for a good acne treatment. 10/10 awesome service.

**Date of experience:** May 06, 2022

👍 Useful 1    ⌁ Share



KA

**KAREN**
2 reviews   GB

★★★★★                                    Oct 20, 2022

**My troubled skin journey is finally over...**

My troubled skin journey is finally over and it's been so easy! It's such a relief to have normal skin after a year of really bad acne, the frustration of failed treatments, and expensive medications/creams. My skin started to clear as I go on using the customised treatments from MDacne. MDacne's sulfur treatment cream has truly changed my skin. Its so easy to use & apply and truly you could see guaranteed results as fast as 2weeks.
This is by far the best product I have ever tried of any kind, in my LIFE👍 Thanks a lot MDacne😊

**Date of experience:** October 20, 2022

👍 Useful 1          ⌁ Share                                              ⚑

Previous | 1 | 2 | 3 | 4 | ••• | 35 | Next page



★ Trustpilot

**About**

About us

Jobs

Contact

Blog

How Trustpilot works

Transparency Report

Press

Investor Relations

**Community**

Trust in reviews

Help Center

Log in

Sign up

Chrome App

**Businesses**

Trustpilot Business

Products

Plans & Pricing

Business Login

Blog for Business

**Follow us on**

**Choose country**

🇺🇸 United States

Legal     Privacy Policy     Terms & Conditions     Guidelines for Reviewers     System status     Cookie preferences     Do Not Sell My Info

Modern Slavery Statement

© 2023 Trustpilot, Inc. All rights reserved.