1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**MCCARTNEY DALLMANN LLP**
Andrew S. Dallmann (State Bar No. 206771)
23187 La Cadena Dr.
Suite 102
Laguna Hills, California 92653
Telephone: (951) 678-2267
E-mail:  andrew@mdllplaw.com

**KEY IP LAW GROUP, PLLC**
Cecil E. Key (admitted pro hac vice)
1934 Old Gallows Road, Suite 250
Vienna, Virginia 22182
Telephone: (703) 752-6276
Email:  cecil@keyiplaw.com

Attorneys for Plaintiff
LA CANADA VENTURES, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LA CANADA VENTURES, INC., | Case No.:    3:22-cv-07197-RS |
| Plaintiff,<br>vs. | **NOTICE OF MOTION AND MOTION TO DISMISS DEFENDANT'S AMENDED COUNTERCLAIMS** |
| MDALGORITHMS, INC., | **FED. R. CIV. P. 12(B)(6)** |
| Defendant. | Judge: Richard Seeborg<br>Courtroom: 3<br>Date: December 7, 2023<br>Time: 1:30 p.m. |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Please take notice that on December 7, 2023, at 1:30 p.m., the undersigned will appear before the Honorable Richard Seeborg of the United States District Court for the Northern District of California in Courtroom 3, 17th Floor, at the San Francisco Federal Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, and shall present Plaintiff La Canada Ventures, Inc. ("La Canada")'s Motion to Dismiss Defendant's Amended Counterclaims.

The motion is based on this Notice of Motion and Motion, the attached Memorandum of

1   Points and Authorities, the Declaration of Andrew S. Dallmann and exhibits thereto, judicially

2   noticeable public records, any oral argument, any other evidence the Court may consider.

3        The grounds for dismissal are that Defendant MDalgorithms Inc.'s Counterclaims, along with

4   the documents referred to and incorporated in it, and judicially noticeable documents, show that

5   MDalgorithms fails to state a claim on which relief can be granted, warranting dismissal under Rule

6   12(b)(6).   The record on which MDalgorithms relies shows that the ownership, licensing and

7   assignment of La Canada's registrations are all proper and therefore those registrations remain valid

8   and subsisting.  Moreover, MDalgorithms has failed to show that there was any misrepresentation, let

9   alone a material one, by anyone to obtain or maintain La Canada's duly granted trademark rights.

10  MDalgorithms has also failed to plead or allege any facts to support the remaining elements needed

11  to meet its heavy burden of establishing fraud on the U.S. Patent and Trademark Office.

12       La Canada, not MDalgorithms, thus remains the first user and registered owner of MD® and

13  a family of MD Formative marks for goods including hair products and acne treatments.  This is so

14  regardless of registration status.  Accordingly, La Canada, not MDalgorithms, has the right to use its

15  trademarks and product names in the manner alleged in the counterclaims.  Further, La Canada's uses

16  of the public domain English words "hair" and "acne" to describe its own products for treating hair

17  conditions and acne are protected nominative uses.  La Canada requests that the Court dismiss the

18  Counterclaims with prejudice.

19  DATED:  October 25, 2023           Respectfully submitted,

20

21                          By: */s/ Cecil E. Key*

22                           Andrew S. Dallmann
                         MCCARTNEY DALLMANN LLP

23                           Cecil E. Key

24                           KEY IP LAW GROUP, PLLC

25                           Attorneys for Plaintiff
                         LA CANADA VENTURES, INC.

26

27

28

1
2

**Table of Contents**

3
4

I.     INTRODUCTION .................................................................................1

II.    STATEMENT OF FACTS ......................................................................2

    A.    MDalgorithms' Alleged Trademark Rights.............................2

    B.    La Canada's Trademarks And Registrations Before 2019 ......................4

    C.    La Canada's Marks, Product Names and Product Descriptions As Of 2021 ..........5

    D.    Procedural History ................................................................6

III.    ARGUMENT.........................................................................................8

    A.    Legal Standard ....................................................................8

    B.    As the Undisputed First User of the MD Formative Marks, La Canada Has A Right to Use A Combination of "MD" And "Acne" or "Hair" For Its Acne and Hair Products. ............................................................10

        1.    The Domain Name MDhair.com .............................................12

        2.    MD Acne Complexion Factor Acne Cleanser-Acne Wash to Reduce Acne ................................................................14

    C.    La Canada's Use of the Words Hair and Acne to Describe Its Own Products is Non-infringing Nominative Use. ................................17

    D.    La Canada's Registered Marks Were Properly Filed in Dr. Lin's Name Because She Owned The MD Formative Marks And Licensed Them to La Canada Until Assigning Them to La Canada in 2019. .................18

        1.    MDalgorithms' Assertions of Defects in Ownership Are Legally Implausible. ................................................................18

        2.    MDalgorithms Cannot Carry the Heavy Burden of Its Allegations of Fraud on the USPTO ......................................20

    E.    No Amendment Should Be Allowed. ..............................................20

IV.    CONCLUSION.....................................................................................21

1

**TABLE OF AUTHORITIES**

2

<u>Cases</u>

3

*Academy of Motion Picture Arts & Sciences v. Creative House Promotions, Inc.*, 944 F.2d 1446

4

   (9th Cir. 1991)..................................................................................................................... 9

5

*AirWair Int'l. Ltd. v. Schultz*, 84 F. Supp. 3d 943 (N.D. Cal. 2015) ..................................... 8

6

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................ 8, 21

7

*Barcamerica Int'l USA Trust v. Tyfield Imps., Inc.*, 289 F.3d 589, 596-97 (9th Cir. 2002)............. 10

8

*Branch v. Tunnell*, 14 F.3d 449 (9th Cir. 1994) .................................................................. 8

9

*Brookfield Commc'ns., Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036 (9th Cir. 1999) ...... 8, 10, 14

10

*Brooks v. Vallejo City Unified Sch. Dist.,* 2013 U.S. Dist. LEXIS 33455, 2013 WL 943460 (E.D.

11

   Cal. Mar.11, 2013) ............................................................................................................ 20

12

*Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175 (9th Cir. 1988).................................... 9, 12

13

*Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083 (9th Cir. 2002) ...................................... 20

14

*Citibank N.A. v. City Bank of San Francisco*, 206 U.S.P.Q. 997 (N.D. Cal. 1980) ......................... 11

15

*Cleary v. News Corp.*, 30 F.3d 1255 (9th Cir. 1994)............................................................... 9

16

*Department of Parks & Recreation v. Bazaar del Mundo Inc.*, 448 F.3d 1118 (9th Cir. 2006) ....... 10

17

*Entrepreneur Media v. Smith*, 297 F.3d 1135 (9th Cir. 2002)........................................... 9, 18

18

*Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ................................................................... 8

19

*Fleischmann Distilling Corp. v. Maier Brewing Co.*, 314 F.2d 149 (9th Cir. 1963) ....................... 12

20

*Galbraith v. City of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) ...................................... 8

21

*Gardner v. Martino*, 563 F.3d 981 (9th Cir. 2009)................................................................ 10

22

*Hokto Kinoko Co. v. Concord Farms, Inc.*, 738 F.3d 1085 (9th Cir. 2013).................... 9, 10, 19, 20

23

*Mack v. South Bay Beer Distrib.*, 798 F.2d 1279 (9th Cir. 1986) ...................................... 8

