1

2

3

4

5

6

7               UNITED STATES DISTRICT COURT

8               NORTHERN DISTRICT OF CALIFORNIA

9

10   LA CANADA VENTURES, INC.,                    Case No. 22-cv-07197-RS

         Plaintiff,

11

     v.

12                                                **ORDER DENYING PLAINTIFF'S**
                                                  **MOTION TO DISMISS**
     MDALGORITHMS, INC.,                          **COUNTERCLAIMS AND DENYING**
13                                                **PLAINTIFF'S MOTION FOR PARTIAL**
         Defendant.                               **SUMMARY JUDGMENT**
14

15
                              **I. INTRODUCTION**
16
         This is a trademark infringement suit. Plaintiff and Counter-defendant is La Canada
17
     Ventures, Inc., a health and beauty retailer offering cosmetic products ("Plaintiff"). Defendant and
18
     Counter-claimant MDalgorithms is a company that offers computer software and app technology
19
     for education and advice about the treatment of acne, a skin disorder ("Defendant"). In its Second
20
     Amended Complaint ("SAC") Plaintiff avers that Defendant infringes on Plaintiff's MD Mark and
21
     multiple MD-formative Marks by using the MD marks in the sale of its health and beauty
22
     products, in direct competition with Plaintiff. Defendant filed counterclaims in a First Amended
23
     Counterclaim ("FACC"), seeking cancellation of Plaintiff's registrations on the grounds that they
24
     are void *ab initio* or otherwise derived the right of incontestability by fraud on the United States
25
     Patent and Trademark Office ("USPTO"). Defendant also filed unfair competition counterclaims
26
     against Plaintiff, arguing that Plaintiff used Defendant's marks "MDhair" and "MDacne"
27
     unlawfully. Plaintiff now moves for dismissal of Defendant's counterclaims, claiming that it, not
28

United States District Court
Northern District of California

1    the Defendant, was the first user of the "MD" and related marks and its registrations should not be

2    cancelled. Plaintiff also moves for summary judgment on its trademark infringement claims as to

3    Defendant's "MDhair" mark.

**II. BACKGROUND**

5    Plaintiff began offering health and beauty products in 2006 under its MD brand, which was

6    founded by Dr. Susan Lin. Plaintiff's MD brand consists of a family of marks utilizing the term

7    "MD" and multiple other marks, with the root MD in combination with other terms (the "MD-

8    formative Marks"). The "MD "mark is the subject of a federal registration with the United States

9    Patent & Trademark Office ("USPTO") in Class 3 (cosmetic and cleaning preparations) and Class

10   5 (pharmaceuticals) based on a first use of at least as early as January 1, 2012. Lin also registered

11   multiple MD-formative Marks[1] with the USPTO, claiming these marks have been in use since as

12   early as August 1, 2007. Finally, Lin claims that it has adopted and used other unregistered MD-

13   formative Marks since as early as 2006 (MD Skin), 2009 (MD Nutri Hair), and 2018 (MD

14   Wellness). On January 15, 2019, Lin entered into an exclusive, written trademark license

15   agreement with Plaintiff ("January 2019 License Agreement"), before assigning her rights and

16   interests in her seven registered marks to Plaintiff in March of 2019.

17   On April 26, 2016, Defendant registered "MDacne" for "computer software and

18   downloadable computer software for education and advice in the field of care and treatment of

19   skin disorders, namely, acne" in Class 9 (electrical and scientific apparatus) and "providing a

20   website featuring information and advice in the field of the diagnosis and treatment of acne" in

21   Class 41(education and entertainment). This registration claimed first use of May 16, 2010. On

22   July 17, 2018, Defendant registered "MDacne" for "medicated skin treatment and cleansing

23   creams" in Class 5, claiming first use of December 1, 2017, and, subsequently, for "non-medicated

24   skincare preparations" in Class 3. Defendant also registered "MDhair" for "providing temporary

25

26   [1] Including: MD 101, U.S. Reg. 3,459,245; MD LASH FACTOR, U.S. Reg. 3,432,209; MD
     INTIMATE RESTORE, U.S. Reg. 4,603,019; MD BY SUSAN F. LIN M.D., U.S. Reg.
27   5,860,508; MD INTIMATE FRESH, U.S. Reg. 6,027,099; MD WELLNESS BY SUSAN LIN
     M.D., U.S. Reg. 6,251,811; and MD FACTOR, U.S. Reg. 6,309,386.

