1
2
3
4
5
6
7 UNITED STATES DISTRICT COURT

8 NORTHERN DISTRICT OF CALIFORNIA

9

10 LA CANADA VENTURES, INC.,

Plaintiff,        Case No. 22-cv-07197-RS

11

v.

12                                      ORDER GRANTING MOTION FOR
                                        PARTIAL SUMMARY JUDGMENT
MDALGORITHMS, INC.,                     AND GRANTING *DAUBERT* MOTION

13

Defendant.

14

15                              **I. INTRODUCTION**

16      Plaintiff La Canada Ventures, Inc., is a health and beauty retailer offering cosmetic products.

17 Defendant MDalgorithms is a company that offers computer software and app technology for

18 education and advice about the treatment of acne. Both parties create and market skin and haircare

19 products with the root mark "MD." Plaintiff brought this action against Defendant, advancing

20 several claims related to trademark infringement and false advertising in the operative Second

21 Amended Complaint ("SAC"). Defendant now moves for partial summary judgment on several of

22 Plaintiff's claims, specifically, Counts I (federal trademark infringement under the Lanham Act)

23 and II (unfair competition) as to Defendant's "MDacne" mark, as well as Counts V and VI (false

24 advertising in violation of federal and California law). Defendant also moves to strike and exclude

25 the report and associated testimony of Plaintiff's expert, Richard Kostick, pursuant to Federal Rule

26 of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). For the

27 reasons discussed below, Defendant's motion for partial summary judgment and its *Daubert*

28 motion are granted.

## II. BACKGROUND

The factual background of this case has been thoroughly described in previous orders. In short, Plaintiff owns seven trademarks.[1] Defendant creates and sells MDacne and MDhair, which are customizable skincare and haircare product kits. Plaintiff does not sell a product called MDacne but does have an acne skincare product that displays the mark "MD" on the packaging. Plaintiff avers that its customers nonetheless confuse the source of MDalgorithm's products as coming from Plaintiff. Where a customer confuses the source of the junior user's product as the senior user, that is known as "forward confusion." Other types of confusion actionable under the Lanham Act include "reverse confusion," which occurs when consumers approach the senior user, mistakenly believing they are dealing with the junior user, as well as the newly minted "initial interest confusion," which occurs when customers are drawn to one party's brand during their search for its competitor's products, and the former "capitalizes on the goodwill associated with [the latter's] mark." *Porta-Fab Corp. v. Allied Modular Bldg. Sys.*, No. 8:20-cv-01778-JLS-JDE, 2022 WL 4596646 at *3 (C.D. Ca. Jul. 24, 2022); *see Ironhawk Tech., Inc. v. Dropbox, Inc.*, 2 F.4th 1150, 1159-60 (9th Cir. 2021).

In its motion, Defendant argues that Plaintiff has presented no evidence that its "MDacne" mark infringes on any of Plaintiff's trademarks, warranting judgment on Counts I and II in the SAC for that mark. If judgment is granted for it on those claims, Defendant further contends that summary judgment should also be granted as to Count III in the SAC, which seeks to cancel the trademark registration for "MDacne." Separately, Defendant moves for judgment as to Plaintiff's false advertising claims, brought under federal and California law, because Plaintiff has produced no evidence that Defendant's statements about its own products violate Section 43 of the Lanham Act or California's False Advertising Law ("FAL"), California Business & Professions Code § 17500 *et seq.* Therefore, Defendant posits, these claims fail as a matter of law.

---

[1] MD FACTOR (Reg. No. 6,309,386); MD BY SUSAN F. LIN M.D. (Reg. No. 5,860,508); MD WELLNESS BY SUSAN F. LIN M.D. (Reg. No. 6,251,811); MD (Reg. No. 4,471,494); MD INTIMATE RESTORE (Reg. No. 4,603,019); MD 101 (Reg. No. 3,459,245); and MD LASH FACTOR (Reg. No. 3,432,309).

Defendant has also filed a motion to strike the opinion of Plaintiff's expert, Kostick. In his report, Kostick opines that (1) Plaintiff consistently followed best practice for effective digital marketing and (2) the sales and revenue generated by Plaintiff do not reflect the expected return from its digital marketing investment. Defendant challenges Kostick's research methodologies as deficient and self-serving.