24

*Metro Pub., Ltd. v. San Jose Mercury News*, 987 F.2d 637 (9th Cir. 1993) .................................... 11

25

*Mullis v. Bankr. Court,* 828 F.2d 1385 (9th Cir. 1987) ...................................................... 8

26

*New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302 (9th Cir. 1992). ....................... 17, 18

27

28

*Parks School of Bus., Inc. v. Symington*, 51 F.3d 1480 (9th Cir. 1995) ................................ 8

*Prestonettes, Inc. v. Coty*, 264 U.S. 359 (1924) ................................................................. 17

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741 (9th Cir. 2006) ........................ 11

*Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035 (9th Cir. 2010) ................ 8

*Threshold Enters. Ltd. v. Pressed Juicery, Inc.*, 445 F. Supp. 3d 139 (N.D. Cal. 2020) .................. 11

Statutes

15 U.S.C. § 1052 ..................................................................................................... 3, 12

15 U.S.C. § 1055 ..................................................................................................... 9, 19

15 U.S.C. § 1091 ..................................................................................................... 3, 12

15 U.S.C. § 1127 ..................................................................................................... 9, 19

California's Business and Professions Code § 17200 ................................................. 8, 14

Other Authorities

Trademark Manual of Examining Procedure (TMEP) § 1201.03 ................................ 9

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

This is a trademark dispute.  La Canada asserted rights in its family of MD Formative marks only after actual confusion in the marketplace began when MDalgorithms started using "MDhair" and "MDacne" for competing goods in late 2021 and MDalgorithms refused to relent as to the confusion it was causing.  MDalgorithms brought counterclaims couched as unfair competition, which La Canada moved to dismiss because such claims cannot be sustained given La Canada's undisputed priority of use.

In response, MDalgorithms has brought Amended Counterclaims to which it has added attacks on La Canada's registrations.  However, registration is irrelevant to the unfair competition counterclaims.  Trademark rights flow from use, not registration, and one of the most notable amendments MDalgorithms has made is the repeated concession that La Canada used the MD Formative marks before MDalgorithms.  MDalgorithms cannot as it is trying to do with its counterclaims stop La Canada, or anyone else, from doing what they had a right to do when MDalgorithms belatedly entered the market.

As to La Canada's registrations, the only reasonable inference from MDalgorithms' pleadings, taken as true, is that the owner of the marks (Dr. Lin) filed applications and obtained registrations based on use by her nonexclusive licensee (La Canada) and then later exclusively licensed them to the licensee (La Canada) before assigning them to the exclusive licensee (La Canada), at which point all rights of prior use by either Dr. Lin or La Canada inured to the benefit of the new owner.  Not only does this scenario not present a violation of any laws or procedures, it reflects precisely how things should be done according to those laws and procedures.

In sum, MDalgorithms failed to state a plausible claim for relief in its initial counterclaims and it has fared no better with its Amended Counterclaims.  MDalgorithms knows that it cannot claim infringement.  In the case of MDhair, MDalgorithms intentionally registered that admittedly descriptive term only for "education and advice" because it knew others were already using the term for haircare products.  Indeed, La Canada's use of MD® Hair was reflected in the records of the

1  USPTO when MDalgorithms filed it MDhair application.  Yet, MDalgorithms is seeking to limit La

2  Canada's rights to use its mark and descriptive terms to sell its products.  The only plausible claim

3  established by MDalgorithms' allegations is that any confusion or conflict that has arisen is its own

4  fault.  MDalgorithms not only moved to the nuisance, it created it.  That is a basis for MDalgorithms'

5  liability, not La Canada's.

6        La Canada therefore asks that MDalgorithms' counterclaims be dismissed with prejudice.

7  **II.**    **STATEMENT OF FACTS[1]**

8        The allegations on which MDalgorithms bases its unfair competition Counterclaims are

9  limited to La Canada's actions after MDalgorithms entered the non-medicated acne and haircare

10  product market in 2021.  As pled by MDalgorithms, it began offering skincare products and services

11  online using the name MDacne in 2017 but only began using MDAcne for "non-medicated skin care

12  preparations" on November 21, 2021.  Dkt. 36, Amended Counterclaims ¶ 73; Dkt. 31, ¶ 20; Dkt. 32,

13  Answer ¶ 20; *see also* Dkt. 32, Counterclaims ¶ 11 (citing U.S. Reg. No. 6,668,393).  MDalgorithms

14  likewise did not begin using the name MDhair for any purpose until 2021.  Dkt. 36, Amended

15  Counterclaims ¶ 69.  MDalgorithms does not allege any conflict with La Canada's use of its marks,

16  product designations or descriptions prior to 2021.  *See id.*, ¶¶ 69-83.

17        The allegations regarding purported invalidity of La Canada's registrations are limited to

18  actions occurring several years before 2021.  MDalgorithms concedes that the registered MD

19  Formative marks were being used by La Canada in that time period, but does not allege that La

20  Canada's use was improper or unauthorized or that Dr. Lin, La Canada's founder, owner and CEO,

21  was not entitled to use the marks.

22      **A.**    **MDalgorithms' Alleged Trademark Rights**

23        According to its pleadings, the majority of MDalgorithms' customers complete a quiz and

24  submit photographs of their skin or scalp to MDalgorithms.  Dkt. 36, Amended Counterclaims ¶ 71.

25  _____

26     [1] The facts in this statement are drawn from the pleadings, including MDalgorithms'
admissions in its answers and allegations in its various counterclaims filed to date.

27

28

In 2016, MDalgorithms therefore registered MDacne for "Computer software and downloadable computer software for education and advice in the field of care and treatment of skin disorders, namely, acne." and "providing a website featuring information and advice in the field of the diagnosis and treatment of acne." *Id.*, ¶ 73; Dallmann Decl., Ex. B. This registration was in Classes 9 and 41 based on a claimed first use of May 16, 2010. Dallmann Decl., Ex. B. In 2018, it registered MDacne for "Medicated skin treatment and cleansing creams." Dkt. 36, Amended Counterclaims ¶ 73; Dallmann Decl., Ex. C. This registration was in Class 5 based on a claimed first use of December 1, 2017. Dallmann Decl., Ex. C.

At the point that MDalgorithms began offering anything other than software, La Canada's registration of MD® for, among other goods, "non-medicated acne treatment preparations" in Class 3 and "acne treatment preparations" in Class 5 (Reg. No. 4,471,494) had been in effect for approximately four years. *Compare id. with* Dallmann Decl., Ex. A (La Canada's Reg. No. 4,471,494). La Canada's MD® registration is based on first use as of January 1, 2012. Dallmann Decl., Ex. A. MDalgorithms did not register MDacne for "non-medicated skincare preparations" until March 2022. Dallmann Decl., Ex. D. That registration was in Class 3 based on a claimed first use of November 21, 2021. *Id.* Thus, La Canada's use for goods in Class 3 preceded MDalgorithms' use by almost five years, and its use for goods in Class 5 preceded MDalgorithms by almost ten years. Dallmann Decl., ¶ 7 (registration and use comparison table).