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1   use of on-line non-downloadable computer software for education and advice in the field of the

2   case and treatment of skin and hair" in Class 42, claiming first use of September 13, 2010. The

3   USPTO, finding "MDhair" to be descriptive, only permitted registration of this mark on the

4   Supplemental Register.

5   Plaintiff claims that by the time Defendant began offering anything other than software,

6   Plaintiff's registration of MD for, *inter alia*, "non-medicated acne treatment preparations" in Class

7   3 and "acne treatment preparations" in Class 5 had been in effect for approximately four years.

8   Plaintiff claims first use of the MD mark as of January 1, 2012. Plaintiff also claims that

9   Defendant has recently expanded beyond software-based systems for which it claims consumer

10  recognition and uses the mark "MDacne" for health and beauty products 11 years after Plaintiff

11  first used its MD-formative mark for similar goods.

12  Defendant denies Plaintiff's allegations and, instead, avers in its counterclaims that

13  Plaintiff is unlawfully competing with Defendant by purposefully using Defendant's marks

14  deceptively to lure in Defendant's customers. By way of example, Defendant points to the fact that

15  Plaintiff took affirmative steps to use the domain <www.mdhair.com>[2] to solicit Defendant's

16  customers who were searching for Defendant's products despite the fact that Plaintiff does not

17  offer a product called MDHair or MD Hair. In addition, in July 2022, Defendant contends Plaintiff

18  changed the name of its "MD Complexion Factor Acne Cleanser," product to "MD Acne

19  Complexion Factor Acne Cleanser" after filing the instant suit. In Defendant's view, that act

20  represents a blatant attempt to deceive Defendant's potential customers who sought Defendant's

21  MDacne product. Defendant also argues that Plaintiff may not "monopolize" the term MD for

22  health and cosmetic products as this would be inconsistent with the many instances in which third

23  parties utilize the root "MD" in combination with some other terms. Moreover, Defendant insists

24  that consumer confusion surrounding the "MDacne" and "MDhair" marks is based on Plaintiff's

25

26

[2] For reference, Defendant has been offering its products and services on its website,
27  <www.mdhair.co>, since 2021.

28  ORDER ON MOTION TO DISMISS, MOTION FOR SUMMARY JUDGMENT
CASE NO. 22-cv-07197-RS

3

1    belated use of those terms, which occurred following Defendant's use.

2         Defendant further brings counterclaims for cancellation of seven of Plaintiff's registrations

3    on two grounds: the registrations either are void *ab initio* or the product of fraud on the USPTO.

4    Specifically, Defendant insists that the registrations for the marks "MD FACTOR," "MD BY

5    SUSAN F. LIN M.D.," and "MD WELLNESS BY SUSAN F. LIN M.D." were all incorrectly

6    filed by Dr. Susan Lin, Plaintiff's owner and CEO, in her individual capacity in violation of

7    TMEP 1201.02(c) and 37 C.F.R. Section 2.71(d) when, in fact, Plaintiff is the true owner of those

8    marks. This is an incurable defect, per Defendant, rendering the registrations of those marks void

9    *ab initio* and warranting their cancellation under 15 U.S.C. § 1064. Defendant also maintains that

10   Lin committed fraud on the USPTO and fraudulently derived the right of incontestability with

11   respect to the marks "MD," "MD INTIMATE RESTORE," "MD 101," and "MD LASH

12   FACTOR." Section 15 of the Lanham Act governs incontestability. Under the statute, an owner

13   must swear, in a declaration, that it has used the mark continuously in commerce for at minimum

14   five years after the date of registration by signing a Section 15 Declaration of Incontestability. 15

15   U.S.C. § 1065. The right of incontestability is "conclusive evidence" of the validity of the mark.

16   15 U.S.C. § 1115. Defendant argues that Plaintiff, not Lin, used these marks in commerce over the

17   past five years, so the Section 15 Declaration of Incontestability constituted a fraud on the USPTO

18   when it represented otherwise.