## III. MOTION FOR PARTIAL SUMMARY JUDGMENT

### A. Legal Standard

A motion for summary judgment may be granted if the pleadings, discovery, and affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). A genuine issue of material fact is one that could "affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). Evidence must be viewed in the light most favorable to the nonmoving party and all justifiable inferences must be drawn in its favor. *See Anderson*, 477 U.S. at 255. The court need not scour the record in search of a genuine issue of triable fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citation omitted). The moving party bears the burden of proof to "make a showing sufficient to establish…the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). If the movant succeeds in demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Id*. at 322 n.3; *see also* Fed. R. Civ. Proc. 56(c)(1)(B). The non-moving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. *Keenan*, 91 F.3d at 1279. If the nonmoving party fails to make this showing, "the moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 322.

### B. Federal Trademark Infringement, Unfair Competition – "MDacne"

"To prevail on a claim of trademark infringement under the Lanham Act, 15 U.S.C. § 1114, a party must prove: (1) that it has a protectible ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion." *Network Automation, Inc.*

*v. Advanced Systems Concepts, Inc.*, 638 F.3d 1137 (9th Cir. 2011) (internal citation omitted). Summary judgment on the likelihood of confusion is generally disfavored, but it may be granted in a trademark case where there is no genuine issue of material fact. *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 630 (9th Cir. 2005). In this motion, Defendant does not challenge Plaintiff's ownership interest in the latter's marks. Instead, it insists that its own use of "MDacne" is unlikely to cause customer confusion in the market.[2]

Defendant insists that Plaintiff averred only forward confusion in its SAC, thereby waiving all its arguments as to reverse or initial interest confusion. *See Surfvivor Media*, 406 F.3d at 631 (declining to determine whether the plaintiff raised a material issue of fact on the forward confusion claim because he failed to reference it in his complaint). However, the Ninth Circuit has imposed no strict pleading requirement to state a claim for trademark infringement under a particular theory of confusion. *Marketquest Grp., Inc. v. BIC Corp.*, 862 F.3d 927, 932-33 (9th Cir. 2017) ("[W]hen reverse confusion is compatible with the theory of infringement alleged in the complaint, a plaintiff need not specifically plead it"). In the SAC, Plaintiff avers:

> Shortly after MDalgorithms began using its MD-based marks for products that directly compete with those offered by La Canada, La Canada began receiving complaints about products, e.g., "MD Hair," offered by MDalgorithms.

SAC ¶ 25. Plaintiff indicates that customers are confused about the source of Defendant's products and makes no mention of customer confusion as to the source of its own products. Without such specific facts in the SAC, Plaintiff cannot now raise arguments regarding reverse confusion. However, because Plaintiff has averred in the SAC that Defendant seeks to erode its goodwill in the SAC, Plaintiff's arguments regarding initial interest confusion remain actice.

      i.      Likelihood of confusion as to "MDacne"

"The *sine qua non* of trademark infringement under the Lanham Act is customer

---

[2] While the SAC consists of averments regarding Defendant's use of both the "MDacne" and "MDhair" marks, Defendant only references the "MDacne" mark in the instant motion. It does not move for summary judgment on Counts I and II for the "MDhair" mark, so regardless of the outcome of the motion, those claims are live as to Defendant's "MDhair" mark.

confusion." *Network Automation*, 638 F.3d at 1149. In *AMF Inc. v. Sleekcraft Boats*
("*Sleekcraft*"), the Ninth Circuit developed a flexible, non-exhaustive eight-factor test to guide the
analysis of the likelihood of consumer confusion. 599 F.2d 341 (9th Cir. 1979). These factors are
(1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of
actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to
be exercised by the purchaser; (7) the defendant's intent in selecting the mark; and (8) likelihood
of expansion of the product lines.  *Sleekcraft*, 599 F.2d at 348. For either party to prevail, it need
not satisfy all factors, and summary judgment may be granted "provided that strong showings are
made with respect to some of [the factors]." *Surfvivor Media, Inc.*, 406 F.3d at 631.

    1.  Evidence of actual confusion

    The absence of evidence of actual confusion "need not create an inference that there is no
likelihood of confusion." *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1292 (9th Cir.
1992). However, where "there is scant evidence of actual confusion in the record[,]" this factor
favors a defendant. *Surfvivor Media*, 406 F.3d at 633.