As to MDhair, MDalgorithms only began offering goods and services under the MDhair mark in 2021 on the website located at mdhair.co—not mdhair.com, which was "dormant and listed as available for sale". Dkt. 36, Amended Counterclaims ¶ 77. Prior to that time, MDalgorithms applied to register MDhair. It did not register MDhair for haircare products. Rather, it only registered MDhair for "Providing temporary use of on-line non-downloadable computer software for education and advice in the field of the care and treatment of skin and hair" in Class 42 based on a claimed first use of September 13, 2021. *Id.*, ¶ 75; Dallmann Decl., Ex. E. MDhair was not registered until January 11, 2022 and it was only registered on the Supplemental Register, which signifies that it is merely descriptive for the claimed software services. Dallmann Decl. Ex. E; 15 U.S.C. §§ 1091, 1052(e).

MDalgorithms did not allege that the MDhair mark has acquired secondary meaning in its original counterclaims, but now has now added the assertion of secondary meaning. *Compare* Dkt. 32 *with* Dkt. 36, Amended Counterclaims ¶¶ 76, 174. Its assertion of secondary meaning is apparently tied solely to the unregistered uses for haircare products and not the software services covered by the registration. *See* Dkt. 36, Amended Counterclaims ¶ 74. It does not allege when secondary meaning purportedly attached or that it occurred before the alleged acts of La Canada occurred. MDalgorithms does not allege that it has any U.S. trademark registrations for MDhair for any products related to hair or haircare. Other than La Canada, MDalgorithms does not allege that any third party used "MD Hair" or any nearly identical mark before 2021. Dkt. 36, Amended Counterclaims ¶ 82; Dkt. 32, Counterclaims ¶ 18.

Thus, the substantial and detailed public record undisputedly establishes that La Canada is the senior user of MD Formative marks for hair and acne products by several years. Dallmann Decl., ¶ 7.

### B.    La Canada's Trademarks And Registrations Before 2019

Dr. Susan Lin is La Canada's founder, owner and CEO. Dkt. 36, Amended Counterclaims ¶ 8. Between 2007-2018, Dr. Lin filed applications to register various MD Formative marks with the USPTO. *Id.*, ¶¶ 9, 14, 20, 26, 41-42, 53-54, 61-62. Products bearing the MD Formative marks were sold and offered by La Canada, Dr. Lin's company. *Id.*, ¶¶ 10-12 ("La Canada corporation owned the mark"), 15-17 (alleging that La Canada was the actual "party using the mark in commerce"), 24, 27-28 ("specimens of use … were La Canada marketing materials"), 42-43 (same). According to MDalgorithms, La Canada was the owner of the MD Formative marks, including the MD® mark. *Id.*, ¶¶ 12, 18, 24, 27, 42, 54, 62. MDalgorithms does not allege that Dr. Lin was not entitled to use the marks or that she did not use them prior to 2019. MDalgorithms also does not allege that La Canada's use was improper or unauthorized, that there was a lack of quality control, nor that the MD Formative marks were not in use as of 2021 for, among other goods and services, hair and acne treatments.

In January 2019, Dr. Lin granted La Canada an exclusive license to the registered MD

Formative marks.  *Id.*, ¶¶ 122-123; Dallmann Decl., ¶ 8.  In March 2019, Dr. Lin assigned all right, title and interest in and to the MD Formative marks to La Canada.  Dkt. 36, Amended Counterclaims, ¶¶ 46; Dallmann Decl., Ex. F (Trademark Assignment).

Until the MD Formative marks were assigned to La Canada in March 2019, filings for the registrations, including those related to maintaining the registrations, were made in Dr. Lin's name. Dkt. 36, Amended Counterclaims, ¶¶ 9-10, 14-16, 20-22, 26-28, 42-43, 54-56, 62-64.

**C.  La Canada's Marks, Product Names and Product Descriptions As Of 2021**

MDalgorithms does not allege that any conflicts arose with La Canada prior to 2021.  By that time, La Canada owned multiple MD Formative marks as averred in MDalgorithms' pleadings.  Dkt. 36, Amended Counterclaims ¶¶ 9-12, 14-18, 20-24, 26-27, 41-42, 53-54, 61-62.  They include La Canada's registered mark MD® for goods including "non-medicated acne treatment preparations" and "acne treatment preparations; nutraceuticals for the treatment of hair loss;" and "nutraceuticals for use as a dietary supplement," based on a first use at least as early as January 1, 2012.  Dkt. 36, Amended Counterclaims ¶ 26; Dallmann Decl., Ex. A.  On January 21, 2019, a declaration of continued used and claim of incontestability was submitted to the USPTO in Dr. Lin's name.  Dkt. 36, Amended Counterclaims ¶ 33.  At that point, La Canada was the exclusive licensee but the mark had not yet been assigned to it.  Dkt. 36, Amended Counterclaims ¶¶ 31-33.

As of 2021, La Canada was using a composite term that combines "MD" and "Acne" to identify and describe La Canada's acne treatment products, namely the product descriptor "MD® Complexion Factor Acne Cleanser."[2]  Dkt. 36, Amended Counterclaims ¶ 93; Dkt. 32, Counterclaims ¶ 28.  As shown by MDalgorithms' pleading, the actual description as it appeared on La Canada's

---

[2] For purposes of this motion, La Canada adopts MDalgorithms' terminology regarding the identifiers La Canada uses for its products.  MDalgorithms refers to the identifier "MD Complexion Factor Acne Cleanser," which it does not challenge, and the identifier "MD Acne Complexion Factor Acne Cleanser," which it alleges as a basis for its Amended Counterclaims, as a "website description for the product labeled MD Complexion Factor Exfoliating Cleanser."  Dkt. 36, Amended Counterclaims ¶¶ 92-93; Dkt. 32, Counterclaims ¶¶ 27-28.  La Canada's "MD Acne" use that is the subject of the Counterclaims will therefore be referred to as a "product description."

web site was "MD® Complexion Factor Acne Cleanser – Acne Wash to Reduce Acne."[3]  Dkt. 36, Amended Counterclaims, at 93; Dkt. 32, Counterclaims, at 28.  Likewise, as of 2021, La Canada was using a composite term that combined "MD" with "Hair" for its haircare products, namely, the MD® Nutri Hair product name[4] that was in use "[w]hen MDalgorithms began using MDhair for its haircare products."  Dkt. 36, Amended Counterclaims ¶ 85; Dkt.  32, Counterclaims ¶ 20.  The specimen submitted in connection with U.S. Reg. 5,860,508 for the mark MD BY SUSAN F. LIN M.D., one of the registrations that is the subject of MDalgorithms' Amended Counterclaims, also shows La Canada's use of MD® Nutri Hair as a product name and MD® Hair as a product category description as of October 17, 2018 when the specimen was filed.  Dkt. 36, Amended Counterclaims ¶¶ 14-16; Dallmann Decl., Ex. H at 17-18.

### D.    Procedural History

On August 23, 2023, La Canada filed its Second Amended Complaint in which it added claims of false advertising to its trademark infringement and unfair competition claims.    Dkt. 31. MDalgorithms retaliated on August 30 with counterclaims of purported unfair competition.  Dkt. 32. La Canada moved to dismiss the unfair competition counterclaims as a matter of law based on MDalgorithms' own pleadings.  Dkt. 35.  Rather than file an opposition, MDalgorithms filed its Amended Counterclaims in which the unfair competition counterclaims remain virtually identical but to which it has added seven counterclaims attacking La Canada's registrations based on acts and occurrences dating back as early as 2007.  Dkt. 36.  MDalgorithms does not allege that Dr. Lin was not entitled to use the marks or that she did not use them prior to 2019.  MDalgorithms also does not allege that La Canada's use was improper or unauthorized, that there was a lack of quality control,

---

[3] Despite having the misrepresentation regarding the MD® Complexion Factor product description brought to its attention, MDalgorithms has continued the misrepresentation in its Amended Counterclaims.