19                              **III. LEGAL STANDARD**

20        **A.  Motion to Dismiss**

21        A complaint must be "a short and plain statement of the claim showing that the pleader is

22   entitled to relief." Fed. R. Civ. P. 8(a)(2). While "detailed factual allegations" are not required, a

23   complaint must have sufficient factual allegations to state a claim that is "plausible on its face."

24   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555,

25   570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the

26   court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

27   (citing *Twombly*, 550 U.S. at 556). This standard asks for "more than a sheer possibility that a

28

United States District Court
Northern District of California

1    defendant has acted unlawfully." *Id.* The determination is a context-specific task requiring the

2    court "to draw on its judicial experience and common sense." *Id.* at 679.

3         A Rule 12(b)(6) motion to dismiss tests the sufficiency of the claims alleged in the

4    complaint. Dismissal under Rule 12(b)(6) may be based on either the "lack of a cognizable legal

5    theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *See*

6    *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (internal quotation marks and

7    citation omitted). When evaluating such a motion, the court must accept all material allegations in

8    the complaint as true and construe them in the light most favorable to the non-moving party. *In re*

9    *Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1140 (9th Cir. 2017). It must also "draw all

10   reasonable inferences in favor of the nonmoving party." *Usher v. City of Los Angeles*, 828 F.2d

11   556, 561 (9th Cir. 1987).

12        **B.  Motion for Summary Judgment**

13        Summary judgment is appropriate if the pleadings, discovery, and affidavits show "that

14   there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

15   matter of law." Fed. R. Civ. Pro. 56(a). A genuine issue of material fact is one that could

16   reasonably be resolved in favor of the nonmoving party, and which could "affect the outcome of

17   the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the

18   burden of proof to "make a showing sufficient to establish…the existence of an element essential

19   to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). If the movant succeeds in

20   demonstrating the absence of a genuine issue of material fact, the burden then shifts to the

21   nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Id*. at

22   322 n.3; *see also* Fed. R. Civ. Proc. 56(c)(1)(B). Evidence must be viewed in the light most

23   favorable to the nonmoving party and all justifiable inferences must be drawn in its favor. *See*

24   *Anderson*, 477 U.S. at 255. It is not the task of the court to scour the record in search of a genuine

25   issue of triable fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citation omitted). The

26   non-moving party has the burden of identifying, with reasonable particularity, the evidence that

27   precludes summary judgment. *Id.* If the nonmoving party fails to make this showing, "the moving

28
ORDER ON MOTION TO DISMISS, MOTION FOR SUMMARY JUDGMENT
CASE NO.  22-cv-07197-RS

United States District Court
Northern District of California

1    party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 322.

2                                      **IV. DISCUSSION**

3        **A.  Motion to Dismiss**

4        Defendant has three theories on which its counterclaims are based: first, that some of

5    Plaintiff's marks are void *ab initio*; second, that some of Plaintiff's marks were deemed

6    incontestable by fraud on the USPTO; and finally, that Plaintiff is unfairly competing with

7    Defendant by using its marks to deceive Defendant's customers. Plaintiff moves to dismiss the

8    counterclaims on the basis that the marks' registrations are valid, the Defendant has failed to aver

9    adequately that Plaintiff made material misrepresentations or committed fraud on the USPTO to

10   obtain any trademark rights, and that Plaintiff, as the senior user, has the right to use the marks

11   "MDhair" and "MDacne" to describe its own products.