    Defendant argues that Plaintiff has failed to present any evidence of actual confusion
between its products and those of Plaintiff, and the "peaceful coexistence" of Defendant's
MDacne and Plaintiff's products in the market establishes no likelihood of confusion between the
two. *See Brookfield Commc'ns, Inc. v. West Coast Ent. Corp.*, 174 F.3d 1036, 1050 (9th Cir.
1999) ("We cannot think of more persuasive evidence that there is no *likelihood* of confusion
between these two marks than the fact that they have been simultaneously used for five years
without causing any consumers to be confused as to who makes what"). In support, Defendant
charges Plaintiff with failing to conduct a customer survey with results showing customer
confusion between MDacne and Plaintiff's products, insisting that such a failure should
presumptively indicate that the results would be unfavorable for Plaintiff. *See Cairns v. Franklin
Mint Co.*, 24 F. Supp. 2d 1013, 1041 (C.D. Cal. 1998). The Ninth Circuit has not limited
likelihood of confusion evidence to surveys, however, and has provided that "[t]here are at least
three types of proof of likelihood of confusion: (1) survey evidence; (2) evidence of actual
confusion; and (3) an argument based on an inference arising from a judicial comparison of the

United States District Court
Northern District of California

conflicting marks themselves and the context of their use in the marketplace. In a close case amounting to a tie, doubts are resolved in favor of the senior user." *Dr. Seuss Enterprises, L.P. v. Penguin Books, USA, Inc.*, 109 F.3d 1394, 1404 n.14 (9th Cir. 1997). Nonetheless, a plaintiff's failure to offer *any* proof indicating actual confusion despite years of coexistence tends to show that this factor weighs in favor of the defendant. Here, Plaintiff's proffered proof, which is a survey conducted by Defendant showing confusion pertaining to Defendant's "MDhair" product, has no relevance. The product at issue in the instant motion is Defendant's "MDacne" product, which is intended to treat a distinct cosmetic matter and is marketed towards different customers (i.e., customers likely to purchase acne treatments rather than hair-loss products). For this reason, Plaintiff's contention that the survey yielded results establishing that the common element "MD" caused some initial interest confusion is irrelevant. Even accepting the survey's application here, evidence of this purported confusion is exceedingly minimal such that no triable issue of fact is created, as consumer inquiries for MDhair represented not even 1% of Defendant's total U.S. sales. Further, while Plaintiff asserts that Defendant advertises and promotes the two products together, this does not serve as a basis to extrapolate the survey results of the "MDhair" product to "MDacne." Accordingly, this factor weighs in Defendant's favor.

2.   Strength of the mark

The strength of a mark is determined in two ways: first, its conceptual strength, i.e., how inherently distinctive it is, and second, its commercial strength, or how recognizable it is in the market. Conceptual strength classifies a mark along a spectrum of "generally increasing inherent distinctiveness as generic, descriptive, suggestive, arbitrary, or fanciful." *Network Automation*, 638 F.3d at 1149. Commercial strength of a mark is based on "actual marketplace recognition." *Brookfield*, 174 F.3d at 1058. The more distinctive a mark, the more it warrants trademark protection. "A suggestive mark conveys an impression of a good but requires the exercise of some imagination and perception to reach a conclusion as to the product's nature." *Id*. at 1058 n.19. The Ninth Circuit has held that a suggestive mark is presumptively weak. *Id*. at 1058.

Plaintiff insists that its family of marks, including the "MD" root mark, are presumptively distinct because four of those marks are incontestable, that is, they have been used in commerce

1   for five consecutive years and are still in such use. 15 U.S.C. § 1115(b). However, "the

2   incontestable status of [a plaintiff's] mark does *not* require a finding that the mark is strong."

3   *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1142 n.3 (9th Cir. 2002).