[4] As with its use of "MD" in combination with "Acne," La Canada adopts MDalgorithms' terminology regarding its use of "MD" in combination with "Hair" for purposes of this motion.  *See* note 2, *supra*.  MDalgorithms refers to La Canada's use of MD® Nutri Hair, which it does not challenge, as a "product name."  Dkt. 36, Amended Counterclaims ¶ 85; Dkt. 32, Counterclaims ¶ 20. MD® Nutri Hair will therefore be referred to as a "product name."

nor that the MD Formative marks were not in use as of 2021 for, among other goods and services, hair and acne treatments.

MDalgorithms' Counterclaims for unfair competition allege that after MDalgorithms began using "MDhair" and "MDacne," La Canada began use of those marks "to create the false belief that La Canada makes MDalgorithms' products." Dkt. 36, Amended Counterclaims ¶ 2; Dkt. 32, Counterclaims ¶ 1. MDalgorithms' claims are based on two alleged acts.

The first is La Canada's redirecting of its domain name <mdhair.com> to its website located at <md-factor.com>, which directs consumers and potential consumers typing in <mdhair.com> to La Canada's website. Dkt. 36, Amended Counterclaims ¶¶ 85-87; Dkt. 32, Counterclaims ¶¶ 20-25. MDalgorithms alleges this was improper because "[w]hen MDalgorithms began using MDhair for its haircare products, and to sell them exclusively at mdhair.co, La Canada offered a product named MD Nutri Hair, but it did not offer a product named MDhair (or MD Hair), nor did it utilize the website mdhair.com for any purpose (the website mdhair.com was inactive and listed for sale)." Dkt. 36, Amended Counterclaims ¶ 85; Dkt. 32, Counterclaims ¶ 20. MDalgorithms does not allege in either its original or amended counterclaims that La Canada's use of MD® Nutri Hair in and of itself constitutes unfair competition.

The second alleged act is La Canada's adding another appearance of "acne" to its existing product description as follows:

| Pre 2021 Product Description | Post 2021 Product Description |
|---|---|
| MD Complexion Factor Acne Cleanser – Acne Wash to Reduce Acne | MD Acne Complexion Factor Acne Cleanser – Acne Wash to Reduce Acne |

Dkt. 36, Amended Counterclaims ¶¶ 91-95; Dkt. 32, Counterclaims ¶¶ 26-30. MDalgorithms does not allege that the post 2021 product description inaccurately describes the quality or characteristics of La Canada's MD Complexion Factor Exfoliating Cleanser product in connection with which the product description appears on La Canada' website. MDalgorithms has not alleged any confusion or

loss of customers as a result of La Canada's MD Formative marks.  Dkt. 36, Answer ¶ 31

("MDalgorithms denies the existence of any actual confusion.").

## III.    ARGUMENT

### A.    Legal Standard

A motion to dismiss counterclaims under Rule 12(b)(6) is evaluated under the same standard as a motion to dismiss a plaintiff's complaint.  *AirWair Int'l. Ltd. v. Schultz*, 84 F. Supp. 3d 943, 949 (N.D. Cal. 2015).  A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint.  *Parks School of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  A court must accept all factual allegations in the pleading as true.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  A court may dismiss a claim where "there is no cognizable legal theory or absence of sufficient factual matter to state a facially plausible claim for relief."  *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009)).  While consideration of a motion to dismiss is generally limited to material in the pleadings, a court may take judicial notice of "matters of public record."  *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986).  A court may also consider "documents whose contents are alleged in a [pleading] and whose authenticity no party questions, but which are not physically attached to the pleading" without converting a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment.  *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) (overruled on other grounds by *Galbraith v. City of Santa Clara*, 307 F.3d 1119, 1125-26 (9th Cir. 2002).  Where the allegations in the counterclaims contradict facts that may be judicially noticed, the court need not accept the allegations as true.  *Mullis v. Bankr. Court,* 828 F.2d 1385, 1388 (9th Cir. 1987).

Where claims and allegations are based on use of trademarks, "[t]he first to use a mark is deemed the 'senior' user and has the right to enjoin 'junior' users from using confusingly similar marks in the same industry and market or within the senior user's natural zone of expansion." *Brookfield Commc'ns., Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1047 (9th Cir. 1999).  The Ninth Circuit has consistently held that state common law claims of unfair competition and actions under California's Business and Professions Code § 17200 are "substantially congruent" to claims

made under the Lanham Act. *See Academy of Motion Picture Arts & Sciences v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1457 (9th Cir. 1991) (citing *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1178 (9th Cir. 1988) (holding that under both, the "ultimate test" is "whether the public is likely to be deceived or confused by the similarity of the marks") (internal quotations omitted)); *Cleary v. News Corp.*, 30 F.3d 1255, 1262-63 (9th Cir. 1994); *see also Entrepreneur Media v. Smith*, 297 F.3d 1135, 1153 (9th Cir. 2002) (reversing and remanding summary judgment on trademark infringement claim and on Section 17200 claim alleging unfair competition by the deceptive use of trademarks).

As the Ninth Circuit has held, a party alleging fraud on the USPTO "bears a heavy burden of demonstrating that a trademark should be cancelled." *Hokto Kinoko Co. v. Concord Farms, Inc.*, 738 F.3d 1085, 1097 (9th Cir. 2013). Five elements must be plausibly present: "(1) a false representation regarding a material fact; (2) the registrant's knowledge or belief that the representation is false; (3) the registrant's intent to induce reliance upon the misrepresentation; (4) actual, reasonable reliance on the misrepresentation; and (5) damages proximately caused by that reliance." *Id*. at 1097. Material falsity is not enough; all elements must be pled. *Id*.

Registration is allowed based on use by a "related company," which is "any person whose use of a mark is controlled by the owner of the mark with respect to the nature and quality of the goods or services on or in connection with which the mark is used." 15 U.S.C. §§ 1055, 1127. This includes use by licensees. Trademark Manual of Examining Procedure (TMEP) § 1201.03(e). No formal quality control provisions are necessary:

> Even absent formal quality control provisions, a trademark owner does not abandon its trademark where 'the particular circumstances of the licensing arrangement' suggest that the public will not be deceived. … Such circumstances exist 'where the licensor is familiar with and relies upon the licensee's own efforts to control quality.' … More specifically, the licensor may establish adequate quality control by demonstrating a close working relationship between the licensor and the licensee."

1  *Hokto*, 738 F.3d at 1098 (citing *Barcamerica Int'l USA Trust v. Tyfield Imps., Inc.*, 289 F.3d 589,

2  596-97 (9th Cir. 2002)).  In other words, a mark that is owned by one person and used with permission

3  by another person (or company) with which the owner has a close working relationship is legitimately

4  registrable in the name of the owner.  *Id*. at 1097-98.

5  Leave to amend a dismissed claim may be denied "where the amendment would be futile."

6  *Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009).