12           1.   Counterclaims 1, 2, 3: "MD FACTOR," "MD BY SUSAN F. LIN M.D.," and "MD

13                WELLNESS BY SUSAN F. LIN M.D." are void *ab initio*

14       The first three counterclaims brought by Defendant challenge the true ownership of three

15   of Plaintiff's trademarks. Specifically, Defendant argues that Lin was not the true owner of the

16   marks "MD FACTOR," which was registered on March 30, 2021; "MD BY SUSAN F. LIN

17   M.D.," which was registered on September 17, 2019; and "MD WELLNESS BY SUSAN F. LIN

18   M.D.," which was registered on January 19, 2021 because she filed these trademark applications

19   as an individual, when in fact Plaintiff, a corporation, was the true owner and user of these marks.

20   Pursuant to 15 U.S.C. § 1064, a registration may be cancelled within five years from the

21   registration date if it filed in the name of the wrong party and cannot be cured by amendment.

22   "MD Factor" was registered on March 30, 2021, "MD BY SUSAN F. LIN M.D." was registered

23   on September 17, 2019, and "MD WELLNESS BY SUSAN F. LIN M.D." was registered on

24   January 19, 2021. Defendant argues that these marks were incorrectly registered by Lin as an

25   individual but used and owned by La Canada. This, per Defendant, is an incurable defect under

26   TMEP 1201.02(c) and 37 C.F.R. § 2.71(d), warranting cancellation of the registrations associated

27   with these marks under 15 U.S.C. § 1119.

28

United States District Court
Northern District of California

1       The Lanham Act grants federal courts the power to cancel trademark registrations. 15

2  U.S.C. § 1119. TMEP § 1201.02(c) provides examples of correctable and non-correctable errors in

3  trademark registration applications. One such non-correctable error is the identification of the

4  wrong party in the application, including if:

> *President of Corporation Files as Individual.* If the president of a corporation is identified as the owner of the mark when in fact the corporation owns the mark, and there is no inconsistency in the original application between the owner name and the entity type (such as a reference to a corporation in the entity section of the application), the application is void as filed because the applicant is not the owner of the mark.

9  TMEP § 1201.02(c). A non-correctable error makes the application void *ab initio*. 37

10  C.F.R. § 2.71(d) further states that "[a]n application filed in the name of an entity that did not own

11  the mark as of the filing date of the application is void."

12      The factual basis for Defendant's argument that Plaintiff, and not Lin, was the true owner

13  of these marks at the time the applications were filed is tenuous but does provide more than a

14  "sheer possibility" that Lin acted unlawfully. *Iqbal*, 556 U.S. at 678. Defendant highlights that the

15  specimens of use in Lin's trademark applications referenced Plaintiff uses, and Defendant has

16  therefore provided a sufficient factual basis to suggest that Plaintiff, not Lin, was the true owner of

17  these marks at the time its applications were filed and has plausibly averred that the applications

18  for the marks "MD FACTOR," "MD BY SUSAN F. LIN M.D.," and "MD WELLNESS BY

19  SUSAN F. LIN M.D.," are void *ab initio*.

20      Plaintiff argues that the only reasonable inference from Defendant's pleadings is that Lin

21  filed the applications based on use by her nonexclusive licensee and related company, La Canada.

22  However, Plaintiff's related-company argument need not be addressed at this stage, because the

23  relevant inquiry for a motion to dismiss is whether there is an "absence of sufficient facts alleged

24  under a cognizable legal theory." *See Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th

25  Cir. 2011) (internal quotation marks and citation omitted). Defendant has done so, therefore the

26  motion to dismiss is denied as to Defendant's first three counterclaims.

27      2.  Counterclaims 4, 5, 6, 7: "MD," "MD INTIMATE RESTORE," "MD 101," and "MD

28

United States District Court
Northern District of California

1    LASH FACTOR" were deemed incontestable by fraud

2    The next set of counterclaims averred by Defendant assert that four of Plaintiff's

3    trademarks, "MD," which was registered on January 21, 2014; "MD INTIMATE RESTORE,"

4    which was registered on September 9, 2014; "MD 101," which was registered on July 1, 2008; and

5    "MD LASH FACTOR," which was registered on May 20, 2008, all received incontestable status

6    by fraud on the USPTO, warranting cancellation of its registrations. Per Defendant, Lin falsely