4        Plaintiff next argues that the "MD" mark is suggestive because "some level of imagination

5   or perception is necessary to equate 'MD' with doctor of medicine." In support, Plaintiff invokes

6   the MDhair survey, where participants identified Plaintiff as the source of MDhair because the

7   product says "MD" on the packaging. However, while that evidence might tend to show whether

8   participants were confused about the source of MDhair, it does not support Plaintiff's argument

9   that MDhair is a strong mark. Plaintiff has proffered no evidence to suggest that it would require

10  some imaginative leap to associate "MD" with doctor (and, in fact, admits the converse in its

11  SAC: "'MD' is commonly understood to mean 'Doctor of Medicine.'" SAC ¶ 22). The crowded

12  field of cosmetic products, including 50 other skincare product lines sporting the MD root mark,

13  indicates otherwise.[3] Indeed, "[u]se of similar marks by third-party companies in the relevant

14  industry weakens the mark at issue." *M2 Software, Inc. v. Madacy Ent.*, 421 F.3d 1073, 1088 (9th

15  Cir. 2005). Furthermore, as already explained in the order denying Plaintiff's motion for partial

16  summary judgment as to MDhair, the USPTO also recognized the weakness of Plaintiff's MD-

17  formative marks when rejecting Plaintiff's application to register "MD BEAUTY." Even if

18  Plaintiff were to establish that its marks were suggestive, the Ninth Circuit has held that a

19  suggestive mark is generally considered a weak mark barring some other determinant of the

20  mark's strength, for example, actual marketplace recognition. *Brookfield*, 174 F.3d at 1058.

21        Turning, then, to the commercial strength of Plaintiff's mark, the analysis here measures

22  the degree of recognition of the market for the relevant consumer. Plaintiff points to evidence of

---

[3] Plaintiff insists that Defendant's "crowded field" argument constitutes inadmissible attorney argument because what constitutes the relevant "field" is a triable issue of fact and because Defendant has purportedly produced no evidence showing the field is crowded with other products with the "MD" mark. Plaintiff has not explained why the relevant field (skincare and haircare products) is appropriately defined for purposes of its claims of infringement but not so to measure whether it is crowded. Nonetheless, Defendant has produced evidence of 107 other current registrations for MD-formative marks and 50 other skincare product lines currently featuring MD-formative marks. Exh. M.

United States District Court
Northern District of California

its long and continued use of the "MD" mark on a variety of its products. However, that use was non-exclusive, as evidenced by the many products consisting of MD-formative marks in the relevant field. Nor has Plaintiff provided evidence of advertising expenditures or other indicators to transform its marks into a strong mark. *See id.* This factor, too, weighs against a likelihood of confusion.

### 3. Similarity of the goods

This factor is neutral. "Related goods are generally more likely than unrelated goods to confuse the public as to the producers of the goods." *Brookfield*, 174 F.3d at 1055. While the parties' acne products are close in proximity as both are skincare products intended to treat acne, Defendant argues that its product is distinct because it uses artificial intelligence to customize formulation. The Ninth Circuit has provided that a court should "apply a sliding scale approach as to the weight that relatedness will carry dependent upon the strength of the trademark holder's mark." Here, the mark is relatively weak, so it is possible that consumers may well recognize the MD mark as representing a medical doctor, "not because of an association with [Plaintiff's products]." *Entrepreneur Media, Inc.*, 279 F.3d at 1145. However, the similar function of the products, notwithstanding Defendant's purported use of AI to customize its formula, renders this factor neutral.

### 4. Defendant's intent

"When the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived." *Sleekcraft*, 599 F.2d at 354. Plaintiff has proffered no evidence in support of the argument that Defendant or its principals knew of Plaintiff's marks when it adopted "MDacne" in 2017. Plaintiff instead insists that Defendant knew of Plaintiff's "MD" mark early as June 24, 2021, when Defendant cited Plaintiff's "MD" mark in its office action response. However, the mark was adopted in 2017, and Plaintiff has proffered no evidence showing that Defendant adopted the mark to deceive the public. This factor thus weighs against a finding of confusion.

### 5. Similarity of the marks

"In analyzing the similarity of the marks, the court is to view the marks as a whole, as they

appear in the marketplace." *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1291 (9th Cir. 1992). This factor weighs in Plaintiff's favor as similarities in marks "weigh more heavily than differences." *Alpha Indus., Inc. v. Alpha Steel Tube & Shapes, Inc.*, 616 F.2d 440, 444 (9th Cir. 1980). Plaintiff and Defendant's products utilize the common prefix "MD" followed by another term. The common use of this "dominant element" tends to show similarity in the parties' marks. *Id*.