7  **B.**    **As the Undisputed First User of the MD Formative Marks, La Canada Has A**

8  **Right to Use A Combination of "MD" And "Acne" or "Hair" For Its Acne and**

9  **Hair Products.**

10  MDalgorithms' unfair competition claims are based solely on allegations that La Canada used

11  its MD Formative marks, including the registered marks such as MD®, product names and product

12  descriptions in a way that is improper in two ways:  using the domain name <mdhair.com> to direct

13  consumers to its website at md-factor.com; and describing its exfoliating cleanser as MD® Acne

14  Complexion Factor Acne Cleanser.  MDalgorithms does not dispute that La Canada's uses predate

15  its own first uses of MDacne and MDhair for non-medicated preparations in 2021 nor does it allege

16  that there was any conflict arising from La Canada's use prior to that time.  In fact, MDalgorithms

17  has expressly pled that it "denies the existence of any actual confusion" as of the time of the Amended

18  Counterclaims.  Dkt. 36, Answer ¶ 31.

19  The Ninth Circuit has held that "[t]he first to use a mark is deemed the 'senior' user and has

20  the right to enjoin 'junior' users from using confusingly similar marks in the same industry and market

21  or within the senior user's natural zone of expansion." *Brookfield Commc'ns.*, 174 F.3d at 1047.

22  Federal registration of a trademark constitutes prima facie evidence of the validity of the registered

23  mark and of the registrant's exclusive right to use the mark" in commerce for the registered goods

24  and services. *Id.* at 1047; *Department of Parks & Recreation v. Bazaar del Mundo Inc.*, 448 F.3d

25  1118, 1124 (9th Cir. 2006).

26  A party can rebut another's presumption of trademark validity "by showing that it used the

27  mark in commerce first, since the fundamental tenet of trademark law is that ownership . . . is

28  - 10 -

governed by priority of use." *Brookfield*, 174 F.3d at 1047. Here, La Canada registered MD®, based on a first use as early as January 1, 2012, and it has become incontestable. Dkt. 31, ¶ 9; Dallmann Decl., Ex. A. The Court may take judicial notice of La Canada's trademark registrations. *See Metro Pub., Ltd. v. San Jose Mercury News*, 987 F.2d 637, 641 n.3 (9th Cir. 1993) (taking judicial notice of trademark registrations issued by the USPTO because their "accuracy cannot reasonably be questioned"); *Threshold Enters. Ltd. v. Pressed Juicery, Inc.*, 445 F. Supp. 3d 139, 146-47 (N.D. Cal. 2020) ("Materials in the online files of the USPTO and other matters of public record are proper subjects of judicial notice." (citing *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006))). MDalgorithms also admits through its pleadings that La Canada has priority of use for MD Formative marks, it is entitled to use and prevent others from using nearly identical variations of those marks, and that at least the "MD Acne" use is merely a product description. Dkt. 36, Amended Counterclaims ¶¶ 93-94; Dkt. 32, Counterclaims ¶¶ 1, 28-29.

MDalgorithms alleges that it offers skincare and haircare products and services online under the names MDacne (beginning in 2017) and MDhair (beginning in 2021). Dkt. 32, ¶ 7. MDalgorithms seeks to obfuscate the fact it only began using MDacne for these products years after La Canada had already been using its marks for the same products, and glosses over the fact that it only began use for a new line of products, non-medicated skincare preparations, in November 2021. Dkt. 31, ¶ 20; Dkt. 32, Answer ¶ 20; Dkt. 36, Answer ¶ 20; Dallmann Decl., ¶ 7 (registration and use comparison table). As MDalgorithms admits in its counterclaims, that was after La Canada had already adopted and been using its MD Formative marks and product designations, including MD® and combinations of "MD" and "acne."

As MDalgorithms itself has pled, La Canada has a right to use and prevent others from using marks that are nearly identical to those La Canada owns and uses. Dkt. 36, Amended Counterclaims ¶ 94; Dkt. 32, Counterclaims ¶ 29. MDalgorithms had a legal duty to avoid conflicting with those uses. A new entrant to a market has numerous choices when selecting a trademark for its new product and "has the duty to avoid the use of a mark similar to an established one." *Citibank N.A. v. City Bank of San Francisco*, 206 U.S.P.Q. 997, 1009 (N.D. Cal. 1980) (citing *Fleischmann Distilling Corp.*

1    *v. Maier Brewing Co*., 314 F.2d 149, 158 (9th Cir. 1963); *see also Century 21 Real Estate Corp. v.*

2    *Sandlin*, 846 F.2d 1175, 1182 (9th Cir. 1988) (quoting *Citibank*).  Here, MDalgorithms easily could

3    and should have learned of La Canada's trademark rights based on its use of a family of MD

4    Formative marks, including MD® registered for use with hair products and acne treatments, and kept

5    a safe distance from them.  It has only itself to blame if its MDhair and MDacne marks do not identify

6    MDalgorithms to consumers as the single source of its hair and acne products.

7         Moreover, a new entrant that adopts a descriptive mark cannot exclude a competitor from

8    using the descriptive terms in a way that fairly describes the competitor's product.  La Canada was

9    using "Acne" to describe its acne products and "MD® Hair" to describe its haircare products prior to

10   MDalgorithms' entry into the market of non-medicated acne and haircare treatments in 2021.  MDhair

11   is a descriptive mark without secondary meaning at the time MDalgorithms began using it as

12   evidenced by its registration on the Supplemental Register.  15 U.S.C. §§ 1091, 1052(e).

13   MDalgorithms itself has pled that La Canada's use of "Acne" was merely descriptive.  Dkt. 36,

14   Amended Counterclaims ¶¶ 92-93(identifying La Canada's use of "Acne" as part of a "description

15   for the product"); Dkt. 32, Counterclaims ¶¶ 27-28 (same).  MDalgorithms cannot prevent La

16   Canada's use of these common terms to fairly describe the nature of La Canada's products.

17         **1.    The Domain Name MDhair.com**

18         MDalgorithms admits that La Canada was already using the mark MD® Nutri Hair as a

19   product name for its hair supplements at the time that MDalgorithms adopted and began using

20   "MDhair."  Dkt. 36, Amended Counterclaims ¶ 85; Dkt. 32, Counterclaims ¶ 20.  It has effectively

21   conceded that La Canada owned the <mdhair.com> domain name when MDalgorithms was unable

22   to purchase it prior to its first use of MDhair and therefore had to settle for mdhair.co.  *See id*.  The

23   official records at the USPTO show that La Canada was using MD® Hair to describe and identify its

24   line of haircare products several years before MDalgorithms used MDhair for any purpose.  *See*

25   Dallmann Decl., Ex. H.  MDalgorithms further concedes in its pleading that La Canada is "afforded

26   protection … for/to a third-party use that is identical, or nearly identical."  Dkt. 36, Amended

27   Counterclaims ¶ 94; Dkt. 32, Counterclaims ¶ 29.

28

1    MDalgorithms nevertheless claims that La Canada unfairly competed when it "purposefully

2    began using mdhair.com to cause that URL to automatically redirect to La Canada's website, md-

3    factor.com." Dkt. 32, ¶ 20. MD® Nutri Hair is, however, nearly identical to "MDhair." The only

4    difference is the term "Nutri" appearing before the descriptive term "Hair." *See Brookfield*, 174 F.3d

5    at 1055 (finding "MovieBuff" and "moviebuffonline.com" essentially identical). This virtual identity

6    is even more true for MD® Hair, which La Canada was using to denote its line of haircare products

7    years before MDalgorithms.[5] Dallmann Decl., Ex. H. There is nothing in MDalgorithms' pleading

8    from which a reasonable inference can be drawn that "mdhair" is anything other than a shortened

9    form of the product name and a truncation of the product line description that La Canada was using

10   for haircare products years before MDalgorithms. MDalgorithms' Counterclaim thus fails under its

11   own test as confirmed by established law.