7    filed the trademark applications in her own name as an individual when Plaintiff was, in fact, the

8    true owner of these marks. Following the January 2019 License Agreement, which provided

9    Plaintiff with an exclusive license to use the marks, Lin's counsel submitted Section 15

10   Declarations of Incontestability for each mark, respectively, representing that the statutory

11   requirements of Section 15 were met and each of these marks had been continuously used in

12   commerce by the owner for five consecutive years after the date of registration.[3] This

13   representation was material and false, according to Defendant, because Plaintiff, not Lin, was the

14   true owner of these marks and Lin's counsel knew or should have known that Lin was not using

15   the marks in commerce at the time the Section 15 declarations were signed. Defendant insists that

16   this is a fraud upon the USPTO that warrants cancellation of Plaintiff's rights stemming from the

17   registration of these marks.

18   A party may invoke 15 U.S.C. § 1064(c) to seek cancellation of a registered trademark on

19   the basis of fraud at any time. *Hokto Kinoko Co. v. Concord Farms, Inc.*, 738 F.3d 1085, 1097

20   (9th Cir. 2013). *See also* 15 U.S.C. § 1119 ("The court may…order the cancellation of

21   registrations"). "Any false statements made in an incontestability affidavit may jeopardize not

22   only the incontestability claim, but also the underlying registration." *Robi v. Five Platters, Inc.*,

23   918 F.2d 1439, 1444 (9th Cir. 1990) (internal citations omitted). A party alleging fraud on the

24

25

26

27

---

[3] For reference, the Section 15 Declaration of Incontestability for the relevant marks was filed on the following dates: "MD" was filed on January 21, 2019; "MD INTIMATE RESTORE" was filed on September 9, 2019; "MD 101" and "MD LASH FACTOR" were filed on December 12, 2014.

28

1    USPTO shoulders a "heavy burden of demonstrating that a trademark should be cancelled." *Hokto*

2    *Kinoko Co. v. Concord Farms, Inc.*, 738 F.3d 1085, 1097 (9th Cir. 2013). A party make seek

3    cancellation based on fraud by proving:

4              (1) a false representation regarding a material fact; (2) the registrant's
         knowledge or belief that the representation is false; (3) the registrant's
5         intent to induce reliance upon the misrepresentation; (4) actual,
         reasonable reliance on the misrepresentation; and (5) damages
6         proximately caused by that reliance.

7         *Id.* (quoting *Robi*, 918 F.2d at 1444).

8         Defendant's counterclaims for fraud adequately plead these five elements. As discussed

9    above, Defendant's claims that Plaintiff falsely represented the nature of the true ownership of

10   Plaintiff's marks, a material fact, has been adequately plead at this stage. Defendant claims that

11   Lin, Plaintiff, and their counsel executed the January 2019 License Agreement "just before the

12   Section 15 filing to belatedly highlight La Canada's longstanding use." Dkt. 39 at 18. The second

13   element of Defendant's fraud counterclaims, viewed in the light most favorable to the Defendant,

14   is also sufficiently plead. Defendant insists that Lin, Plaintiff, and their counsel knew or should

15   have known that Plaintiff, and not Lin, was the true owner of the marks because the specimens of

16   use submitted in support of her application show use by Plaintiff. Plaintiff points out that this does

17   not necessarily mean it made a false representation. Indeed, the provision of these specimens to

18   the USPTO, which ultimately granted Lin's applications, suggest that Lin's claim of ownership

19   was based on Plaintiff's use of the marks in the first place. *See, e.g., Bon Vivant Catering, Inc. v.*

20   *Duke University*, No. 1:13CV728, 2016 WL 3149725 at *9 (M.D.N.C. June 3, 2016). However,

21   this is a factual question, inappropriate for disposition at this stage. The third and fourth elements

22   have also been adequately plead by Defendant. Defendant asserts that Lin, Plaintiff, and their

23   counsel intentionally relied on Plaintiff's use of these marks in commerce over the last five years

24   to achieve the right of incontestability, and it actually gained that right as a result of that

25   representation, allowing Plaintiff the right to assert its registration in litigation. Finally, the fifth

26   element also appears in Defendant's counterclaims, as Defendant states it suffered damages as a

27   result of Plaintiff's deception to the USPTO. For these reasons, the fourth, fifth, sixth, and seventh

28

United States District Court
Northern District of California

1    counterclaims in Defendant's FACC survive the motion to dismiss.