6.   Degree of care exercised by purchasers

Customers of skincare and fragrance products often exercise a high degree of care and precision in their purchase. *See Glow Indus. v. Lopez*, 252 F. Supp. 2d 962, 1001 (C.D. Cal. 2002). Plaintiff's expert testimony supports this idea by acknowledging that consumers' decision-making in this area tends to be highly involved. The goods here are specialty skincare products intended to treat sensitive skin issues, and consumers are likely to be sophisticated purchasers exercising significant care in selecting their products. This factor also weighs against a finding of confusion.

7.   Marketing channels

"Convergent marketing channels increase the likelihood of confusion." *Nutri/Sys., Inc. v. Con-Stan Indus., Inc*., 809 F.2d 601, 606 (9th Cir. 1987). The parties sell and market their products through websites and online platforms, but the Ninth Circuit has cautioned that, today, "it would be the rare commercial retailer that did not advertise online, and the shared use of a ubiquitous marketing channel does not shed much light on the likelihood of consumer confusion." *Network Automation*, 638 F.3d at 1151. Consequently, this factor is neutral.

8.   Expansion of product lines

"[A] 'strong possibility' that either party may expand his business to compete with the other will weigh in favor of finding that the present use is infringing." *Sleekcraft*, 599 F.2d at 354. Further, "[w]hen goods are closely related, any expansion is likely to result in direct competition." *Id*. Plaintiff points out that Defendant uses "four marks" – two of which are the subject of this action – in the MD family and plans on expanding its business. However, the parties already compete in this area, thus already exist in one another's "submarket." *Id*. This factor is accordingly neutral.

1
2
3
4
5
6
7
8
9
10
11
12

United States District Court
Northern District of California

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Viewing the *Sleekcraft* factors in totality, here, it cannot be said that Plaintiff has presented a triable issue of material fact that Defendant is infringing on Plaintiff's trademarks by its use of "MDacne." Furthermore, since Count III of Plaintiff's SAC seeks to cancel Defendant's trademark registration for MDacne, summary judgment is granted for Defendant on that claim as well, since it rises and falls with the likelihood of confusion analysis. "Section 37 of the Lanham Act, 15 U.S.C. § 1119, permits district courts to resolve…subsidiary registration disputes when joined with an infringement claim." *Airs Aromatics, LLC v. Victoria's Secret Stores Brand Management, Inc.*, 744 F.3d 595, 599 (9th Cir. 2014). Section 37 states that "cancellation may only be sought if there is already an ongoing action that involves a registered mark; it does not indicate that a cancellation claim is available as an independent cause of action." *Id.*

**C. False Advertising under Federal and State law**

To state a claim under California's False Advertising Law ("FAL"), which prohibits untrue or misleading advertising, "it is necessary only to show that members of the public are likely to be deceived" as judged by a "reasonable consumer." *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009) (internal quotation omitted); *Shaeffer v. Califia Farms, LLC*, 44 Cal. App. 5th 1125, 1136 (2020); Cal. Bus. & Prof. Code, § 17500 *et seq.* A plaintiff advancing a claim for false advertising under Section 43(a) of the Lanham Act must show (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to a defendant or by a lessening of the goodwill associated with its products. *Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1110 (9th Cir. 2012) (citing 15 U.S.C. § 1125(a)(1)(B)).

i.   Misleading or Literally False statements

"To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the

1   statement was literally true but likely to mislead or confuse consumers." *Kwan Softwarre*

2   *Engineering, Inc. v. Foray Technologies, Inc.*, 2014 WL 572290 at *3 (N.D. Cal. Feb. 11, 2014)

3   (citing to *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir.1997)).

4   Similarly, under California's FAL, a statement does not have to be literally false to be unlawful if

5   it is "likely to mislead the public." *Fitzhenry-Russell v. Keurig Dr. Pepper Inc.*, 345 F. Supp. 3d

6   1111, 1115 (N.D. Cal. 2018). Plaintiff bases its false advertisement claims on four grounds: first,

7   Defendant's MDacne and MDhair products are not individually customized; second, Defendant

8   does not offer "unlimited dermatologist support;" third, Defendant's products are not FDA

9   approved; and fourth, Defendant's return policy states its products cannot be returned because they

10  are medical products. Plaintiff has offered no evidence in support of the notion that these

11  statements are literally false or misleading in any regard.

12         First, Defendant's skin and haircare kits are customized based on a customer's skin and

13  haircare needs. Plaintiff's insistence that Defendant is falsely advertising its products because the

14  individual chemical formulations of the products within those customized kits consist of over-the-

15  counter formulations is unavailing. Plaintiff has proffered no evidence to support this restricted

16  view of the term "customized."