12    In addition, taking MDalgorithms' allegations as true, MDalgorithms has only identified two

13   users of marks or product names consisting of a combination of "MD" and "Hair," itself and La

14   Canada, which used MD® Nutri Hair and owned the <mdhair.com> domain name. MDalgorithms

15   now belatedly alleges that "MDhair" has acquired secondary meaning but, not surprisingly, nowhere

16   does it plead when that occurred because it has no good faith basis to do so. The only available

17   inference is that secondary meaning attached as of the date of the Amended Counterclaims, which

18   was clearly after La Canada's alleged acts regarding its <mdhair.com> domain name.

19    Accepting MDalgorithms' allegations as true and considering the judicially noticeable public

20   records of the USPTO, as the senior user, La Canada is entitled to use (and keep others from using)

21   the nearly identical term "MDhair" for non-medicated haircare products. Specifically, La Canada is

22   entitled to use a domain name <mdhair.com> which combines its trademark MD® (registered for use

23   with hair products) with the word "hair," which merely signals that the content is related to hair, and

24   _____

25   [5] This raises serious questions about whether MDalgorithms undertook a good faith
     investigation before expressly pleading that "La Canada did not and does not offer a product named
26   or labeled "MDhair" or "MD Hair" (*see* Dkt. 36, Amended Counterclaims ¶ 2) with the necessary
     implication that La Canada had never used the term "MD Hair" to identify its products. It had only
27   to look at the file histories that it cites in its Amended Counterclaims to see that such a statement is
     misleading, if not outright false.

28   _____

1  top-level domain .com, particularly because as between the only two users of the combination of

2  "MD" and "Hair" MDalgorithms has pled, La Canada is the senior user.  MDalgorithms had no

3  exclusive rights to "MDhair" at the time of La Canada's alleged acts.  Thus, based on this point alone,

4  MDalgorithms has failed to state a plausible claim for unfair competition under the common law or

5  § 17200.  *See Brookfield Commc'ns.,* 174 F.3d at 1047.

6       MDalgorithms alleges that La Canada urged customers who found themselves at its website

7  by attempting to locate the website of MDalgorithms to try La Canada's MD® Nutri Hair products

8  or check out its MD® hair products line and "feel free to browse our website and let us know if you

9  need assistance."  Dkt. 36, Amended Counterclaims ¶ 89; Dkt. 32, Counterclaims ¶ 24.  Again,

10  MDalgorithms' own pleadings establish that it caused any such confusion.  It alleges that it chose the

11  domain name mdhair.**co** for a website to sell its haircare products, knowing when it did so that another

12  party already owned the similar domain name mdhair.**com**.  Dkt. 36, Amended Counterclaims, ¶ 85;

13  Dkt. 32, ¶ 20.  Indeed, when it learned that someone else owned the domain name, it could have

14  investigated and discovered La Canada's registrations and use of MD Formative marks, including

15  MD® and MD® Nutri Hair for hair products, and chosen a domain name that would not be so easily

16  confused with mdhair.com.  It chose instead to proceed headlong into an easily foreseeable risk of

17  conflict.  No one is to blame for the resulting conflict except MDalgorithms.  And there is nothing

18  unfair about La Canada bringing its own hair products to a consumer's attention. using its own

19  trademarks and the descriptive term hair, *after* alerting them that they were not at MDalgorithms'

20  website but had reached La Canada's site by mistake.

21       This merely reinforces the point: MDalgorithms adopted a nearly identical mark to that of a

22  senior user and did so knowing that there was a real and palpable chance of conflict with the senior

23  user.  That cannot be the basis for an unfair competition claim against the senior user.

24       MDalgorithms has not and cannot state a plausible claim for relief based on La Canada's use

25  of its <mdhair.com> domain name and its Counterclaims must therefore be dismissed.

26       **2.      MD Acne Complexion Factor Acne Cleanser-Acne Wash to Reduce Acne**

27       MDalgorithms alleges that upon becoming aware of its use of MDacne for its acne products,

28

- 14 -

1  La Canada began to use "the identical" MDacne term, intending to confuse or mislead customers with

2  respect to the source of MDalgorithms' products, and that its customers were likely to be misled and

3  were misled, diverting MDalgorithms' sales to La Canada.  Dkt. 36, Amended Counterclaims ¶ 176-

4  180[6]; Dkt. 32, Counterclaims ¶ 35-39.  Specifically, MDalgorithms' Counterclaims allege that before

5  La Canada learned of MDalgorithms, La Canada used the designation MD Complexion Factor

6  Exfoliating Cleanser for one of its products and described it as "MD® Complexion Factor Acne

7  Cleanser" on its website.  Dkt. 36, Amended Counterclaims ¶ 93; Dkt. 32, ¶ 28.  "However, after

8  filing suit against MDalgorithms, and long after MDalgorithms had already been using the MDacne

9  mark, La Canada purposefully changed its website description of the same product to "MD® Acne

10  Complexion Factor Acne Cleanser."  *Id.*  In other words, La Canada's purported unfair competitive

11  act is changing its website description to place La Canada's own registered MD® mark *adjacent* to

12  the descriptive word "acne" —not as the name of the exfoliating cleanser but to describe its intended

13  purpose—in a descriptive phrase in which "Acne" already appears ***three*** times.  No matter how it is

14  analyzed, there is no theory by which MDalgorithms can succeed on this claim.

15  MDalgorithms has pled that La Canada's alleged acts of unfair competition arise from its use

16  of "MD Acne" in purported conflict with MDalgorithms' new use of MDacne.  But the challenged

17  product description on which MDalgorithms' claims are based is not "MD Acne" or "MDacne" but

18  rather it is MD® Acne Complexion Factor Acne Cleanser – Acne Wash to Reduce Acne.  That

19  description, considered as a whole as it must be, *see Brookfield*, 174 F.3d at 1054, is not identical to

20  MDacne as is readily seen from a simple visual comparison.  La Canada's use of "MD® Acne"

21  includes the "®" providing notice that MD is a registered trademark, and a space between the two

22  terms as part of the description.  MDalgorithms' mark MDacne has no space between MD and acne.

23  And there is no suggestion that MDalgorithms is using a product description that is in any way similar

24  to MD® Acne Complexion Factor Acne Cleanser – Acne Wash to Reduce Acne.  Thus, taking

25  MDalgorithms' allegations as true, in this "incredibly crowded" field, MDalgorithms' cannot extend

26

27  [6] *But see id*., Answer ¶ 31 ("MDalgorithms denies the existence of any actual confusion.").