2            3.    Counterclaims 8, 9: Unfair Competition

3            Defendant's last two counterclaims rest on the theory that Plaintiff is unfairly competing

4    with Defendant in violation of both common law unfair competition and California Business &

5    Professional Code § 17200 *et seq*. The analysis of both legal theories is "substantially congruent"

6    to those brought under the Lanham Act, that is, "whether the public is likely to be deceived or

7    confused by the similarity of the marks." *Cleary v. News Corp.*, 30 F.3d 1255, 1262-1263 (9th Cir.

8    1994) (internal quotations omitted). Defendant argues that Plaintiff used the marks "MDacne" and

9    "MDhair" to deceive Defendant's customers by diverting web traffic from customers seeking

10   Defendant's products.

11           Plaintiff moves to dismiss these claims, arguing that it is the senior user of the MD and

12   MD-formative marks for hair and acne products. In 2016, Defendant registered "MDacne" in

13   Classes 9 and 41, claiming first use in May 16, 2010 and in 2018, it registered "MDacne" in Class

14   5, claiming first use of December 1, 2017. Plaintiff registered "MD" in Class 3 and 5

15   approximately four years prior to that point, claiming first use of January 1, 2012. Plaintiff asserts

16   that Defendant did not register "MDacne" in Class 3 until March 2022, claiming first use of

17   November 21, 2021. This, according to Plaintiff, means that its "use for goods in Class 3 preceded

18   [Defendant]'s by almost five years." Dkt. 37 at 3. Plaintiff also claims that Defendant only began

19   offering goods and services under the "MDhair" mark in 2021. This mark was registered in Class

20   42 in January 11, 2022 on the Supplemental Register, claiming first use of September 13, 2021.

21           To support its unfair competition claims, Defendant states that Plaintiff only began using

22   the marks "MDacne" and "MDhair" to divert Defendant's customers from its products. Plaintiff

23   rests its motion on priority of use of "MD Acne" and "MD Hair" and argues that it cannot unfairly

24   compete with Defendant if it was the senior user. Defendant's counterclaims, however,

25   sufficiently plead facts to support its claim that Plaintiff began using those identical marks,

26   "MDacne" and "MDhair," to harm Defendant and divert its customers from its websites, as those

27

28                                    ORDER ON MOTION TO DISMISS, MOTION FOR SUMMARY JUDGMENT
                                      CASE NO. 22-cv-07197-RS

United States District Court
Northern District of California

10

1   terms, specifically, were purportedly used only after Defendant entered the market and began

2   selling similar goods. Taking these facts as true, the motion to dismiss is denied.

3        **B.  Motion for Partial Summary Judgment**

4        In addition to moving to dismiss Defendant's FACC, Plaintiff moves for partial summary

5   judgment. Plaintiff asserts that Defendant unlawfully uses the mark "MDhair," which is

6   confusingly similar to Plaintiff's established marks under the *Sleekcraft* factors. *AMF, Inc. v.*

7   *Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979). Thus, Plaintiff reasons, Defendant is

8   infringing on Plaintiff's trademark and it should be granted an injunction to enjoin Defendant from

9   further using the "MDhair" mark.