17         Second, Plaintiff insists that Defendant falsely advertises its promise of "unlimited

18  dermatologist support" because Defendant only has one dermatologist, who is not allowed to

19  practice in the U.S., that can offer support to its customers. This argument also falls short of

20  indicating deceit. Defendant provides evidence that the reference to the plural "dermatologists"

21  was made mistakenly only once on its website, and the typo has since been fixed. Elsewhere on

22  Defendant's website it notes that customers may receive "dermatologist support" – a statement

23  that is not literally false or misleading. The fact that the dermatologist in question is unable to

24  practice in the U.S. is inapposite – Dr. Harth is licensed to practice in Israel and is a dermatologist.

25         Third, Plaintiff claims that Defendant's products are not FDA-approved, invoking a slide-

26  deck prepared by Defendant and disseminated to investors that was never distributed publicly.

27  Notwithstanding that Defendant's products contain benzol peroxide, salicylic acid, and sulfur –

28

United States District Court
Northern District of California

ingredients cleared by the FDA to treat acne – Plaintiff has proffered no evidence disseminated to consumers that indicate Defendant's products are FDA approved. Rather, Defendant's website states clearly that its products consist of "clinically proven and FDA cleared topical anti-acne ingredients." This statement is consistent with the formulations of Defendant's products and is also not literally false or misleading.

Finally, Plaintiff argues that Defendant refuses to permit customer to return products because they are "medical products." However, Defendant's terms of service actually state that the products "cannot be reused if returned" because they are medical products that another customer may not reuse. Plaintiff seems to be objecting to Defendant's use of the term "medical products" because it is not selling "prescription products, only recommended combinations of over-the-counter products." Plaintiff has provided no evidentiary support for the argument that "medical" is limited to a prescribed product. This statement, too, is neither misleading nor literally false.

ii.    Damages

Even accepting that Plaintiff has averred that one of Defendant's statements is literally false or misleading, it has failed to show that it suffered damage as a result of Defendant's purported false advertising. "In a suit for damages under section 43(a) [of the Lanham Act], actual evidence of some injury resulting from the deception is an essential element of the plaintiff's case." *Harper House, Inc. v. Thomas Nelson, Inc*., 889 F.2d 197, 210 (9th Cir. 1989). Plaintiff has failed to identify specific damages arising from Defendant's false statements, arguing instead that its damages expert was right in calculating damages for trademark infringement and false advertising identically, because "the tests are identical." Plaintiff has offered no basis to explain why damages it suffered as a result of Defendant's alleged infringement of Plaintiff's trademarks are identical to those resulting from Defendant's alleged false statements. That Plaintiff has the same damage theory as to its trademark infringement and false advertising claims – disgorgement of Defendant's profits – does not necessarily lead to the conclusion that the injury or misconduct under both theories are identical. Damages must be tethered to the alleged misconduct, and a trademark infringement is a distinct violation from false advertising.

United States District Court
Northern District of California

1

## IV. MOTION TO STRIKE EXPERT REPORT AND TESTIMONY

2

### A. Legal Standard

3

Federal Rule of Evidence 702 requires that a witness proffered as an expert by a party be

4

qualified by "knowledge, skill, experience, training, or education." Even if a witness is qualified

5

as an expert in a particular field, any scientific, technical, or specialized testimony is admissible

6

only if it (a) "will help the trier of fact to understand the evidence or to determine a fact in issue,"

7

(b) "is based upon sufficient facts or data," (c) "is the product of reliable principles and methods,"

8

and (d) "the expert has reliably applied the principles and methods to the facts of the case." *Id.*

9

Irrelevant or unreliable testimony is prohibited under Rule 702. *Daubert v. Merrell Dow Pharm.,*

10

*Inc.*, 509 U.S. 579, 589 (1993). Expert opinion testimony is reliable if such knowledge has a

11

"basis in the knowledge and experience of [the relevant] discipline." *Daubert*, 509 U.S. at 592.

12

Under *Daubert*, courts should consider the following factors when evaluating whether an expert's

13

proposed testimony is reliable: (1) "whether a theory or technique . . . can be (and has been)

14

tested," (2) "whether the theory or technique has been subjected to peer review and publication[,]"

15

(3) the known or potential error rate of the particular scientific theory or technique, and (4) the

16

degree to which the scientific technique or theory is accepted in a relevant scientific community.