28

1    its purported rights to any and all combinations of "MD" and "Acne."  *See* Dkt. 36, Amended

2    Counterclaims ¶ 94; Dkt. 32, Counterclaims ¶ 29.

3         MD® Acne Complexion Factor Acne Cleanser – Acne Wash to Reduce Acne, the product

4    description on which MDalgorithms' unfair competition counterclaims are based, is, however, nearly

5    identical to the description MD® Complexion Factor Acne Cleanser – Acne Wash to Reduce Acne.

6    The only difference between the two is the addition of a fourth appearance of the word "Acne."  And

7    MDalgorithms does not assert that La Canada's prior use of MD® Complexion Factor Acne Cleanser

8    – Acne Wash to Reduce Acne as a product description created any conflict.  MDalgorithms admits in

9    its pleading that La Canada has a right to use "nearly identical" variations of product designations

10   and descriptors.  *Id*.  Again, a mere visual examination demonstrates the nearly identical nature

11   between the use that MDalgorithms does not challenge and the one that it does.

12        Finally, MDalgorithms' own pleadings allege that MD® Acne Complexion Factor Acne

13   Cleanser – Acne Wash to Reduce Acne merely describes the product.  MDalgorithms admits that

14   "[t]he term MD acne" or "acne" does not appear on the front label."  Dkt. 36, Amended Counterclaims

15   ¶ 92; Dkt. 32, Counterclaims ¶ 27 (including a photograph of the product).  It then pleads that the

16   challenged phrase is a "website description for the product labeled MD Complexion Factor

17   Exfoliating Cleanser."  Dkt. 36, Amended Counterclaims ¶ 93; Dkt. 32, Counterclaims ¶ 28.  Nowhere

18   does MDalgorithms plead that either the pre 2021 description (MD® Complexion Factor Acne

19   Cleanser – Acne Wash to Reduce Acne) or the post 2021 description (MD® Acne Complexion Factor

20   Acne Cleanser– Acne Wash to Reduce Acne) inaccurately describes the quality or characteristics of

21   the MD Complexion Factor Exfoliating product.

22        The alleged conduct cannot state a claim for unfair competition.  MD® is registered to La

23   Canada for use with "non-medicated acne treatment preparations" and "acne treatment preparations."

24   Dallmann Decl., Ex. A.  La Canada is using its own trademark consistent with its registration.  Even

25   if the registrations are ignored as MDalgorithms would like, MDalgorithms admits to La Canada's

26   ownership and prior use of multiple MD Formative marks.  Dkt. 36, Amended Counterclaims ¶¶ 9-

27   12, 14-18, 20-24, 26-27, 41-42, 53-54, 61-62.  Again, La Canada is using the "MD" component

28

- 16 -

consistent with its prior use.  It is also using the "MD" + "Acne" combination in the same descriptive manner as it did without conflict prior to 2021.  By MDalgorithms' own admission, its registered MDacne mark is only entitled to protection as to identical or nearly identical uses because the "field of use of such MD-formative marks for personal care products is so incredibly crowded."  Dkt. 36, Amended Counterclaims ¶ 94; Dkt. 32, Counterclaims ¶ 29.  In short, La Canada is doing nothing other than what it was doing prior to the time MDalgorithms entered the market for non-medicated acne treatments and MDalgorithms cannot extend its purported rights to that preexisting activity.

MDalgorithms' therefore has not and cannot state a viable claim for relief as to La Canada's use of "MD® Acne Complexion Factor Acne Cleanser– Acne Wash to Reduce Acne."

### C.    La Canada's Use of the Words Hair and Acne to Describe Its Own Products is Non-infringing Nominative Use.

The Ninth Circuit and the Supreme Court have both recognized that using a descriptive word or phrase that another uses as a trademark "where the only word reasonably available to describe a particular thing is pressed into service" such nominative use to describe one's own product "lies outside the strictures of trademark law." *New Kids on the Block v. News Am. Publ'g, Inc*., 971 F.2d 302, 308 (9th Cir. 1992). "Because it does not implicate the source-identification function that is the purpose of trademark, it does not constitute unfair competition." *Id.*, citing *Prestonettes, Inc. v. Coty*, 264 U.S. 359, 368 (1924) (Holmes, J.) ("When the mark is used in a way that does not deceive the public we see no sanctity in the word as to prevent its being used to tell the truth.").  Here, La Canada's use of the word "Acne" following its own registered trademark in the product description "MD® Acne Complexion Factor Acne Cleanser – Acne Wash to Reduce Acne" is used to explain that the product named "MD® Complexion Factor Exfoliating Cleanser" is for preventing and treating acne. That is particularly evident when the portion of the description that MDalgorithms' tries to ignore in its pleading—the phrase "Acne Wash to Reduce Acne"—is considered.  MDalgorithms itself calls La Canada's use a "website description for a product" with a label that does not use the word "Acne." La Canada used the combination of "MD" and "Acne" is the same manner prior to 2021, and no

1    conflict resulted.  No unfair competition claim can be sustained based on the continued use of a

2    combination of terms to fairly describe the products' characteristics.  *New Kids on the Block*, 971

3    F.2d at 308.

4           Similarly, La Canada cannot be precluded from using the word "hair" to describe its line of

5    haircare products, particularly when it did so before MDalgorithms began using MDhair for its own

6    hair products.  According to MDalgorithms' pleadings, MDhair describes a quality or characteristic

7    of MDalgorithms' goods and services, and did not have secondary meaning when MDalgorithms first

8    began use.  Taking those pleadings as true, MDalgorithms cannot monopolize the word "hair" used

9    with products specifically intended for haircare.  *See, e.g., Entrepreneur Media v. Smith*, 297 F.3d

10   1135, 1143-44 (9th Cir. 2002).  MDalgorithms has not stated and cannot state claims for unfair

11   competition under the common law or Section 17200 and its counterclaims should be dismissed in

12   their entirety and with prejudice.

13          **D.    La Canada's Registered Marks Were Properly Filed in Dr. Lin's Name Because**

14                  **She Owned The MD Formative Marks And Licensed Them to La Canada Until**

15                  **Assigning Them to La Canada in 2019.**

16          MDalgorithms' attacks on La Canada's trademark registrations are based on sheer innuendo

17   that is not consistent with the facts alleged and insufficient as a matter of law.  These are incurable

18   defects and MDalgorithms' newly added Counterclaims must be dismissed with prejudice.

19          **1.    MDalgorithms' Assertions of Defects in Ownership Are Legally**

20                  **Implausible.**

21          MDalgorithms first attack—that La Canada's registrations were improperly filed in Dr. Lin's

22   name—hinge on one basic proposition: that the registered marks were used by La Canada prior to the

23   time it entered into an exclusive license in 2019 and therefore could not be owned by Dr. Lin.  It is

24   true that products and services bearing the registered marks were offered by and through La Canada

25   prior to the exclusive license.  But MDalgorithms never asserts that La Canada was acting

26   independently from Dr. Lin or without permission.

27          All it can allege is that there was no written agreement between Dr. Lin and La Canada, but

28

- 18 -

1    that is not legally relevant.  All that is required to establish a valid license is a sufficiently "close

2    working relationship between the licensor and the licensee" such that the public will not be deceived

3    as to the source of the goods and services.  *Hotko*, 738 F.3d at 1098.  As MDalgorithms admits in its

4    pleading, Dr. Lin is, was and has been at all relevant times La Canada's CEO.  Dkt. 36, Amended

5    Counterclaims ¶ 8.  Her name appears in two of the marks.  *Id*., ¶¶ 106, 113.  It also appears on

6    specimens submitted in support of the applications, as does her photo.  Dallmann Decl., Ex. G-H.  Dr.