10        Trademark infringement exists if the plaintiff has a valid trademark and the defendant is

11   using a similar mark in a way that is likely to cause confusion as to the source or affiliation of

12   defendant's products or services. *Brookfield Commc'ns, Inc. v. West Coast Ent. Corp.*, 174 F.3d

13   1036, 1047, 1050 (9th Cir. 1999). "The first to use a mark is deemed the 'senior' user and has the

14   right to enjoin 'junior' users from using confusingly similar marks in the same industry and

15   market or within the senior user's natural zone of expansion." *Id*. at 1047. The Ninth Circuit's

16   likelihood of confusion is outlined by eight factors, which evaluate: "(1) strength of the mark; (2)

17   proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing

18   channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7)

19   defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines" ("the

20   *Sleekcraft* factors"). *M2 Software, Inc. v. Madacy Ent.*, 421 F.3d 1073, 1080 (9th Cir. 2005)

21   (citing *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979)). In the "context of the

22   Web," the Ninth Circuit has also held that the most important factors are: "(1) the similarity of the

23   marks, (2) the relatedness of the goods or services, and (3) the parties' simultaneous use of the

24   Web as a marketing channel." *Interstellar Starship Servs., Ltd. v. Epix, Inc*., 304 F.3d 936, 942

25   (9th Cir. 2002). However, more recently, the Ninth Circuit has determined that the multifaceted

26   nature of trademark infringement on the internet warrants a more thorough analysis of all of the

27   *Sleekcraft* factors.  *Network Automation, Inc. v. Advanced Sys. Concepts, Inc*., 638 F.3d 1137,

28

United States District Court
Northern District of California

1148-48 (9th Cir. 2011). Summary judgment on the likelihood of confusion is generally disfavored, but it may be granted in a trademark case where there is no genuine issue of material fact. *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 630 (9th Cir. 2005). An injunction is "the remedy of choice for trademark and unfair competition cases," particularly if there is actual confusion. *Century 21 Real Est. Corp. v. Sandlin*, 846 F.2d 1175, 1180-81 (9th Cir. 1988).

The first and third *Interstellar* factors weigh in favor of finding a likelihood of confusion. The first *Interstellar* and second *Sleekcraft* factor assesses the similarity of the marks. "Similarity of the marks is tested on three levels: sight, sound, and meaning." *Sleekcraft*, 599 F.2d at 351. Here, the domain names for the Plaintiff's website, <mdhair.com>, and Defendant's website, <mdhair.co>, are virtually identical except for their top level domains. "MDhair," Defendant's mark, and "MD Nutri Hair," and "MD Hair," Plaintiff's marks, are also similar in sight and sound. Plaintiff further asserts that its customers refer to its haircare products as "MD Hair" and has even provided a product brochure, press release, and an article to that effect. The third *Interstellar* factors (also the second and fifth *Sleekcraft* factors, respectively) evaluate the relatedness of the goods or services and the marketing channels. Both Plaintiff and Defendant undisputedly sell haircare products through their website and online platforms. Defendant argues that its packaging for the product differs from Plaintiffs, however customers are largely searching for these products on the internet, so may not know the appearance of the respective packaging of the products prior to searching for them. The name or domain of the product will likely be the first encounter the consumer will have with the products. Indeed, given the medium consumers primarily use to find these products, the similarities in name will likely have a greater influence in their relatedness. The fourth *Sleekcraft* factor also weighs in favor of a finding of confusion. Plaintiff has provided a log of customers stating confusion between its products and Defendants and making inquiries about the relationship between the two.

The eighth factor is neutral. A strong possibility that either party will expand its business to compete with the other will weigh in favor of finding the present use is infringing, but "[w]hen goods are closely related [as here], any expansion is likely to result in direct competition."

United States District Court
Northern District of California

*Sleekcraft*, 599 F.2d at 354.

The remaining *Sleekcraft* factors, however, weigh against a finding of confusion. As to the first factor, Defendant correctly points out that the strength of the "MD Hair" mark raises triable issues of fact. A strength of a mark is determined in two ways: first, its conceptual strength, i.e. how inherently distinctive it is, and second, its commercial strength, or how recognizable it is in the market. Conceptual strength classifies a mark along a spectrum of "generally increasing inherent distinctiveness as generic, descriptive, suggestive, arbitrary, or fanciful." *Network Automation*, 638 F.3d at 1149. Plaintiff's argument that its MD mark is suggestive because a consumer would have to make a "mental leap" to imagine hair products developed by a medical doctor is unavailing. As the USPTO pointed out, the term "MD" is commonly used in cosmetic preparations. Furthermore, doctors are frequently involved in the creation of skincare and haircare products, as evidenced by the crowded field of products with the similar MD root form. There is a genuine issue of material fact as to the conceptual strength of the MD mark. In addition, commercial strength of a mark is based on "actual marketplace recognition." *Brookfield.*, 174 F.3d at 1149. Plaintiff argues that it has been the industrial "source" for the MD Hair line of haircare products and supports this with evidence of consumers having confused Defendant's products only with Plaintiff's, thus proving, under Plaintiff's analysis, that its own marks carry marketplace recognition. However, even if this were the case, the relatively conceptual weakness of this mark suggests that this factor weighs against a finding of confusion.