17

*Id.* at 593–94. This list is not exhaustive, however, and the standard is flexible. *Kumho Tire Co. v.*

18

*Carmichael*, 526 U.S. 137, 151 (1999). The *Daubert* inquiry "applies not only to testimony based

19

on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized'

20

knowledge." *Id.* at 141.

21

The court's task is not to "decid[e] whether the expert is right or wrong, just whether his

22

testimony has substance such that it would be helpful to a jury." *Alaska Rent-A-Car, Inc. v. Avis*

23

*Budget Grp., Inc.*, 738 F.3d 960, 969–70 (9th Cir. 2013). Courts may not exclude testimony

24

simply because it is impeachable. *Id.* at 969. "Vigorous cross-examination, presentation of

25

contrary evidence, and careful instruction on the burden of proof are the traditional and

26

appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. The

27

focus of the inquiry is thus on the principles and methodology employed, not the conclusions

28

United States District Court
Northern District of California

1    reached by the expert. *See id.* at 595. Ultimately, the purpose of the assessment is to exclude

2    speculative or unreliable testimony to ensure accurate, unbiased decision-making by the trier of

3    fact.

4         There are several reasons why an expert's proposed testimony may be excluded, including

5    the expert's lack of qualification, the inapplicability of the proposed testimony, and the

6    unreliability of the proposed testimony. Defendant primarily contends that Kostick's report and

7    any associated testimony should be excluded because it is unreliable.

8    **B.  Kostick's opinion that Plaintiff engaged in best practices for digital marketing**

9         Whether Kostick's methodology is sound is unknowable because he does not state his

10   methodology with sufficient specificity to satisfy even the very liberal standard under *Daubert*.

11   Kostick describes the steps of his analysis in only the most general of terms. For example, he

12   states in only four lines of text that he conducted a "website audit" using three tools: Google

13   Search Console, Google Optimize, and GTMetrix. Left unstated is what Kostick actually did with

14   these tools. Further, while Kostick states that the audit provided "valuable insights" and "potential

15   areas for improvement," he does not elaborate as to either. None of the other four analytical steps[4]

16   enumerated in Kostick's report provide any greater insight into his actual methods, making it

17   impossible to test his results.

18        Plaintiff argues that Kostick's methodology is adequately stated and that cross-

19   examination, not exclusion, is the appropriate way for Defendant to attack his opinions. Although

20   "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the

21   burden of proof are the traditional and appropriate means of attacking shaky but admissible

22   evidence," *Daubert*, 509 U.S. at 596, Defendant rightly points out that Kostick's report is so vague

23   as to his methodology that it precludes effective cross-examination. Courts are "supposed to

24   screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they

25

26   [4] Kostick's report states that his analysis included the following steps: (1) Website Audit, (2)
     Keyword Research, (3) Competitive Analysis, (4) Content Analysis, and (5) Link Profile Analysis.
27   Kostick does not describe any step in more than four lines of text.

28

United States District Court
Northern District of California

1    are impeachable." *Alaska Rent-A-Car*, 738 F.3d at 969. Here, however, Defendant cannot impeach

2    an unknowable method that was not properly documented.

3           Kostick's methodology is excludable for another reason: he did not record his work. If the

4    vagueness of Kostick's report could be cured by complete contemporaneous notes and

5    documentation, it might be admissible on the grounds that Defendant could use that

6    documentation effectively to cross-examine him. However, for at least several key steps in

7    Kostick's analysis, no such documentation exists. Kostick's report simply states that he used

8    GTMetrix to conduct his website audit. When asked at his deposition if he took any notes during

9    that process, Kostick replied that he could not recall and that he provided Plaintiff with any notes

10   he did write, but Plaintiff has not produced any notes regarding GTMetrix. Similarly, Kostick's

11   report states that he used Ubbersuggest to conduct keyword research, but he does not recall

12   whether he preserved any results or data from his use of that program and no such documents have

13   been produced by Plaintiff. Basic documentation of an expert's analytical process is not, as

14   Plaintiff argues, merely additional information that Defendant would like to see, but rather an

15   essential part of an expert report that cuts to the heart of whether the method "can be or has been

16   tested." *City of Pomona*, 750 F.3d at 1046.