7    Lin is clearly sponsoring and endorsing the line of MD® branded products shown in the specimens.

8         MDalgorithms does not aver, because it has no good faith basis to do so, that La Canada did

9    not have permission to use the marks or that there was any confusion or misperception about the

10   source or quality of the goods and services offered under the marks.  MDalgorithms' own pleadings

11   therefore demonstrate the close working relationship that establishes a nonexclusive license between

12   Dr. Lin and La Canada.  *See Hotko*, 738 F.3d at 1098.

13        The January 2019 exclusive license agreement does not support a contrary conclusion.  That

14   license gave La Canada exclusive rights, as opposed to nonexclusive rights and was reduced to

15   writing.  Dallmann Decl, ¶ 8.  It cannot be reasonably inferred given the clearly intertwined nature

16   of Dr. Lin's and La Canada's relationship regarding use and promotion of the MD Formative marks

17   that the granting of exclusive rights in January 2019 means there were no rights prior to January 2019.

18        The trademark assignment agreement pled by MDalgorithms further reinforces this point.  *See*

19   Dkt. 36, Amended Counterclaims ¶¶ 46, 139; Dallmann Decl, Ex. F.  That assignment demonstrates

20   that La Canada did ***not*** own the marks prior to March 2019.  Otherwise, there would have been no

21   need for the assignment.  All the activities that MDalgorithms claims demonstrate the defects in

22   ownership occurred before 2019.  As the record demonstrates, that activity was entirely proper.  The

23   marks were used by La Canada through the close working relationship with Dr. Lin.  By law, Dr. Lin

24   was therefore entitled to rely on La Canada's use in support of registration.  15 U.S.C. §§ 1055, 1127.

25   In fact, that is exactly what she was supposed to do until the marks were assigned.

26        MDalgorithms' Amended Counterclaims based on the alleged defects in ownership present

27   nothing but innuendo that has no good faith factual or legal support.  They must therefore be dismissed

28

1    with prejudice.

2              **2.    MDalgorithms Cannot Carry the Heavy Burden of Its Allegations of**

3                      **Fraud on the USPTO**

4              MDalgorithms' attempts to manufacture claims of fraud on the USPTO fail in multiple ways.

5    First, as noted above, there was no misrepresentation.  Dr. Lin properly filed applications in her name

6    and relied on the use of the then licensee, La Canada, to secure registration.  That was entirely proper.

7    *See* Part IV.D.1., *supra*.  The alleged representation must also be intentional.  *Hotko*, 738 F.3d at

8    1097.  MDalgorithms never pleads that Dr. Lin or La Canada intentionally made any false statements,

9    only that the "inclusion of false statements … is material and … constituted fraud."  Dkt. 36,

10   Amended Counterclaims ¶¶ 129, 145, 157, 169.  The actions it avers in support are those of the

11   lawyers who prepared and signed the filings on behalf of Dr. Lin without any suggestion or averment

12   of what Dr. Lin herself understood about the governing rules.  *Id*., ¶¶ 123-127, 139-143, 152-156,

13   164-168.  That is legally insufficient.  *Hotko*, 738 F.3d at 1097-1098.

14             The fatally flawed fraud on the USPTO Counterclaims must also be dismissed with prejudice.

15             **E.    No Amendment Should Be Allowed.**

16             When a claim is dismissed for failure to state a claim, no amendment need be allowed if the

17   amendment would be futile because the flaws in the claims cannot be cured.  *See Chaset v.*

18   *Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1088 (9th Cir. 2002) (finding leave to amend futile where

19   "plaintiffs cannot cure the basic flaw in their pleading"); *see also, e.g.*, *Brooks v. Vallejo City Unified*

20   *Sch. Dist.,* 2013 U.S. Dist. LEXIS 33455, 2013 WL 943460, at *4 (E.D. Cal. Mar.11, 2013)

21   (dismissing without leave to amend § 1983 claim challenging the defendants' responses to CPRA

22   requests). This is such a case.

23             MDalgorithms cannot establish that it has priority of rights to use "MD" for acne and haircare

24   products.  That right belongs to La Canada as shown by its incontestable registration of its MD®

25   mark.  MDalgorithms cannot establish that it has priority to use the combination of "MD" and "Hair"

26   for haircare products.  That priority belongs to La Canada based at least on its admittedly prior use of

27   MD® Nutri Hair for haircare products and MDalgorithms lack of a good faith basis to plead exclusive

28

- 20 -

1  rights in "MDhair."  MDalgorithms cannot establish that it has priority of rights to use "MD" in

2  combination with "Acne."  La Canada's admittedly prior use of the product description MD®

3  Complexion Factor Acne Cleanser – Acne Wash to Reduce Acne alone establishes that priority

4  belongs to La Canada.  MDalgorithms' purported rights in its own MDhair and MDacne marks are

5  by its own admission narrowly circumscribed.

6          As a result, MDalgorithms, the junior user, can show no more than the consumer confusion it

7  alleges has occurred is the direct and proximate result of its entry into the market for non-medicated

8  acne and haircare products in 2021, well after La Canada had established itself in that market.  That

9  supports a finding of liability by MDalgorithms, not La Canada.

10         MDalgorithms cannot establish a good faith basis for its assertions of defects in ownership

11  and allegations of fraud on the USPTO.  The facts that MDalgorithms pleads and relies on show only

12  that until March 2019, Dr. Lin owned the registered marks, which were used under license by La

13  Canada.  Application and registration in Dr. Lin's name were therefore entirely proper.  All that

14  MDalgorithms can muster is sheer speculation that it hopes to use to force unnecessary and needlessly

15  disruptive discovery.  That alone is sufficient to warrant dismissal with prejudice.  *See Iqbal*, 556

16  U.S. at 684-686.

17  **IV.     CONCLUSION**

18         For the foregoing reasons, the counterclaims should be dismissed.  La Canada is the senior

19  user with the right to use its MD Formative marks and the product name and descriptions on which

20  MDalgorithms' counterclaims are based.  The ownership and procedures for registering La Canada's

21  marks were proper and in accordance with governing statutes and regulations.  Any amendments

22  would be futile, so a dismissal with prejudice is appropriate.

23  DATED:  October 25, 2023                    Respectfully submitted,

24

25                                              By: */s/ Cecil E. Key*

26                                              Andrew S. Dallmann
                                                MCCARTNEY DALLMANN LLP

27                                              Cecil E. Key

28
                                              - 21 -

KEY IP LAW GROUP, PLLC

Attorneys for Plaintiff
LA CANADA VENTURES, INC.

NOTICE OF MOTION AND MOTION
TO DISMISS DEFENDANT'S AMENDED COUNTERCLAIMS
Case No.: 22-cv-07197-RS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 25, 2023, I electronically transmitted the foregoing document using the CM/ECF system for filing, which will transmit the document electronically to all registered participants as identified on the Notice of Electronic Filing, and paper copies have been served on those indicated as non-registered participants.

*/s/ Cecil E. Key*
Cecil E. Key

NOTICE OF MOTION AND MOTION
TO DISMISS DEFENDANT'S AMENDED COUNTERCLAIMS
Case No.: 22-cv-07197-RS