The sixth factor questions whether the type of goods warrants the "average buyer exercising ordinary caution." *Sleekcraft*, 599 F.2d at 353. The Ninth Circuit expects "consumers searching for expensive products online to be even more sophisticated." *Network Automation*, 638 F.3d at 1153. Moving beyond the medium, it is reasonable to argue, as Plaintiff does, that the customer caution when purchasing haircare products is relatively low but viewing this factor in the light most favorable to Defendant, the general sophistication of online shoppers weighs against a finding of a likelihood of confusion.

The seventh factor questions whether the defendant intended to select a mark similar to

United States District Court
Northern District of California

1    another's. *Sleekcraft*, 599 F.2d at 354. Plaintiff has not shown that Defendant was aware of

2    Plaintiff's competing goods. Defendant highlights the fact that it attempted to buy the domain

3    name <mdhair.com> but was unable to learn the identity of the owner, which was Plaintiff, as the

4    domain's ownership was hidden by the anonymizing services of the domain registrar. Defendant

5    states it reasonably believed it had a reasonable basis to believe it had the legal right to use the

6    mark "MDhair." *See Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha*, 290 F. Supp. 2d

7    1083, 1094 (C.D. Cal. 2003). Therefore, this factor weighs against a finding of confusion. The

8    question of ownership of the mark need not be reached because multiple *Sleekcraft* factors raise

9    issues of triable facts as to the likelihood of confusion between Plaintiff and Defendant's marks.

10   Therefore, the motion for partial summary judgment is denied.

11              C.  Motion to Modify Case Schedule

12        Defendant has filed an administrative motion to modify the case schedule, arguing that the

13   addition of eleven causes of action across the parties' amended pleadings has made it difficult for

14   it to meet the current case deadlines, despite having diligently sought discovery. Defendant wants

15   a modification of the case scheduled specifically to take depositions of Plaintiff's personnel and

16   third parties, and to disclose expert witnesses. Plaintiff opposes Defendant's motion, arguing that

17   Defendant has had months to conduct the discovery it now asserts it must seek.

18        A further case management conference is scheduled for February 1, 2024 at which the case

19   schedule will be reviewed. Defendant should be prepared to specify exactly what discovery it

20   seeks and approximately how much time it expects to need. The fact discovery deadline, currently

21   January 19, 2024, will have passed at that juncture, but this does not preclude reopening of

22   discovery if necessary. In the meantime, the parties are ordered to attempt to meet current case

23   deadlines diligently.

24                              **V. CONCLUSION**

25        For the reasons above, the motion to dismiss and motion for partial summary judgment are

26   denied. The parties' requests for judicial notice regarding materials related to their instant briefing

27   is granted. The parties have also filed motions to seal portions of records attached to their instant

28                                      ORDER ON MOTION TO DISMISS, MOTION FOR SUMMARY JUDGMENT
                                                     CASE NO. 22-cv-07197-RS
                                              14

United States District Court
Northern District of California

1  briefing that contain personal identification information, private email communications and

2  monetary values. The motions to seal are granted.

3

4  **IT IS SO ORDERED**.

5

6  Dated: January 3, 2024

7  _____

8  RICHARD SEEBORG
   Chief United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                    ORDER ON MOTION TO DISMISS, MOTION FOR SUMMARY JUDGMENT
                                    CASE NO. 22-cv-07197-RS