17          Plaintiff relies on *Surgical Instrument Service Company, Inc. v. Intuitive Surgical, Inc.*,

18   where a court in this district rejected a motion to exclude the testimony of several experts. No. 21-

19   CV-03496-AMO, 2024 WL 1975456 (N.D. Cal. Mar. 31, 2024). That case is easily distinguished.

20   There, the moving party's challenges were rooted in nuanced issues with qualifications or

21   methods, such as an expert's failure to consider certain evidence during their analysis. *Id.* At *6.

22   Regardless, the reports and testimony of multiple experts, although potentially flawed, could not

23   be excluded on reliability grounds. Conversely, here Defendant is challenging Kostick's failure to

24   document and disclose his methods in the first place. Although the court in *Surgical Instruments*

25   rightly held that "flaws in a proffered expert's analysis typically go to the weight, rather than the

26   admissibility, of the expert's testimony," *id.* at 2, where analysis is not adequately documented, a

27   district court must fulfill its gatekeeper function and exclude the testimony.

28

United States District Court
Northern District of California

Kostick's report further runs afoul of Federal Rule of Civil Procedure 26(a)(2)(B)(ii), which requires that an expert's report contain "the facts or data considered by the witness in forming" their opinions. "A testifying expert must disclose and therefore retain whatever materials are given him to review in preparing his testimony . . . because such materials often contain effective ammunition for cross-examination." *Fid. Nat. Title Ins. Co. of New York v. Intercounty Nat. Title Ins. Co.*, 412 F.3d 745, 751 (7th Cir. 2005) (discussing Federal Rule of Civil Procedure 26). Because Kostick did not document his analytical process and cannot confirm which materials he relied upon in forming his opinions, his report and associated testimony also run afoul of Federal Rule of Civil Procedure 26 and are unreliable.

**C. Kostick's opinion that Plaintiff did not achieve the expected return from its digital marketing investment**

Defendant moves to strike an additional opinion in Kostick's report; that is, that "a solid investment in digital marketing should result in a return of 2-5 times during the short term and more in life time value of the customer." However, the report provides no additional information about this claim or its basis. When asked during his deposition about the claim, Kostick confirmed that he did not cite a source and could not identify a potential source supporting this claim despite it being supposed common knowledge. "Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Kostick's claim regarding a reasonably expected return for a digital marketing investment is fundamental to his analysis and must have some basis in order to be reliable under *Daubert*.

The ten blog posts and articles listed by Kostick as "authoritative sources" to shed light on the potential returns from the kinds of marketing investments employed by Plaintiff add nothing to support his report's reliability. Because he did not provide citations for any of these ten sources, Kostick fails to make clear exactly what articles he is relying on. However, even a cursory search for these ten sources makes clear that they are not from reliable peer-reviewed publications. Rather, Kostick is apparently citing to industry magazines and blogs run by technology companies

1   who are likely writing with incentives irrelevant here. *See Daubert*, 509 U.S. at 593–94 (whether a

2   theory has been subjected to peer review is relevant to its reliability). Moreover, by Kostick's own

3   account, each of these sources consist of generic discussions of digital marketing and are not

4   clearly connected to his analysis. Kostick does not himself connect these sources to his analysis

5   whatsoever, instead merely listing them and summarizing their main points in a few words. Thus,

6   those ten referenced sources add nothing. Kostick's opinion is mere *ipse dixit* and therefore

7   excludable.

## V. CONCLUSION

9        For the reasons explained herein, Defendant's motion for partial summary judgment and

10   motion to strike are granted. Judgment is granted for Defendant on Counts I, II, and III in

11   Plaintiff's SAC as to the "MDacne" mark. Counts I and II remain as to Defendant's "MDhair"

12   mark. Further, judgment is granted for Defendant as to Counts V and VI in the SAC. Plaintiff's

13   expert report is also stricken as to the opinions proffered by Kostick and his associated testimony

14   is excluded. The parties have filed administrative motions to seal portions of their briefs and

15   related exhibits, seeking to redact confidential business information. The administration motions

16   are granted.

18   **IT IS SO ORDERED**.

20   Dated: August 2, 2024

_____

RICHARD SEEBORG
Chief United States District Judge

United States District Court
Northern District of California